UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

------------------------------------------------------------------ x

HAYAL AZIZ AHMED AL-MITHALI,                          :
     Detainee, Guantanamo Bay Naval Station
     Guantanamo Bay, Cuba;                             :

ALI AZIZ AHMED AL-MITHALI,                            :
     as Next Friend of Hayal Aziz Ahmed Al-Mithali,

                                  :

*Petitioners/Plaintiffs,*                             :

v.                                                    :

                                    :

GEORGE W. BUSH,                                       :       **PETITION FOR ISSUANCE**
     President of the United States                           **OF A WRIT OF *HABEAS***
     The White House                                  :       ***CORPUS***
     1600 Pennsylvania Ave., N.W.                      :
     Washington, D.C. 20500;

                                    :       No. _____

DONALD RUMSFELD,                                      :
     Secretary, United States
     Department of Defense                             :
     1000 Defense Pentagon                             :
     Washington, D.C. 20301-1000;

                                    :

ARMY BRIG. GEN. JAY HOOD,                             :
     Commander, Joint Task Force - GTMO
     JTF-GTMO                                          :
     APO AE 09360; and                                 :

ARMY COL. MICHAEL BUMGARNER,                          :
     Commander, Joint Detention
       Operations Group - JTF-GTMO,                 :
     JTF-GTMO
     APO AE 09360,                                     :

*Respondents/Defendants.*                             :

------------------------------------------------------------------ x

### PETITION FOR ISSUANCE OF A WRIT OF HABEAS CORPUS

This Petition for Issuance of a Writ of *Habeas Corpus* is respectfully submitted on behalf of Petitioner Hayal Aziz Ahmed Al-Mithali ("Petitioner Al-Mithali"). A citizen of the Yemen, Petitioner Al-Mithali acts on his own behalf and through his fellow Petitioner and Next Friend Ali Aziz Ahmed Al-Mithali, ("Next Friend Al-Mithali") who is the brother of Petitioner Al-Mithali. Petitioner Al-Mithali is under detention at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). Petitioner Al-Mithali is a civilian who wrongly has been classified an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at Guantánamo, without basis, without charge, without access to counsel and without being afforded any fair process by which he might challenge his detention.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the Executive Order of November 13, 2001, Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Michael Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of Petitioner Al-Mithali at Guantánamo.

Petitioner Al-Mithali is being held under color and authority of the Executive Branch, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Because he cannot act for himself, his brother is acting

1

as Next Friend and has authorized counsel to file this Petition on his behalf.

Accordingly, Next Friend Al-Mithali respectfully petitions this Court on behalf of

Petitioner Al-Mithali to issue a Writ of *Habeas Corpus* compelling Respondents either to

release Petitioner Al-Mithali or to establish in this Court a lawful basis for Petitioner Al-

Mithali's initial and continued detention.  Next Friend Al-Mithali also respectfully

petitions this Court for an order of injunctive and declaratory relief on behalf of Petitioner

Al-Mithali.

## I.
## JURISDICTION

1.       Petitioners bring this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and

2242.  Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350,

1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth, Sixth, and

Eighth Amendments to, the United States Constitution. Because they seek declaratory

relief, Petitioners also rely on Fed. R. Civ. P. 57.

2.       This Court is empowered under 28 U.S.C. § 2241 to issue the requested

Writ of *Habeas Corpus*, and to entertain the Petition filed by Next Friend Al-Mithali

under 28 U.S.C. § 2242.  This Court is further empowered to declare the rights and other

legal relations of the parties herein pursuant to  28 U.S.C. § 2201, and to effectuate and

enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this

case involves an actual controversy within the Court's jurisdiction, and to issue all writs

necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.
## PARTIES

3.      Petitioner Al-Mithali is a Yemeni citizen who is presently incarcerated at

Guantánamo and held in Respondents' unlawful custody and control. *See* Authorization

of Ali Aziz Ahmed Al-Mithali filed concurrently herewith and in support hereof, attached

as Exhibit A.

4.      Next Friend Al-Mithali is a Yemeni citizen and the brother of Petitioner

Al-Mithali. *Id.*  Because Petitioner Al-Mithali has been denied access to legal counsel

and to the courts of the United States, Mr. Al-Mithali is acting as Petitioner Al-Mithali's

Next Friend and, in that capacity, is authorized to file this petition on behalf of Petitioner

Al-Mithali.

5.      Respondent George W. Bush is the President of the United States and

Commander-in-Chief of the United States.  Petitioner Al-Mithali is being detained

pursuant to President Bush's authority as Commander-in-Chief, under the laws and

usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001,

Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism,

66 Fed. Reg. 57,833 (Nov. 13, 2001) ("the Executive Order").  President Bush is

responsible for Petitioner Al-Mithali's initial and continued unlawful detention and is

sued in his official capacity.

6.      Respondent Donald Rumsfeld is the Secretary of the United States

Department of Defense.  Pursuant to the President's authority as Commander-in-Chief,

under the laws and usages of war or, alternatively pursuant to the Executive Order,

Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of Petitioner Al-Mithali. He is sued in his official capacity.

7.      Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force charged with operating the detention facilities at Guantánamo Bay. He has supervisory responsibility for Petitioner Al-Mithali and is sued in his official capacity.

8.      Respondent Army Col. Michael Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner Al-Mithali is presently held. He is the immediate custodian responsible for Petitioner Al-Mithali's detention and is sued in his official capacity.

9.      Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

### III.
### STATEMENT OF FACTS

10.      Upon information and belief, Petitioner Al-Mithali is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the United States government in any civil or military proceeding.

11.     Upon information and belief, Petitioner Al-Mithali is not, nor has he ever been, an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

12.     Petitioner Al-Mithali seeks to enforce his right to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' classification of him as an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive Branch of the United States government in the Combatant Status Review Tribunals.

13.     Upon information and belief, at the time of his seizure and detention, Petitioner Al-Mithali was not a member of the Taliban Government's armed forces or Al Qaeda, nor did he cause or attempt to cause any harm to American personnel or property prior to his detention.

14.     Petitioner Al-Mithali remains incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

15.     Petitioner Al-Mithali has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

16.     Upon information and belief, Petitioner Al-Mithali desires to pursue in the courts of the United States every available legal challenge to the lawfulness of his detention.

## The Authorization for Use of Military Force by Congress

17.     In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, the then ruling power in Afghanistan (the "Armed Conflict").

18.     On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Sept. 18, 2001) (the "AUMF").

19.     Upon information and belief, Petitioner Al-Mithali did not participate in an armed conflict against the United States at any point in time; therefore, he is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or under the AUMF.

20.     Upon information and belief, Petitioner Al-Mithali is not, and has never been, a member of Al Qaeda or any other terrorist group.  Prior to his detention, he did not commit any violent act against any American person or property or espouse any violent act against any American person or property.  He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of

international terrorism attributed by the United States to Al Qaeda or any other terrorist group.  He is not properly subject to the Executive Order issued by President Bush.

### The Executive Order

21.     On November 13, 2001, Respondent Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

> i.      is or was a member of the organization known as Al Qaeda;
> ii.     has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or
> iii.    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (Nov. 13, 2001) (the "Executive Order"). President Bush must make the determination in writing contemplated by the Executive Order.  The Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the AUMF.

22.     The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview.  It establishes no standards governing the exercise of his discretion.  Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face or of the evidence, if any, upon which such charges purport to be based.  The Executive Order authorizes detainees to be confined indefinitely without charges.  It contains no provision for a detainee to be notified of his rights under domestic or international law and provides

neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request.  It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III court.  In fact, the Executive Order expressly bars review by any court.  The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than Respondent Bush's written determination that an individual is subject to its terms.

23.    The Executive Order was promulgated in the United States and in this judicial district; the decision to incarcerate Petitioner Al-Mithali was made by Respondents in the United States and in this judicial district; the decision to detain Petitioner Al-Mithali at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner Al-Mithali, was, and is, being made by Respondents in the United States and in this judicial district.

24.    Respondent Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner Al-Mithali is subject to the Executive Order.

25.    Petitioner Al-Mithali is not properly subject to the Executive Order.

26.    Upon information and belief, Petitioner Al-Mithali was not arrested or detained by the United States in the course of his participation in an armed conflict against the United States.

27.    Petitioner Al-Mithali has not been, and is not being, detained lawfully either pursuant to the Executive Order, Respondent Bush's authority as Commander-in-Chief and/or under the laws and usages of war.

**Guantánamo Bay Naval Station**

28.     On or about January 11, 2002, the United States military began

transporting prisoners captured in Afghanistan to prison facilities at Guantánamo.

Currently, prisoners are housed in a maximum-security interrogation and detention center

at Guantánamo.

29.     Prisoners incarcerated at Guantánamo are entitled to test the legality of

their detention in the federal courts. *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004).

30.     Upon information and belief, by at least December 7, 2002, the United

States military transferred Petitioner Al-Mithali to Guantánamo, where he has been held

in the custody and control of Respondents ever since.

**The Conditions of Detention at Guantanamo**

31.     Since gaining control of Petitioner Al-Mithali, the United States military

has held him virtually *incommunicado.*

32.     Upon information and belief, and based on the experiences of other

detainees, it is likely that Petitioner Al-Mithali has been, or will be, forced to provide

involuntary statements to Respondents' agents at Guantánamo and interrogated

repeatedly by agents of the United States Departments of Defense and Justice, and the

Central Intelligence Agency, though he has not been charged with an offense and has not

been notified of any pending or contemplated charges.

33.     Petitioner Al-Mithali has not appeared before a lawful military or civilian

tribunal, and has not been provided access to counsel or the means to contact and secure

counsel.  He has not been adequately informed of his rights under the United States

Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1951 Convention Relating to the Status of Refugees or customary international law. Indeed, Respondents have taken the position that Petitioner Al-Mithali should not be informed of these rights. As a result, Petitioner Al-Mithali lacks any ability to protect or to vindicate his rights under domestic and international law.

34.    Upon information and belief, Petitioner Al-Mithali has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.,* Press Release, United Nations, *United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees* (Feb. 4, 2005); Press Release, International Committee of the Red Cross, *The ICRC's Work at Guantánamo Bay* (Nov. 30, 2004); Operational Update, International Committee of the Red Cross, *US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC* (Jul. 26, 2004); Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'* (2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5.

35.    In a confidential report to the United States government, the International Committee of the Red Cross ("the ICRC") charged the U.S. military with intentional use of psychological and physical coercion on prisoners during interrogations at Guantánamo

that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in

Guantánamo," N.Y. Times, Nov. 30, 2004, at A1.  The report includes claims that doctors

and other medical workers at Guantánamo participated in planning for interrogations.

*Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, *When Doctors Go to War*, New

England Journal of Medicine, Jan. 6, 2005, at 3-4.  Since details of the ICRC's report

emerged, new revelations of abuse and torture at Guantánamo have appeared, including

FBI memos detailing torture and "highly aggressive interrogation techniques" that

include 24-plus hour interrogations involving temperature extremes, dogs, prolonged

isolation, and loud music.  *See* Amnesty International, *Guantánamo: An Icon of

Lawlessness,* 3-5 (Jan. 2005); *see also* Neil A. Lewis, *Fresh Details Emerge on Harsh

Methods at Guantánamo*, N.Y. Times, Jan. 1, 2005, at A11; Carol D. Leonnig, *Further

Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos*, Wash. Post, Dec. 26,

2004, at A1; Neil A. Lewis and David Johnston, *New F.B.I. Files Describe Abuses of

Iraq Inmates*, N.Y. Times, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, *FBI

Agents Allege Abuse of Detainees at Guantánamo Bay*, Wash. Post, Dec. 21, 2004, at A1;

Neil A. Lewis, *F.B.I. Memos Criticized Practices at Guantánamo*, N.Y. Times, Dec. 7,

2004, at A19.  Even more recently, the Associated Press has reported allegations that

female Guantánamo interrogators have used sexual taunting, including smearing fake

menstrual blood on a detainee's face, to try to break Muslim detainees.  *Gitmo Soldier

Details Sexual Tactics*, Associated Press, Jan. 27, 2005.

    36.    The unlawful and unconstitutional interrogation techniques used by

Respondents at Guantánamo include not only physical and psychological abuse but also

other impermissible conduct contrary to due process requirements, including, upon

information and belief, having agents of the Government present themselves as lawyers

for the detainees during meetings with the detainees, for the purpose of extracting

information from the detainees.  *See* Sam Hanamel, *Lawyers Describe Guantánamo*

*Detainees as Emaciated, Abused*, Associated Press, Jan. 19, 2005.

      37.    Indeed, many of these violations – including isolation for up to thirty days,

twenty-eight hour interrogations, extreme and prolonged stress positions, sleep

deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create

anxiety and terror – were actually interrogation techniques approved for use at

Guantánamo by the most senior Department of Defense lawyer.  *See* Action Memo from

William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002),

*available at* http://slate.msn.com/features/whatistorture/pdfs/020109.pdf; Department of

Defense, *Working Group Report on Detainee Interrogations in the Global War on*

*Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at

62-65 (Apr. 4, 2003), *available at*

http://www.defenselink.mil/news/Jun2004/d20040622doc8.pdf.[1]

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at
Guantanamo are set out at length in a statement by numerous released British
detainees.  *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmad, *Composite Statement:*
*Detention in Afghanistan and Guantanamo Bay* 300, *at* http://www.ccr-
ny.org/v2/reports/docs/Gitmo compositestatementFINAL23july04.pdf).  The
Department of Defense also informed the Associated Press that a number of
interrogators at Guantanamo have been demoted or reprimanded after investigations
into accusations of abuse at the facility.  *See Report Details Guantanamo Abuses*,
Associated Press, Nov. 4, 2004.

38.    Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush.  Eric Lichtblau, *Gonzales Says '02 Humane-Policy Order on Detainees Doesn't Bind CIA*, N.Y. Times, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, *Torture by U.S. Personnel Illegal, Gonzales Tells Senate*, Wash. Post, Jan. 18, 2005, at A4.

39.    Upon information and belief, Petitioner Al-Mithali is at risk of being subject to the above coercive and unlawful interrogation techniques, violating his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment.

40.    In published statements, Respondent Bush and Respondent Rumsfeld, and predecessors of Respondents Hood and Bumgarner, including Marine Brig. Gen. Mike Lehnert, have proclaimed that the United States may hold the detainees under their current conditions indefinitely.  *See, e.g.,* Roland Watson, *British Team to Question Cuba Detainees*, The Times (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base.  He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, *Detainee Camp Getting More Scrutiny*, Associated Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN.  Lehnert

said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . ."); John Mintz, *Extended Detention in Cuba Mulled*, Wash. Post, Feb. 13, 2002 ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

41.    According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely. *See* Press Background Briefing, Department of Defense (Jul. 3, 2003), *at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Feb. 14, 2005).

42.    Counsel for Respondents have also consistently maintained that the United States has reserved the right to hold the detainees under their current conditions indefinitely. Transcript of Oral Argument on Motion to Dismiss at 22-24, *In re Guantánamo Detainee Cases*, No. 02-CV-0299 (D.D.C. Dec. 1, 2004) (statements of Principle Deputy Associate Attorney General Brian Boyle); *see also* Dana Priest, *Long-Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1. Moreover, the Government has recently acknowledged plans to begin constructing another permanent facility at Guantánamo. Christopher Cooper, *In Guantánamo, Prisoners Languish in a Sea of Red Tape*, Wall St. J., Jan. 26, 2005, at A1; *Guantánamo Takes on the Look of Permanency*, Associated Press, Jan. 9, 2005.

**Rendition**

43.    Upon information and belief, during interrogations, detainees have also been threatened with rendition or transfer to countries that routinely practice torture. The United States has secretly transferred detainees to such countries for detention in those countries without complying with the applicable legal requirements for extradition.

44.    This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture while in detention in other countries. *See* Jane Mayer, *Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program*, New Yorker, Feb. 14, 2005, at 106.

45.    The U.S. government's practice of rendition has been well documented by various major American and international news organizations, including, among others, the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC"). According to news accounts,

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics -- including torture and threats to families -- that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogation, the sources said.

Rajiv Chanrasekaran & Peter Finn, *"U.S. Behind Secret Transfer of Terror Suspects,"* Wash. Post, Mar. 11, 2002, at A1; *see also* Dana Priest, *"Long Term Plan Sought for Terror Suspects,"* Wash. Post, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,'

depend on arrangements between the United States and other countries, such as Egypt ...,

that agree to have local security services hold certain suspects in their facilities for

interrogation by CIA and foreign liaison officers.").

46.     Upon information and belief, Petitioner Al-Mithali is at risk of being

rendered, expelled or returned without lawful procedures to a country that engages in

torture during interrogations and incarceration.

47.     Upon information and belief, Petitioner Al-Mithali has a legitimate fear of

imminent harm if rendered to any other country, including his home country of Yemen,

due to the heightened risk of incarceration, torture, and persecution.

48.     The rendering of Petitioner Al-Mithali to Yemen or to another country for

interrogation and torture would violate the Convention Against Torture and other Cruel

and Degrading Treatment and Punishment, the international Covenant on Civil and

Political Rights, and the Third and Fourth Geneva Conventions.  This Court has

jurisdiction to address the potential rendition of Petitioner Al-Mithali pursuant to 28

U.S.C. §§2241(c)(1) and 1350.

## IV.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

49.     Petitioners incorporate by reference all preceding paragraphs as if set forth

fully herein.

50.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well the Due Process Clause of the Fifth Amendment to the Constitution of the United States. Respondent Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioner Al-Mithali the process accorded to persons seized and detained by the United States military in times of armed conflict as established by the United States Constitution, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

51.     To the extent that Petitioner Al-Mithali's detention purports to be authorized by the Executive Order (despite the fact that the Order has not been authorized by Congress), the Executive Order violates the Fifth Amendment on its face and as applied to Petitioner.

52.     Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

SECOND CLAIM FOR RELIEF
(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION
OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

53.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

54.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Al-Mithali to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

55.    Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

THIRD CLAIM FOR RELIEF
(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

56.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

57.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner Al-Mithali the process accorded to persons seized and detained by the United States military in times of armed conflict as established by the Third and Fourth Geneva Conventions.

58.    Violations of the Geneva Conventions are direct treaty violations, are violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

59.    Respondents are liable for the conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

60.    Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

### FOURTH CLAIM FOR RELIEF
### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS)

61.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

62.    By the actions described above, Respondents have denied and continue to deny Petitioner Al-Mithali the due process accorded to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

63.    Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

### FIFTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - TORTURE)

64.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

65.    By the actions described above, the Respondents, upon information and belief, directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner Al-Mithali in order to obtain coerced information or confessions from him, punish or intimidate Petitioner Al-Mithali or for other purposes.

66.    Upon information and belief, abuses included holding Petitioner Al-Mithali in conditions of isolation; making him constantly vulnerable to repeated

interrogation and severe beatings; keeping him in cages with no privacy; shackling him with heavy chains and irons; placing him in solitary confinement for minor rule infractions for prolonged periods of time; interrogating him while shackled and chained in painful positions; exposing him to extreme temperatures; subjecting him to violence or to the threat of violence; threatening him with rendition to countries that practice torture; sexually humiliating him; denying him access to counsel and family; depriving him of adequate medical care; and subjecting him to repeated psychological abuse.

67.     The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

68.     Respondents are liable for such conduct to the extent they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit such acts of torture against Petitioner Al-Mithali.

69.     Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

### SIXTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)

70.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

71.     Upon information and belief, the acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner Al-Mithali, forcing him to act

against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

72.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

73.    Respondents are liable for such conduct to the extent that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner Al-Mithali.

74.    Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE -
ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

75.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

76.    The acts described herein constitute arbitrary arrest and detention of Petitioner Al-Mithali in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that such acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other

21

international instruments, international and domestic judicial decisions, and other
authorities.

77.     Respondents are liable for such conduct in that they directed, ordered,
confirmed, ratified, and/or conspired together and with others to bring about the arbitrary
arrest and prolonged arbitrary detention of Petitioner Al-Mithali in violation of the law of
nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that such acts violated
customary international law prohibiting arbitrary arrest and prolonged arbitrary detention
as reflected, expressed, and defined in multilateral treaties and other international
instruments, international and domestic judicial decisions, and other authorities.

65.     As a result of Respondents' unlawful conduct, Petitioner Al-Mithali has
been and continues to be deprived of his freedom, separated from his family, and upon
information and belief, forced to suffer severe physical and mental abuse.

66.     Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and
injunctive relief, as well as any other relief the Court may deem appropriate.

EIGHTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

78.     Petitioners incorporate by reference all preceding paragraphs as if set forth
fully herein.

79.     By the actions described above, the Respondents directed, ordered,
confirmed, ratified, and/or conspired to bring about the enforced disappearance of
Petitioner Al-Mithali in violation of the law of nations under the Alien Tort Statute, 28
U.S.C. § 1350, in that such acts violated customary international law prohibiting enforced
disappearances as reflected, expressed, and defined in multilateral treaties and other

international instruments, international and domestic judicial decisions, and other authorities.

80.     As a result of Respondents' unlawful conduct, Petitioner Al-Mithali has been and continues to be deprived of his freedom, separated from his family and, upon information and belief, forced to suffer severe physical and mental abuse.

81.     Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

### NINTH CLAIM FOR RELIEF
### (ARTICLE II OF THE UNITED STATES CONSTITUTION- UNLAWFUL DETENTION)

82.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

83.     Upon information and belief, Petitioner Al-Mithali is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.

67.     The Executive Branch lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi*, 124 S. Ct. 2633 at 2642.

68.     By the actions described above, Respondent Bush has exceeded and continues to exceed his authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Al-Mithali and transfer him to military detention, and by authorizing and ordering his continued military detention at Guantánamo. All of the Respondents acted and continue to act without

lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner Al-Mithali.

69.     The military seizure and detention of Petitioner Al-Mithali by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution.  To the extent that Respondents assert that Petitioner's detention is authorized by the Executive Order, that Order exceeds Respondent Bush's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner Al-Mithali.

70.     To the extent that Respondents assert that their authority to detain Petitioner Al-Mithali derives from a source other than the Executive Order, including without limitation Respondent Bush's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack such authority as a matter of fact and law.

71.     Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

TENTH CLAIM FOR RELIEF
(VIOLATION OF THE ADIMINSTRATIVE PROCEDURES ACT --
ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

84.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

85.     Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States.  *See, e.g.,* Army Reg. 190-8 at 1-6(g)

("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

86.    By arbitrarily and capriciously detaining Petitioner Al-Mithali in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

87.    Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF
(VIOLATION OF THE ADMINSTRATIVE PROCEDURES ACT --
ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS )

88.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

89.    By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Al-Mithali the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

90.    Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief as well as any other relief the Court may deem appropriate.

### TWELFTH CLAIM FOR RELIEF
### (VIOLATION OF THE ADMINSTRATIVE PROCEDURES ACT --
### TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

91.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

92.     By the actions described above, the Respondents, upon information or belief, have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner Al-Mithali to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

93.     Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

### THIRTEENTH CLAIM FOR RELIEF
### (VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

94.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

95.     Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Al-Mithali's right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Al-Mithali's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

96.     Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## FOURTEENTH CLAIM FOR RELIEF
### (DUE PROCESS CLAUSE - RENDITION)

97.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

98.    Upon information and belief, Petitioner Al-Mithali is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

99.    Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## FIFTEENTH CLAIM FOR RELIEF
### (CONVENTION AGAINST TORTURE AND
### CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

100.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

101.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85 (1984), and the 1951 Convention and 1967 Protocol Relating to the Status of Refugees, 19 U.S.T. 6259.

102.    Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

SIXTEENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- RENDITION)

103.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

104.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute.

105.    Accordingly, Petitioner Al-Mithali is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

**V.**
**PRAYER FOR RELIEF**

WHEREFORE, Petitioners respectfully request that the Court grant the following relief:

1.    Designating Ali Aziz Ahmed Al-Mithali as Next Friend of Hayal Aziz Ahmed Al-Mithali;

2.    Issuing the Writ of *Habeas Corpus* and ordering Respondents to release Petitioner Al-Mithali from his current unlawful detention;

28

3.      Ordering that Petitioner Al-Mithali be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

4.      Ordering that Petitioner Al-Mithali cannot be transferred to any other country without his specific written agreement or the written agreement of his counsel while this action is pending;

5.      Ordering that Petitioner Al-Mithali cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that he will be subject to torture;

6.      Ordering Respondents to allow counsel to meet and confer with Petitioner Al-Mithali, in private and unmonitored attorney-client conversations;

7.      Ordering Respondents to cease all interrogations of Petitioner Al-Mithali while this litigation is pending;

8.      Ordering Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner Al-Mithali;

9.      Ordering and declaring the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the United States Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and/or customary international law;

10.      Ordering and declaring that the prolonged, indefinite, and restrictive detention of Petitioner Al-Mithali without due process is arbitrary and

unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and/or customary international humanitarian law; and

11.     Granting such other and further relief as the Court may deem just or appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal statutory law, and/or international law.

Dated:        November 7, 2005          Respectfully submitted,

Counsel for Petitioners:

Jennifer C. Argabright (Bar No. 480763)
John B. Missing (Bar No. 425469)
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W. Ste 1100E
Washington, D.C. 20004-1169
Tel:  (202) 383 8000
Fax:  (202) 383 8118


Jeffrey I. Lang
Jennifer R. Cowan
Ellen A. Hochberg
Tatia L. Miller
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6386


*Of Counsel*
Barbara Olshansky
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

**CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION**

Counsel for Petitioner certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioner without compensation.

Dated:        November  7 , 2005

Jennifer C. Argabright (Bar. No. 480763)
John B. Missing (Bar No. 425469)
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W. Ste 1100E
Washington, D.C. 20004-1169
Tel:  (202) 383 8000
Fax:  (202) 383 8118


Jeffrey I. Lang
Jennifer R. Cowan
Ellen A. Hochberg
Tatia L. Miller
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6386


*Of Counsel*
Barbara Olshansky
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

# <u>EXHIBIT A</u>

To the Petition for Issuance of a Writ of
*Habeus Corpus*

On Behalf of Petitioner,

## HAYAL AZIZ AHMED AL-MITHALI

Date: 18 June , 2005

## Authorization

I am Ali Aziz Ahmed al-Mithali , and I have had the concept of 'next friend' explained to me in my native language. I wish to act as next friend for my brother , who is a prisoner being held in Guantanamo Bay, and whose name is Hayal Aziz Ahmed al-Mithali (the 'prisoner'). I hereby authorize Tina Foster (and the Center for Constitutional Rights), as well as Clive Stafford Smith (and Justice In Exile), and any person assigned by these lawyers, to act on my behalf and on the prisoner's behalf, to secure any documents and information concerning the prisoner that are necessary for his defense, and to seek whatever redress they believe to be in his best interests, in the courts of the United States, and in any other legal forum available. I am sure that he would want me to assert these rights. He is a citizen of Yemen .

_____

Next Friend

Witnessed: _____

_____

Print Name: Tina M. Foster