Accordingly, it is this 31st day of March, 2005,

**ORDERED** that the respondents' motion for stay is **GRANTED**; and it is

**FURTHER ORDERED** that the respondents, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, or having actual or implicit knowledge of this Order by personal service or otherwise, may not remove the petitioners from GTMO unless this court and counsel for petitioners receive thirty days' advance notice of such removal; and it is

**FURTHER ORDERED** that the court **ENTERS** by way of reference the protective ordered previously entered in the other Guantanamo detainee cases. *E.g.*, Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, *In re Guantanamo Detainee Cases*, No. 02-0299 (D.D.C. Oct. 8, 2004); and it is

**FURTHER ORDERED** that, in light of this order, the petitioners' motion for preliminary injunction is denied without prejudice as moot.

**SO ORDERED**.



                                        RICARDO M. URBINA
                                        United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMIL EL-BANNA et al.,                   )
                                         )
         Petitioners,                    )
                                         )
              v.                         )     Civil Action No. 04-1144 (RWR)
                                         )
GEORGE W. BUSH et al.,                   )
                                         )
         Respondents.                    )
                                         )

HANI SALEH RASHID ABDULLAH               )
et al.,                                  )
                                         )
         Petitioners,                    )
                                         )
              v.                         )     Civil Action No. 05-23 (RWR)
                                         )
GEORGE W. BUSH et al.,                   )
                                         )
         Respondents.                    )
                                         )

ABDULLAH IBRAHIM ABDULLAH                )
AL RASHAIDAN et al.,                     )
                                         )
         Petitioners,                    )
                                         )
              v.                         )     Civil Action No. 05-586 (RWR)
                                         )
GEORGE W. BUSH et al.,                   )
                                         )
         Respondents.                    )
                                         )

-2-

## MEMORANDUM ORDER

Petitioners Jamil El-Banna, Bisher Al-Rawi, Martin Mubanga,[1] Hani Abdullah, Rami Al-Oteibi,[2] and Abdullah Al Rashaidan,[3] in three separate cases seek writs of habeas corpus, challenging the legality of their detention by the United States at Guantanamo Bay Naval Base, Cuba. Respondents moved for a stay of proceedings in each case pending resolution of the appeals in In re Guantanamo Detainee Cases, — F. Supp. 2d — , 2005 WL 195356 (D.D.C. Jan. 31, 2005), appeal docketed, No. 05-8003 (D.C. Cir. March 10, 2005), and Boumediene v. Bush et al., — F. Supp. 2d — , 2005 WL 100924 (D.D.C. Jan. 19, 2005), appeal docketed, No. 05-5062 (D.C. Cir. March 10, 2005). A primary purpose of a stay pending resolution of the issues on appeal is to preserve the status quo among the parties. Washington Area Metro. Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977) (a stay pending appeal is preventative or protective, and seeks to maintain the status quo pending a final determination of issues on appeal); see Warm Springs Dam Task Force v. Gribble, 417 U.S. 1301, 1310 (1974) (granting stay pending appeal to

---

[1]  Petitioner-detainees in Civil Action No. 04-1144.

[2]  Petitioner-detainees in Civil Action No. 05-23.

[3]  Petitioner-detainee in Civil Action No. 05-586.

-3-

maintain the status quo between the parties). In Civil Action
No. 04-1144, Judge Joyce Hens Green entered a stay order on
February 3, 2005. (Dkt. # 122.) In Civil Action No. 05-23, a
stay was entered on March 16, 2005 that nevertheless allowed
petitioners to seek from this court emergency relief in
appropriate circumstances, such as when petitioners reasonably
believe they will be removed from the jurisdiction of this court.
(Dkt. # 16).[4] In Civil Action No. 05-586, respondents' motion to
stay the proceedings is pending.

In each action, petitioners have moved for a preliminary
injunction to enjoin respondents from transferring any of the
petitioner-detainees from United States custody at Guantanamo Bay
Naval Base to any other location or any other custodian without
providing 30 days notice of the intended transfer or removal.
Petitioners fear that respondents may involuntarily "render" the
detainees to other countries, where they may be subject to
continued detention without due process of law or to mental or
physical abuse, and, by means of transfer, divest this court of
jurisdiction either as a practical or legal matter. Respondents
oppose petitioners' motions for a preliminary injunction.

_____

[4] A protective order was entered in that case on the same
day. (Dkt. # 17.)

-4-

Petitioners' fears do not appear fanciful. Petitioners cite to a report of an investigative journalist describing the rendition of several named individuals who have been transferred in and out of United States custody, a practice respondents have not denied in these proceedings. Further, respondents concede they have transferred custody of many Guantanamo detainees to foreign sovereigns and assert that such transfer divests this court of jurisdiction over pending habeas corpus petitions. Another press report cited by petitioners, and not denied by respondents, indicates that respondents either have, or had, plans to accelerate the transfer of Guantanamo detainees to other sovereigns and other locations.

The outcome petitioners fear, if realized, would improperly subvert the court's ability to adjudicate these actions on their merits. See Rasul v. Bush, 124 S. Ct. 2686, 2698 (2004) ("We therefore hold that [28 U.S.C.] § 2241 confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base."). Furthermore, such a result would nullify the stay's purpose of preserving the status quo between the parties.

"It is well established that 'the federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts for the

-5-

protection of their rights in those tribunals.'" Abu Ali v. Ashcroft, 350 F. Supp. 2d 28, 54 (D.D.C. 2004) (quoting Alabama Great S. R. Co. v. Thompson, 200 U.S. 206, 218 (1906)). In addition, a court may, in appropriate situations, specify protective conditions in balancing the hardship necessarily imposed on the party whose suit or execution of judgment has been stayed pending appeal. Cooks v. Fowler, 459 F.2d 1269, 1272-73 & n.27 (D.C. Cir. 1971) (affirming condition of stay requiring tenant appealing judgment to deposit funds in court registry pending appeal); see also, City of Portland, Or. v. Federal Maritime Comm'n, 433 F.2d 502, 504 (D.C. Cir. 1970) (directing the proponent of a stay in a case challenging shippers' exclusion of one city's port from service to "be prepared to state reasons why this court should not impose a conditional stay requiring the rotation of service among the ports involved pending final review and determination."); Scott v. Scott, 382 F.2d 461, 462 (D.C. Cir. 1967) (discussing a stay of execution of judgment conditioned upon support payments); Center for Int'l Environmental Law v. Office of the U.S. Trade Rep., 240 F. Supp. 2d 21, 23 (D.D.C. 2003) (conditioning stay pending appeal on party seeking an expedited appeal). Where, as here, the condition imposed on the proponent of the stay is "neither heavy nor unexpected," imposing a protective condition is well within a

-6-

court's discretion.  Cooks v. Fowler, 459 F.2d at 249 (quoting

Bell v. Tsintolas Realty Co., 430 F.2d at 482 (D.C. Cir. 1970)

(stating "[w]e have little doubt that . . . [a court] may fashion

an equitable remedy to avoid placing one party at a severe

disadvantage during the period of litigation")).

Therefore, here

the court will "guard against depriving the processes
of justice of their suppleness of adaptation to varying
conditions." Landis v. North American Co., 299 U.S.
248, 256 (1936).  Coextensive with a district court's
inherent power to stay proceedings is the power to
craft a stay that balances the hardships to the
parties.  Id. at 255 (noting concern regarding a stay
causing "even a fair possibility . . . [of] damage to
some one else."); see also Clinton v. Jones, 520 U.S.
681, 707 (1997) (noting that "burdens [to the parties]
are appropriate matters for the District Court to
evaluate in its management of the case.").

Al-Oshan v. Bush, Civil Action No. 05-520 (D.D.C. Mar. 31, 2005)

(Urbina, J.) (Order, Dkt. # 12).  Accordingly, it is hereby

ORDERED that respondents' motion for a stay in Civil Action

No. 05-586 (Dkt. # 5) be, and hereby is, GRANTED in part and

DENIED in part.  The proceedings in Civil Action No. 05-586 are

STAYED pending resolution of the appeals pending before the

United States Court of Appeals for the District of Columbia

Circuit, in In re Guantanamo Detainee Cases and Boumediene v.

Bush et al., except that petitioners in Civil Action Nos. 04-1144

and 05-586 may seek emergency relief from this court in

-7-

appropriate circumstances, such as when petitioners have reason to believe that they are facing the possibility of continued detention at the request of the United States in a location that does not provide access to this court. It is further

ORDERED that in all three cases captioned above, respondents, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, or having actual or implicit knowledge of this Order by personal service or otherwise, may not transfer or remove the detained petitioners from United States custody at Guantanamo Bay unless this court and counsel for petitioners receive thirty days' advance notice of such transfer or removal. It is further

ORDERED that, given the ongoing conduct of combatant status review tribunals, respondents shall file factual returns relating to each detained petitioner within 30 days after entry of a protective order in that petitioner's action, unless such returns have been filed already. It is further

ORDERED that the motions for a preliminary injunction in all three cases captioned above (Dkt. # 128, Civil Action No. 04-1144; Dkt. # 15, Civil Action No. 05-23; Dkt. # 3, Civil Action No. 05-586) be, and hereby are, DENIED as moot.

-8-

SIGNED this 8th day of April, 2005.


_____/s_____
RICHARD W. ROBERTS
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MURAT KURNAZ, et al. ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil No. 04-1135 (ESH) |
| ) | |
| GEORGE W. BUSH, et al., ) | |
| ) | |
| Respondents. ) | |
| ) | |
| JAMEL AMEZIANE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil No. 05-0392 (ESH) |
| ) | |
| GEORGE W. BUSH, et al., ) | |
| ) | |
| Respondents ) | |

## ORDER

Petitioners in the above-captioned cases have each requested a preliminary injunction
ordering respondents to provide advance notice of petitioners' transfer from the United States
Naval Base at Guantanamo Bay, Cuba, where they are currently detained. Murat Kurnaz, a
twenty-two year old Turkish citizen who was born and raised in Germany, has been detained in
Guantanamo Bay for more than three years. He requests thirty-days notice to counsel of any
proposed transfer. Jamel Ameziane is a citizen of Algeria and has been detained for more than
two years. Mr. Ameziane is as yet unaware of his representation by counsel. His counsel

-1-

requests that petitioner not be transferred from Guantanamo until counsel has had an opportunity to meet with him to ascertain his interests.

Kurnaz's case was initially consolidated before Judge Joyce Hens Green and has been stayed pending appeal to the United States Court of Appeals for the District of Columbia. *See* Order Granting in Part and Denying in Part Resp'ts' Mot. for Certification of Jan. 31, 2005 Orders and For a Stay, *In re Guantanamo Detainee Cases*, No. 02-0299, *et al.* (D.D.C. Feb. 3, 2005).[1] Since Ameziane's Petition for Writ of Habeas Corpus was filed subsequent to Judge Green's decision, it is not subject to the stay or protective orders entered by her. This Court ordered respondents to show cause by April 1, 2005 why Ameziane's writ should not be granted. (Show Cause Order, Mar. 10, 2005.) Respondents have, however, moved for a stay, which Ameziane opposes. Ameziane has also moved for entry of a protective order. The parties presented oral argument on each of these motions on April 8, 2005.

As neither Ameziane nor respondents oppose entry of protective orders identical to those entered by Judge Green, the Court does so by order below. The Court also concludes that respondents' Motion to Stay should be granted. However, to ensure that the proceedings can continue in an orderly fashion in the event that the detainees prevail on appeal, respondents are ordered to provide factual returns to Ameziane's counsel within ninety days of the date of this Order. Finally, upon consideration of the arguments of the parties, in view of the orders issued

---

[1] The stay entered by Judge Green does not bar the Court's consideration of Kurnaz's motion for injunctive relief. As noted by Judge Collyer, the stay was intended to save time, money, and judicial resources, but "could not be read to also deprive Petitioners of their rights to seek emergency assistance when faced with continued detention at the request of the United States but no venue in which to challenge its legality." *Abdah v. Bush*, 2005 WL 711814, at *4 (D.D.C. Mar. 12, 2005).

-2-

by four other judges on this Court granting substantially identical relief as is requested in this case, *see Al-Marri v. Bush*, No. 04-2035 (D.D.C. Apr. 4, 2005); *Al-Joudi v. Bush*, No. 05-0301 (D.D.C. Apr. 4, 2005); *Al-Oshan v. Bush*, No. 05-0520 (D.D.C. Mar. 31, 2005); *Al-Shiry v. Bush*, No. 04-0490 (D.D.C. Apr. 1, 2005); *Abdah v. Bush*, 2005 WL 711814 (D.D.C. Mar. 29, 2005), and for the reasons stated below, the Court concludes that petitioners must be given notice of a potential transfer in a limited type of circumstance. In particular, if respondents have not reached a diplomatic understanding with the transferee country that a petitioner's transfer from Guantanamo is for release only, respondents must provide that petitioner's counsel with thirty days advance notice of the proposed transfer.

In *Rasul v. Bush*, 124 S. Ct. 2686 (2004), the Supreme Court held that federal courts have jurisdiction to determine the legality of the ongoing detention of petitioners held in Guantanamo Bay. *Id.* at 2698. *See also In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443, 464 & 479 (D.D.C. 2004) (Guantanamo detainees possess rights under the Due Process Clause and Geneva Convention); *Hamdan v. Rumsfeld*, 344 F. Supp. 2d 152, 165 (D.D.C. 2004) (Guantanamo detainees possess rights under Geneva Convention). Accordingly, the Court must also have authority to preserve this jurisdiction if it can be shown that respondents are acting to circumvent it. *See* All Writs Act, 28 U.S.C. § 1651(a); *Al-Marri*, No. 04-2035, slip. op. at 10 n.11 (quoting *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996)) (All Writs Act "empowers a district court to issue injunctions to protect its jurisdiction"); *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 54 (D.D.C. 2004) (federal courts "may and should take such action as will defeat attempts to wrongfully deprive parties" of their right to sue in federal court) (internal citation omitted); *Lindstrom v. Graber*, 203 F.3d 470, 474-76 (7th Cir. 2000) (All Writs Act

-3-

permits court to stay extradition pending appeal of habeas corpus petition); *Michael v. INS*, 48 F.3d 657, 664 (2d Cir. 1995) (All Writs Act permits federal Court of Appeals to stay a deportation order pending review of its legality). *Cf.* Fed. R. App. P. 23(a); *Jago v. U.S. Dist. Court*, 570 F.2d 618, 623 (6th Cir. 1978) (Rule 23(a) preserves district judge's authority to issue order regarding custody of prisoner pending review of habeas petition).

Respondents state that some petitioners may be transferred to custody of a foreign government

> for investigation and possible prosecution and continued detention when those governments are willing to accept responsibility for ensuring, consistent with their laws, that the detainees will not continue to pose a threat to the United States and its allies. Such governments can include the government of a detainee's home country, or a country other than the detainee's home country that may have law enforcement or prosecution interest in the detainee.

(Waxman Decl. ¶ 3.) According to respondents, once such a transfer is effected, the Court would lose its jurisdiction. While the Court has no occasion to decide at this time whether this or any other type of transfer could be subject to an injunction, several examples offered by petitioners raise sufficiently serious concerns to justify the limited remedy of advance notice. For instance, a petitioner could be transferred to the custody of a different United States custodian in a foreign country, such as the United States military base in Afghanistan. (*See* Kurnaz Reply at 14.) Alternatively, he could be transferred to the custody of a foreign government, but held under the direction and control of the United States government. *See Abu Ali*, 350 F. Supp. 2d at 69. Or, he could be transferred to the custody of a country where he has never had occasion to violate that country's laws, again raising a possible question as to the governmental claim of an "independent law enforcement" interest. In such narrowly circumscribed circumstances, closer

scrutiny of the transfer might well be appropriate in order to preserve the petitioner's right to obtain review of the legality of his detention.

For these reasons, it is hereby

**ORDERED** that respondents' Motion to Stay is **GRANTED** and *Ameziane v. Bush*, No. 05-0392, is **STAYED** pending resolution of all appeals in *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005), and *Khalid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005). This stay shall not, however, prevent the parties from availing themselves of the procedures set forth in the Protective Order entered below, nor shall it bar the filing or disposition of any motion for emergency relief.

It is further **ORDERED** that respondents shall provide a factual return to the Court and to counsel for Ameziane within ninety (90) days of the date of this Order; and it is further

**ORDERED** that the Court **ENTERS** by way of reference the protective order and supplementary orders previously entered in *In re Guantanamo Bay Detainee Cases*, Civil No. 02-0299, *et al.*, by Judge Joyce Hens Green.  These include the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004; the Order Addressing Designation Procedures for "Protected Information," entered on November 10, 2004; and the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, issued on December 13, 2004.

It is further **ORDERED** that, where respondents do not have an understanding with the receiving country that a transfer from Guantanamo Bay, Cuba is for purposes of release only, respondents shall provide petitioner's counsel with thirty (30) days advance notice of the transfer,

including the proposed destination and conditions of transfer.

**ORDERED** that petitioners' motions for preliminary injunctions are **DENIED AS MOOT**.


_____ s/ _____
ELLEN SEGAL HUVELLE
United States District Judge

Date: April 12, 2005

-6-

LEXSEE 2005 U.S. DIST. LEXIS 4942

**MAHMOAD ABDAH, et al., Petitioners, v. GEORGE W. BUSH, et al., Respondents.**

**Civil Action 04–1254 (HHK)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*2005 U.S. Dist. LEXIS 4942*

**March 29, 2005, Decided**

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part *Abdah v. Bush, 2005 U.S. Dist. LEXIS 17189 (D.D.C., June 10, 2005)*

**PRIOR HISTORY:** *Abdah v. Bush, 2005 U.S. Dist. LEXIS 4940 (D.D.C., Mar. 18, 2005)*

**DISPOSITION:** Plaintiffs' motion for preliminary injunction granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1]  For MAHMOAD ABDAH, Detainee, Camp Delta, MAHMOAD ABDAH AHMED, as next friend of Mahmoad Abdah, also known as MAHMOOD ABDO AHMED BIN AHMED, MAJID MAHMOUD AHMED, Detainee, Camp Delta, also known as MAJED MOHMOOD, also known as MAJID M. ABDU AHMED, MAHMOUD AHMED, as next friend of Majid Abdah Ahmed, ABDULMALIK ABDULWAHHAB AL-RAHABI, Detainee, Camp Delta, AHMED ABDULWAHHAB, as next friend of Abdulmalik Abdulwahhab Al-Rahabi, MAKHTAR YAHIA NAJI AL-WRAFI, Detainee, Camp Delta, FOADE YAHIA NAJI AL-WRAFIE, as next friend of Makhtar Yahia Naji Al-Wrafie, AREF ABD IL RHEEM, Detainee, Camp Delta, AREF ABD AL RAHIM, as next friend of Aref Abd II Rheem, YASEIN KHASEM MOHAMMAD ESMAIL, Detainee, Camp Delta, JAMEL KHASEM MOHAMMAD, as next friend of Yasein Khasem Mohammad Esmail, ADNAN FARHAN ABDUL LATIF, Detainee, Camp Delta, MOHAMED FARHAN ABDUL LATIF, as next friend of Adnan Farhan Abdul Latif, JAMAL MAR'I, Detainee, Camp Delta, NABIL MOHAMED MAR'I, as next friend of Jamal Mar'i, OTHMAN ABDULRAHEEM MOHAMMAD, Detainee, Camp Delta, ARAF ABDULRAHEEM MOHAMMAD, as next friend Othman Abdulraheem Mohammad, ADIL EL HAJ OBAID, Detainee, Camp Delta, NAZEM SAEED EL HAJ OBAID, as next friend of Adil Saeed El [*2]  Haj Obaid, MOHAMED MOHAAMED HASSAN ODAINI, Detainee, Camp Delta, BASHIR MOHAMED HASSAN ODAINI, as next friend of Mohamed Mohamed Hassan Odaini, SADEQ MOHAMMED SAID, Detainee, Camp Delta, ABD ALSALAM MOHAMMED SAEED, as next friend of Sadeq Mohammed Said, FAROUK ALI AHMED SAIF, Detainee, Camp Delta, SHEAB AL MOHAMEDI, as next friend of Farouk Ali Ahmed Saif, SALMAN YAHALDI HSAN MOHAMMED SAUD, Detainee, Camp Delta, YAHIVA HSANE MOHAMMED SAUD AL-RBUAYE, as next friend of Salman Yahaldi Hsan Mohammed Saud, Petitioners: David H. Remes, Marc D. Falkoff, COVINGTON & BURLING, Washington, DC.

For GEORGE W. BUSH, JR., President of the United States, Respondent:  Lisa Ann Olson, Preeya M. Noronha, Robert J. Katerberg, U.S. DEPARTMENT OF JUSTICE, Washington, DC. Terry Marcus Henry, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington, DC.

For DONALD RUMSFELD, Secretary, United States Department of Defense, JAY HOOD, Army Brig. Gen. Commander, Joint Task Force-GTMO, NELSON J. CANNON, Army Col., Commander, Camp Delta, all respondents are sued in their official and personal capacities, Respondents:  David H. Remes, COVINGTON & BURLING, Washington, DC. Lisa Ann Olson, Preeya M. Noronha, Robert [*3]  J. Katerberg, U.S. DEPARTMENT OF JUSTICE, Washington, DC. Terry Marcus Henry, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington, DC.

CHARLES B. GITTINGS, JR., Amicus, Pro se, Manson, WA.

**JUDGES:** Henry H. Kennedy, Jr., United States District Judge.

**OPINIONBY:** Henry H. Kennedy, Jr.

2005 U.S. Dist. LEXIS 4942, *3

**OPINION:**

### MEMORANDUM OPINION

Petitioners are aliens who are being held by the United States military at Guantanamo Bay Naval Base in Cuba and who have petitioned this court for a writ of habeas corpus. While the merits of their individual claims have not yet been adjudicated, this court (Green, J.) has determined that some of the causes of action set forth in their habeas petition survive Respondents' motion to dismiss. This ruling is currently on appeal. Presently before the court is Petitioners' motion for a preliminary injunction. Asserting that Respondents have contemplated or are contemplating transferring them to the custody of foreign nations to be further detained and possibly tortured, Petitioners seek an order from this court that would require Respondents to provide their counsel and this court with 30 days' advance notice of any Petitioner's removal from Guantanamo. Upon consideration of the [*4] briefing of the parties, the submissions that accompany the briefing, and the arguments of counsel at a hearing, the court concludes that Petitioners' motion should be granted.

### I. BACKGROUND

Petitioners are thirteen n1 Yemeni nationals who each allegedly traveled to Pakistan for reasons "unrelated to any activities of al Qaeda or the Taliban," Pet. P 19, n2 such as pursuing religious studies, *id.* PP 26, 40, 43, 45, 47; obtaining medical care, *id.* P 33; and seeking better employment, *id.* P 36. All were "arrested by Pakistani police as part of a dragnet seizure of Yemeni citizens." *Id.* P 19. Details of their capture and subsequent movements are hazy, but Petitioners allege that they were seized in 2001 or 2002, *id.* P 20, "far from the battlefield." *Id.* P 61. All were then transferred to United States military custody and transported to the United States Naval Base at Guantanamo Bay, Cuba ("Guantanamo"), where they have since been held, "virtually *incommunicado," id.* P 63, as "enemy combatants." All Petitioners deny that they are enemy combatants or that they have otherwise been "part of or supporting forces hostile to the United States." *Id.* P [*5] 15.

n1 The court notes some inconsistency in the parties' briefing regarding the number of Petitioners included in this action. The petition for writ of habeas corpus lists *fourteen* individuals: (1) Mahmoad Abdah; (2) Majid Mahmoud Ahmed; (3) Abdulmalik Abdulwahab Al-Rahabi; (4) Makhtar Yahia Naji Al-Wrafie; (5) Aref Abd Il Rheem; (6) Yasein Khasem Mohammad Esmail; (7) Adnan Farhan Abdul Latif; (8) Jamal Mar'i; (9) Othman Abdulraheem Mohammad; (10) Adil Saeed El

Haj Obaid; (11) Mohamed Mohamed Hassan Odaini; (12) Sadeq Mohammed Said; (13) Farouk Ali Ahmed Saif; and (14) Salman Yahaldi Hsan Mohammed Saud. Pet. PP 22–51 and caption.

Petitioners' motion for a preliminary injunction identifies *thirteen* Petitioners, Pet'rs' Mot. at 2, while Respondents mention *twelve* detainees, stating they have no records corresponding to Aref Abd Il Rheem. Resp'ts' Opp'n at 2, n.1.

n2 "Pet." refers to Petitioners' petition for writ of habeas corpus filed July 27, 2004.

On June 28, 2004, the Supreme Court determined [*6] that "the federal courts have jurisdiction to determine the legality of the Executive's potentially indefinite detention of [the detainees at Guantanamo Bay] who claim to be wholly innocent of wrongdoing." *Rasul v. Bush, 159 L. Ed. 2d 548, 542 U.S. 466, 124 S. Ct. 2686, 2699 (2004).* Shortly thereafter, the Department of Defense issued an order creating the Combatant Status Review Tribunal ("CSRT") to evaluate the status of each detainee at Guantanamo. *In re Guantanamo Detainee Cases, 355 F. Supp. 2d 443, 450 (D.D.C. 2005), appeal docketed,* No. 05-8003 (D.C. Cir. Mar. 21, 2005). On July 27, 2004, Petitioners filed a petition for writ of habeas corpus, seeking to obtain "a judicial determination of whether there is a factual basis for Respondent's determination that they are 'enemy combatants,'" Pet. P 14, and asserting that the government has "advanced no justification" for their "arrest, transportation and continued incarceration." *Id.* P 16. Their petition was coordinated with ten other habeas cases filed by other Guantanamo detainees to allow Judge Joyce Hens Green, the designated judge, to resolve common issues of law and fact. [*7]

On January 31, 2005, Judge Green issued a memorandum opinion and order granting in part and denying in part Respondents' motion to dismiss, finding that the detainees "have the fundamental right to due process of law under the *Fifth Amendment," In re Guanatanamo Detainee Cases, 355 F. Supp. 2d at 463,* and that the CSRT proceedings failed to protect those due process rights. *Id.* at 468.

Subsequently, Judge Green issued an order certifying her opinion for interlocutory appeal and staying the proceedings in the eleven cases pending resolution of Respondents' appeal. Petitioners now contend that "Respondents have contemplated or are contemplating removal of some or all Petitioners from Guantanamo to foreign territories for torture or indefinite imprisonment without due process of law." Pet'rs' Mot. for Prelim. Inj. ("Pet'rs' Mot.") at 1. Fearing that any such transfer

would "also circumvent[] Petitioners' right to adjudicate the legality of their detention," *id.* at 6, Petitioners seek a preliminary injunction requiring Respondents to provide Petitioners' counsel with 30 days' advance notice of "any intended removal of Petitioners from Guantanamo [*8] Bay Naval Base," *id.* at 1, to enable counsel to contest the removal if they deem it advisable to do so.

## II. ANALYSIS

### A. Stay of February 3, 2005

Respondents first argue that the stay order Judge Green issued in the eleven coordinated cases prevents this court from considering the merits of the present motion. This argument is unavailing.

On February 3, 2005, Judge Green issued an order in the eleven habeas cases that "stayed [the cases] for all purposes pending resolution of all appeals in this matter." *In re Guantanamo Detainee Cases, 2005 U.S. Dist. LEXIS 5295, No. 04–1254 (D.D.C. Feb. 3, 2005)* (order). Courts have consistently recognized that a stay may be necessary preserve the status quo among the parties pending appeal. *See, e.g., Warm Springs Dam Task Force v. Gribble, 417 U.S. 1301, 1310, 41 L. Ed. 2d 654, 94 S. Ct. 2542 (1974); United Mun. Distrib. Group v. FERC, 235 U.S. App. D.C. 316, 732 F.2d 202, 205 (D.C. Cir. 1984); NLRB v. Sav-on Drugs, Inc., 704 F.2d 1147, 1149 (9th Cir. 1983); Metzler v. United States, 832 F. Supp. 204, 208 (E.D. Mich. 1993).* Here, Petitioners are not asking the court to bypass the stay and resume [*9] adjudication of their underlying claims. Rather, they seek to prevent Respondents from unilaterally and silently taking actions that may render their claims moot; thus the injunctive relief Petitioners seek would ensure the very same result that the stay itself was entered to secure. *See Dist. 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am., 134 U.S. App. D.C. 34, 412 F.2d 165, 169 (D.C. Cir. 1969).* The stay order simply cannot be construed to prevent emergency relief consistent with maintenance of the status quo. *See Summit Med. Assocs., P.C. v. James, 998 F. Supp. 1339, 1351 (M.D. Ala. 1998); Universal Marine Ins., Ltd. v. Beacon Ins. Co., 577 F. Supp. 829, 832 (W.D.N.C. 1984).* The court therefore proceeds to consider the merits of Petitioners' request.

### B. Legal Standard

A preliminary injunction is an "extraordinary remedy" that should only issue "when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004)* (citing *Mazurek v. Armstrong, 520 U.S. 968, 972, 138 L. Ed. 2d 162, 117 S. Ct. 1865 (1997)).* [*10] A court considering a preliminary injunction request must exam-

ine four factors, namely whether: (1) Petitioners will be "irreparably harmed if an injunction is not granted"; (2) there is a "substantial likelihood" Petitioners will succeed on the merits; (3) an injunction will "substantially injure" Respondents; and (4) the public interest will be furthered by the injunction. *Serono Lab., v. Shalala, 332 U.S. App. D.C. 407, 158 F.3d 1313, 1317–18 (D.C. Cir. 1998).* These four factors "interrelate on a sliding scale" and must be considered in relation to one another, for "'if the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak.'" *Id. at 1318* (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision, 313 U.S. App. D.C. 178, 58 F.3d 738, 746 (D.C. Cir. 1995)).*

### C. Merits of the Preliminary Injunction Motion

#### 1. Irreparable Injury

The court gives special scrutiny to Petitioners' claims of injury, because "the basis of injunctive relief in the federal courts has always been irreparable harm." *CityFed Fin., 58 F.3d at 747* (quoting *Sampson v. Murray, 415 U.S. 61, 88, 39 L. Ed. 2d 166, 94 S. Ct. 937 (1974)).* [*11] To obtain preliminary injunctive relief, Petitioners must show that the injury threatening them is more than "remote and speculative." *Milk Indus. Found. v. Glickman, 949 F. Supp. 882, 897 (D.D.C. 1996).* Petitioners unquestionably make such a showing.

Petitioners allege two irreparable injuries. With respect to the first, they claim that the Department of Defense is actively planning the transfer of detainees from Guantanamo to countries "for torture or indefinite imprisonment without due process of law," Pet'rs' Mot. at 1, and note that the United States has "repeatedly transferred detainees into the custody of foreign governments that employ inhumane interrogation techniques." *Id.* at 3. Respondents dispute these assertions, dismissing them as "sensationalistic allegations" based upon "hollow speculation" and "largely anonymous sources and innuendo" cited in newspaper and magazine articles, Resp'ts' Opp'n at 19, and statements from a single detainee. Respondents then describe the policy and procedures the United States employs regarding the transfer and repatriation of Guantanamo detainees, including the transfer of detainees to the control of other governments [*12] for investigation and possible prosecution. Respondents state that "a key concern is whether the foreign government will treat the detainee humanely and in a manner consistent with its international obligations," Resp'ts' Opp'n at 4, and that "it is the policy of the United States not to repatriate or transfer a detainee to a country where the United States believes it is more likely than not that the individual will be tortured." *Id.* Respondents also pro-

vide declarations from high-level Department of State and Department of Defense officials outlining the consultations and deliberations the agencies undertake prior to transferring a detainee, and indicating that among 211 detainees the military has transferred out of Guantanamo to date, 65 were provided to foreign governments for ongoing detention. *Id.*, Prosper Decl. P 2, Waxman Decl. P 4.

These declarations concerning general policy and practice, however, do not entirely refute Petitioners' claims or render them frivolous. The court has reviewed Petitioners' exhibits, and notes that in addition to citing anonymous sources, the submitted articles quote by name former Guantanamo detainees, former high-level officials from [*13] the United Kingdom and Pakistan, and current and former employees of the United States government who were themselves involved in transferring detainees. The court, however, need not determine whether Petitioners' fear of torture constitutes the requisite "irreparable injury" because their second claim of injury clearly satisfies the preliminary injunction standard.

Petitioners contend that if the United States military transfers Petitioners from Guantanamo to overseas custody, it would effectively extinguish those detainees' habeas claims by fiat. Such transfers would eliminate any opportunity for Petitioners to ever obtain a fair adjudication of their "fundamental right to test the legitimacy of [their] executive detention." *Lee v. Reno*, 15 F. Supp. 2d 26, 32 (D.D.C. 1998). The parties agree that upon transfer, the court will no longer retain jurisdiction to provide any relief Petitioners seek. Hr'g Tr. at 19:7–10; Resp'ts' Opp'n at 6 ("once transferred, a detainee is no longer subject to the control of the United States"), Waxman Decl. P 5. While Respondents contest Judge Green's determination that Petitioners have legally cognizable due process claims properly [*14] before the court, pending their appeal they may not act to deprive this court of its jurisdiction over the very "corpus" of this case; indeed, the "federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts for the protection of their rights in those tribunals." *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 54 (D.D.C. 2004) (quoting *Alabama Great S.R. Co. v. Thompson*, 200 U.S. 206, 218, 50 L. Ed. 441, 26 S. Ct. 161 (1906)).

2. Likelihood of Success

Petitioners argue that they have properly invoked this court's jurisdiction and have stated actionable claims under the *Due Process Clause of the Fifth Amendment* and the Geneva Convention, thereby demonstrating a likelihood of success. Respondents urge instead that Petitioners

fail to make the required showing "that they are likely to succeed in establishing a judicially enforceable entitlement to vote the same repatriation that they previously told the Court Respondents were required to conduct." n3 Resp'ts' Opp'n at 11 (emphasis omitted). Although the court would use somewhat different language to characterize the relevant standard, Respondents [*15] are correct that *if* there are no circumstances under which Petitioners could obtain a court order preventing a contemplated transfer, a preliminary injunction should not be granted. Respondents are wrong, however, in arguing that there are in fact no such circumstances present, and that consequently there is no legal basis for judicial involvement in transfer or repatriation decisions regarding Petitioners.

n3 This last contention is perplexing, because it seems beyond question that advocating for release into freedom is not equivalent to advocating for transfer from ongoing detention in one locale to ongoing detention in another.

To the contrary, transfer of Petitioners without notice and leave of court is forbidden by *FED. R. APP. P. 23(a)*, which requires that "pending review of a decision in a habeas corpus proceeding n4 commenced before a court . . . the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance [*16] with this rule." The Rule "was designed to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." *Hammer v. Meachum*, 691 F.2d 958, 961 (10th Cir. 1982) (citing *Jago v. United States Dist. Court*, 570 F.2d 618, 626 (6th Cir. 1978), and *Goodman v. Keohane*, 663 F.2d 1044, 1047 (11th Cir. 1981)). Respondents' contention that *Rule 23(a)* is not typically applied in situations involving the transfer of prisoners to the custody of foreign nations, Resp'ts' Br. in Resp. to Pet'rs' Notice of Supp. Auth. at 3, while correct, is of no moment. Its application here is consistent with both the text of the rule and its underlying purpose. Indeed, *Rule 23(a)* acquires an even greater importance in the context of Petitioners' case. When a prisoner with a pending habeas action is simply transferred from one state to another in violation of *Rule 23(a)*, the transfer "does not divest [the court of its] jurisdiction over the action." *Reimnitz v. State's Attorney of Cook County*, 761 F.2d 405, 409 (7th Cir. 1985). [*17] Here, though, Petitioners' transfer to another nation would assuredly deprive the court of its jurisdiction. Petitioners thus demonstrate that they have a clear likelihood of success in blocking a transfer made absent notice to, and approval from, the court.

n4 Jurisdiction over a petition for a writ of habeas corpus is determined when the petition is filed. *Barden v. Keohane, 921 F.2d 476, 477 n.1 (3d Cir. 1990)* (citing accordance with *Ross v. Mebane, 536 F.2d 1199 (7th Cir. 1976)* (per curiam); *Harris v. Ciccone, 417 F.2d 479 (8th Cir. 1969), cert. denied, 397 U.S. 1078, 25 L. Ed. 2d 813, 90 S. Ct. 1528 (1970))*.

Respondents further argue against the application of *Rule 23(a)* by referring to a footnote in *Rasul*, which remarked that after the Supreme Court granted certiorari, two petitioners in that case, Shafiq Rasul and Asif Iqbal, were "released from custody." *Rasul, 542 U.S. 466, 159 L. Ed. 2d 548, 124 S. Ct. 2686, 2691 n. 1*. Respondents argue that **[*18]** this reference demonstrates that the Supreme Court "did not give any hint of perceiving any violation" of the Supreme Court's equivalent of *Rule 23(a)*. Resp'ts' Br. in Resp. to Pet'rs' Notice of Supp. Auth. at 4; *see also* Hr'g Tr. at 7:20–21. The court declines Respondents' invitation to make such an inference, both because there is no indication in *Rasul* whether the two named petitioners were transferred into foreign custody or released outright, and because neither party presented the issue to the Supreme Court.

3. Harm to Respondents

Respondents assert that granting Petitioners' motion would "illegitimately encroach on the foreign relations and national security prerogatives of the Executive Branch." Resp'ts' Opp'n at 1. They also argue that granting Petitioners' injunction request would harm the government in "myriad" other ways, by "undermining the United States Government's ability to investigate and resolve allegations of mistreatment or torture"; "undermining the United States' ability to reduce the numbers of individuals under U.S. control"; impairing the United States' coordination with other governments' efforts in the war on terrorism; and "encumbering . . . **[*19]** an already elaborate process leading up to transfers or repatriations." Resp'ts' Opp'n at 22. At the preliminary injunction hearing held on March 22, 2005, Respondents' counsel amplified these contentions, noting that the advance notice requirement would "undermine[] the executive's ability to speak with one voice." Hr'g Tr. at 8:10–11. Beyond these vague premonitions, however, the court does not have any indication that notifying Petitioners' counsel 30 days ahead of planned transfers of their clients will intrude upon executive authority. The preliminary injunction Petitioners seek will not require, or even enable, the court to take the two *specific* actions which Respondents' declarants warn against: forcing State Department officials to "unilaterally . . . disclose outside appropriate Executive branch channels its communications with a foreign government relating to particular mistreatment or torture concerns," Resp'ts' Opp'n, Prosper Decl. P 10, and publicly disclosing the facts gathered and analyses prepared by various State Department offices, or bringing these findings "to the attention of officials and others in foreign States . . ." *Id.* P 11.

In evaluating the alleged **[*20]** injury Respondents would suffer if the preliminary injunction is granted, the court balances the respective hardships imposed upon the parties. *See O'Donnell Constr. Co. v. District of Columbia, 295 U.S. App. D.C. 317, 963 F.2d 420, 429 (D.C. Cir. 1992); George Washington Univ. v. District of Columbia, 148 F. Supp. 2d 15, 18–19 (D.D.C. 2001).* While the injunction Petitioners seek might restrict or delay Respondents with respect to one aspect of managing Petitioners' detention, such a consequence does not outweigh the imminent threat facing Petitioners with respect to the *entirety* of their claims before the court. n5

n5 Respondents' assertion that they are merely "relinquishing" custody of detainees whom the government is simply "no longer interested in detaining," Hr'g Tr. at 9: 20–21, is disingenuous. According to Petitioners' allegations, unanswered by the United States, they have been held at Guantanamo for periods of several years, *see, e.g.,* Pet'rs' Mot., Exs. K, M, O, S. The government's invocation of sudden exigency requiring their transfer now cannot trump Petitioners' established due process rights to pursue their habeas action in federal court. *See Rasul, 124 S. Ct. at 2698–99; In re Guantanamo Detainee Cases, 355 F. Supp. 2d at 464* ("Of course, it would be far easier for the government to prosecute the war on terrorism if it could imprison all suspected 'enemy combatants' at Guantanamo Bay without having to acknowledge and respect any constitutional rights of detainees. That, however, is not the relevant legal test . . . constitutional limitations often, if not always, burden the abilities of government officials to serve their constituencies.").

**[*21]**

4. Public Interest

Finally, the court looks to whether granting the preliminary injunction request implicates the public interest, and if so, whether it confers benefit or produces harm. Respondents simply conflate the public interest with their own position, noting that "the public interest and harm-to-non-movant factors converge." Resp'ts' Opp'n at 21. It is indisputable that the public interest favors vigorously

pursuing terrorists and holding them to account for their actions. It is misleading, however, to frame the relevant interest here as the government's ability "to detain enemy combatants to prevent them from returning to the fight and continuing to wage war against the United States." Resp'ts' Opp'n at 21–22. Petitioners' current designation as enemy combatants is not a foregone conclusion; challenges to the accuracy and legitimacy of the government's determination that Petitioners have engaged in hostilities against the United States, or aided those who have, are the very core of Petitioners' underlying habeas claims. Respondents' assertion to the contrary, that "Petitioners' enemy combatant status was recently confirmed in Combatant Status Review Tribunals," Resp'ts' **[*22]** Opp'n at 2, ignores Judge Green's ruling that the CSRTs as so far implemented are constitutionally deficient. Instead, this factor tilts in Petitioners' favor, because the public has a strong interest in ensuring that its laws do not subject individuals to indefinite detention without due process; "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n, 23 F.3d 1071, 1079 (6th Cir. 1994).*

**D. All Writs Act**

Petitioners also ask the court to exercise its authority under the *All Writs Act*, which provides in relevant part that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *28 U.S.C. § 1651(a)*. The All Writs Act "empowers a district court to issue injunctions to protect its jurisdiction . . .," *SEC v. Vision Communs., 315 U.S. App. D.C. 384, 74 F.3d 287, 291 (D.C. Cir. 1996),* and a court may grant a writ under the Act whenever it determines such action necessary "to achieve the ends **[*23]** of justice entrusted to it." *Adams v. United States, 317 U.S. 269, 273, 87 L. Ed. 268, 63 S. Ct. 236 (1942).* Were the court to find adequate "alternative remedies" unavailable, *Clinton v. Goldsmith, 526 U.S. 529, 537, 143 L. Ed. 2d 720, 119 S.*

Ct. 1538 (1999), or "the traditional requirements of an injunction" inapplicable, *Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1101 n. 13 (11th Cir. 2004),* it could employ the Act to order the relief Petitioners seek. Because Petitioners have made a clear showing that a preliminary injunction is warranted under the familiar four-part test, though, the court need not take recourse to the All Writs Act.

**III. CONCLUSION**

For the foregoing reasons, the court finds that Petitioners satisfy the requirements for a preliminary injunction, and therefore grants their present motion. An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.

United States District Judge

Dated: March 29, 2005

**ORDER**

For the reasons stated in the court's memorandum docketed this same day, it is this 29th day of March, 2005, hereby

**ORDERED**, that Petitioners' motion for a preliminary injunction is **[*24]** **GRANTED**; and it is further

**ORDERED**, that Respondents shall provide Petitioners' counsel and the court with 30 days' notice prior to transporting or removing any of Petitioners from Guantanamo Bay Naval Base; and it is further

**ORDERED**, that this order shall remain in effect until the final resolution of Petitioners' habeas claims unless otherwise modified or dissolved.

Henry H. Kennedy, Jr.

United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EDHAM MAMET, et al.** ) | |
| ) | |
| **Petitioners,** ) | |
| ) | |
| **v.** ) | **Civil No. 05-1602 (ESH)** |
| ) | |
| **GEORGE W. BUSH, et al.,** ) | |
| ) | |
| **Respondents.** ) | |

## MEMORANDUM ORDER

Petitioner Edham Mamet has been held as a prisoner at the United States Naval Station, Guantanamo Bay, Cuba ("Guantanamo") for more than three years. He is believed to be a Muslim Uighur, an ethnic minority repressed by the Chinese government. (*See* Pets.' Mot. for a Prelim. Inj. ["Pets.' Mot."] at 2, 32.) Whereas a number of Uighars detained in Guantanamo as "enemy combatants" have been exonerated, *see Qassim v. Bush*, Mem. Order, Civ. No. 05-497 (JR) (D.D.C. August 19, 2005), Mamet's status remains that of an "enemy combatant." (*See* Resps.' Mot. to Stay, Decl. of Joseph S. Imburgia, attach.). Nevertheless, petitioners are concerned that Mamet faces imminent transfer to his homeland of China or to another country that will subsequently repatriate him to China.

Presently before the Court is respondents' motion to stay pending related appeals [#6] and petitioners' motion for a preliminary injunction [#7]. Specifically, petitioners request that the Court enjoin the government from transferring Mamet from Guantanamo to any other location

- 1 -

absent thirty days advance written notice to petitioner and his counsel. (Pets.' Mot. at 1.) They argue that, given the Chinese government's known abuse of Uighurs (*see* Pets.' Mot., Ex. 1 at 2, 32), "any rendition of Petitioner to his homeland of China would be disastrous." (*Id.* at 6.) Petitioners cite evidence of China's "particularly harsh" treatment of Uighurs-- including prolonged detention and executions-- even, in one case, where a Uighur had been granted refugee status upon his forcible repatriation from Nepal. (*Id.* at 6; *id.*, Ex. 1 at 32.) They note that an ostensible "'release' to China may be the functional equivalent of continued detention and torture" (*id.* at 10 n.2) and also fear release to a country that will "collapse under pressure from the Chinese government to repatriate them to China." (*Id.* at 3.)

It is hereby

**ORDERED** that petitioners' motion for a preliminary injunction is **DENIED**. It is further

**ORDERED** that respondents' motion to stay is **GRANTED** and *Mamet v. Bush*, No. 05-1602, is **STAYED** pending resolution of all appeals in *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005), and *Khalid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005). This stay shall not, however, prevent the parties from availing themselves of the procedures set forth in the Protective Order entered by this Court on September 15, 2005 [#4], nor shall it bar the filing or disposition of any motion for emergency relief.

As a condition of the stay, it is further **ORDERED** that respondents shall file notice with the Court 30 days prior to any transfer of Mamet to a foreign country. Such notice will include the proposed country and date of transfer. *See Kiyemba v. Bush*, Civ. No. 1509 (RMU) (D.D.C. Sept. 13, 2005) (requiring notice to Court and counsel prior to transfer as condition of stay);

*Deghayes v. Bush*, Civ. No. 04-2215 (RMC) (D.D.C. June 15, 2005) (requiring notice to Court prior to transfer to Libya given reported use of torture in Libyan prison system and United States' lack of assurance that petitioner would not be transferred there).

It is further **ORDERED** that, to ensure that the proceedings can continue in an orderly fashion in the event that the detainees prevail on appeal, respondents shall provide factual returns to Mamet's counsel within 90 days of the date of this Order.

_____<br>
s/<br>
ELLEN SEGAL HUVELLE<br>
United States District Judge

Date:    September 30, 2005

- 3 -

1 of 1 DOCUMENT

**MURAT KURNAZ, et al. Petitioners, v. GEORGE W. BUSH, et al., Respondents. JAMEL AMEZIANE, Petitioner, v. GEORGE W. BUSH, et al., Respondents**

Civil No. 04–1135 (ESH), Civil No. 05–0392 (ESH)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*2005 U.S. Dist. LEXIS 6560*

**April 12, 2005, Decided**

**PRIOR HISTORY:** *Al–Oshan v. Bush, 2005 U.S. Dist. LEXIS 6631 (D.D.C., Apr. 7, 2005)*

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For MURAT KURNAZ, Detainee, Camp Delta, RABIYE KURNAZ as Next Friend of Murat Kurnaz, Petitioners: Baher Azmy, SETON HALL LAW SCHOOL, CENTER FOR SOCIAL JUSTICE, Newark, NJ; Shayana Devendra Kadidal, ABINATI & ASSOCIATES, Washington, DC; Barry J. Pollack, COLLIER SHANNON SCOTT, PLLC, Washington, DC.

For GEORGE W. BUSH, JR., President of the United States, DONALD RUMSFELD, Secretary, United States Department of Defense, JAY HOOD, Army Brig. Gen., NELSON J. CANNON Army Col., all sued in their official and individual capacities, Respondents: Robert J. Katerberg, Lisa Ann Olson, Preeya M. Noronha, Terry Marcus Henry, U.S. DEPARTMENT OF JUSTICE, Washington, DC.

For CHARLES B. GITTINGS, JR., Movant: Charles B. Gittings, Jr., Manson, WA.

**JUDGES:** ELLEN SEGAL HUVELLE, United States District Judge.

**OPINIONBY:** ELLEN SEGAL HUVELLE

**OPINION:**

### ORDER

Petitioners in the above-captioned cases have each requested a preliminary injunction ordering respondents to provide advance notice of petitioners' transfer from the United States Naval Base at Guantanamo Bay, Cuba, where they are currently detained. Murat Kurnaz, a twenty-two year old Turkish citizen who was born and raised in Germany, has been [*2] detained in Guantanamo Bay for more than three years. He requests thirty-days notice to counsel of any proposed transfer. Jamel Ameziane is a citizen of Algeria and has been detained for more than two years. Mr. Ameziane is as yet unaware of his representation by counsel. His counsel requests that petitioner not be transferred from Guantanamo until counsel has had an opportunity to meet with him to ascertain his interests.

Kurnaz's case was initially consolidated before Judge Joyce Hens Green and has been stayed pending appeal to the United States Court of Appeals for the District of Columbia. *See* Order Granting in Part and Denying in Part Resp'ts' Mot. for Certification of Jan. 31, 2005 Orders and For a Stay, *In re Guantanamo Detainee Cases, 2005 U.S. Dist. LEXIS 5295, No. 02–0299, et al. (D.D.C. Feb. 3, 2005).* n1 Since Ameziane's Petition for Writ of Habeas Corpus was filed subsequent to Judge Green's decision, it is not subject to the stay or protective orders entered by her. This Court ordered respondents to show cause by April 1, 2005 why Ameziane's writ should not be granted. (Show Cause Order, Mar. 10, 2005.) Respondents have, however, moved for a stay, which Ameziane opposes. Ameziane has [*3] also moved for entry of a protective order. The parties presented oral argument on each of these motions on April 8, 2005.

n1 The stay entered by Judge Green does not bar the Court's consideration of Kurnaz's motion for injunctive relief. As noted by Judge Collyer, the stay was intended to save time, money, and judicial resources, but "could not be read to also deprive Petitioners of their rights to seek emergency assistance when faced with continued detention at the request of the United States but no venue in which to challenge its legality." *Abdah v. Bush, 2005 U.S. Dist. LEXIS 4144, 2005 WL 711814, at *4 (D.D.C. Mar. 12, 2005).*

As neither Ameziane nor respondents oppose entry

of protective orders identical to those entered by Judge Green, the Court does so by order below. The Court also concludes that respondents' Motion to Stay should be granted. However, to ensure that the proceedings can continue in an orderly fashion in the event that the detainees prevail on appeal, respondents are ordered to provide factual returns [*4] to Ameziane's counsel within ninety days of the date of this Order. Finally, upon consideration of the arguments of the parties, in view of the orders issued by four other judges on this Court granting substantially identical relief as is requested in this case, *see Al-Marri v. Bush, 2005 U.S. Dist. LEXIS 6259, No. 04-2035 (D.D.C. Apr. 4, 2005); Al-Joudi v. Bush, 2005 U.S. Dist. LEXIS 6265, No. 05-0301 (D.D.C. Apr. 4, 2005); Al-Oshan v. Bush, 2005 U.S. Dist. LEXIS 6635, No. 05-0520 (D.D.C. Mar. 31, 2005); Al-Shiry v. Bush, 2005 U.S. Dist. LEXIS 6636, No. 04-0490 (D.D.C. Apr. 1, 2005); Abdah v. Bush, 2005 U.S. Dist. LEXIS 4942, 2005 WL 711814 (D.D.C. Mar. 29, 2005),* and for the reasons stated below, the Court concludes that petitioners must be given notice of a potential transfer in a limited type of circumstance. In particular, if respondents have not reached a diplomatic understanding with the transferee country that a petitioner's transfer from Guantanamo is for release only, respondents must provide that petitioner's counsel with thirty days advance notice of the proposed transfer.

In *Rasul v. Bush, 542 U.S. 466, 159 L. Ed. 2d 548, 124 S. Ct. 2686 (2004),* the Supreme Court held that federal courts have jurisdiction to determine the legality of the ongoing detention of petitioners held in Guantanamo [*5] Bay. *Id. at 2698. See also In re Guantanamo Detainee Cases, 355 F. Supp. 2d 443, 464 & 479 (D.D.C. 2004)* (Guantanamo detainees possess rights under the *Due Process Clause* and Geneva Convention); *Hamdan v. Rumsfeld, 344 F. Supp. 2d 152, 165 (D.D.C. 2004)* (Guantanamo detainees possess rights under Geneva Convention). Accordingly, the Court must also have authority to preserve this jurisdiction if it can be shown that respondents are acting to circumvent it. *See* All Writs Act, *28 U.S.C. § 1651(a); Al-Marri, 2005 U.S. Dist. LEXIS 6259 at *14, No. 04-2035, slip. op. at 10 n.11* (quoting *SEC v. Vision Communs. 315 U.S. App. D.C. 384, 74 F.3d 287, 291 (D.C. Cir. 1996))* (All Writs Act "empowers a district court to issue injunctions to protect its jurisdiction"); *Abu Ali v. Ashcroft, 350 F. Supp. 2d 28, 54 (D.D.C. 2004)* (federal courts "may and should take such action as will defeat attempts to wrongfully deprive parties" of their right to sue in federal court) (internal citation omitted); *Lindstrom v. Graber, 203 F.3d 470, 474-76 (7th Cir. 2000)* (All Writs Act permits court to stay extradition pending appeal [*6] of habeas corpus petition); *Michael v. INS, 48 F.3d 657, 664 (2d Cir. 1995)* (All Writs Act permits federal Court of Appeals to stay a deportation

order pending review of its legality). *Cf. Fed. R. App. P. 23(a); Jago v. U.S. Dist. Court, 570 F.2d 618, 623 (6th Cir. 1978)* (Rule 23(a) preserves district judge's authority to issue order regarding custody of prisoner pending review of habeas petition).

Respondents state that some petitioners may be transferred to custody of a foreign government

> for investigation and possible prosecution and continued detention when those governments are willing to accept responsibility for ensuring, consistent with their laws, that the detainees will not continue to pose a threat to the United States and its allies. Such governments can include the government of a detainee's home country, or a country other than the detainee's home country that may have law enforcement or prosecution interest in the detainee.

(Waxman Decl. P 3.) According to respondents, once such a transfer is effected, the Court would lose its jurisdiction. While the Court has no occasion to [*7] decide at this time whether this or any other type of transfer could be subject to an injunction, several examples offered by petitioners raise sufficiently serious concerns to justify the limited remedy of advance notice. For instance, a petitioner could be transferred to the custody of a different United States custodian in a foreign country, such as the United States military base in Afghanistan. (*See* Kumaz Reply at 14.) Alternatively, he could be transferred to the custody of a foreign government, but held under the direction and control of the United States government. *See Abu Ali, 350 F. Supp. 2d at 69.* Or, he could be transferred to the custody of a country where he has never had occasion to violate that country's laws, again raising a possible question as to the governmental claim of an "independent law enforcement" interest. In such narrowly circumscribed circumstances, closer scrutiny of the transfer might well be appropriate in order to preserve the petitioner's right to obtain review of the legality of his detention.

For these reasons, it is hereby

**ORDERED** that respondents' Motion to Stay is **GRANTED** and *Ameziane v. Bush,* No. 05-0392, is [*8] **STAYED** pending resolution of all appeals in *In re Guantanamo Detainee Cases, 355 F. Supp. 2d 443 (D.D.C. 2005),* and *Khalid v. Bush, 355 F. Supp. 2d 311 (D.D.C. 2005).* This stay shall not, however, prevent the parties from availing themselves of the procedures set forth in the Protective Order entered below, nor shall it bar the filing or disposition of any motion for emergency

2005 U.S. Dist. LEXIS 6560, *8

relief.

It is further **ORDERED** that respondents shall provide a factual return to the Court and to counsel for Ameziane within ninety (90) days of the date of this Order; and it is further

**ORDERED** that the Court **ENTERS** by way of reference the protective order and supplementary orders previously entered in *In re Guantanamo Bay Detainee Cases, 2005 U.S. Dist. LEXIS 5295, Civil No. 02–0299, et al.,* by Judge Joyce Hens Green. These include the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004; the Order Addressing Designation Procedures for "Protected Information," entered on November 10, 2004; and the Order Supplementing and Amending Filing Procedures

Contained in [*9] November 8, 2004 Amended Protective Order, issued on December 13, 2004.

It is further **ORDERED** that, where respondents do not have an understanding with the receiving country that a transfer from Guantanamo Bay, Cuba is for purposes of release only, respondents shall provide petitioner's counsel with thirty (30) days advance notice of the transfer, including the proposed destination and conditions of transfer.

**ORDERED** that petitioners' motions for preliminary injunctions are **DENIED AS MOOT.**

ELLEN SEGAL HUVELLE

United States District Judge

Date: April 12, 2005

1 of 3 DOCUMENTS

**JARALLAH AL–MARRI, et al., Petitioners, v. GEORGE W. BUSH, et al., Respondents.**

**Civil Action No. 04–2035 (GK)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*2005 U.S. Dist. LEXIS 6259*

**April 4, 2005, Decided**

**PRIOR HISTORY:** *Al-Marri v. Bush, 2005 U.S. Dist. LEXIS 17195 (D.D.C., Mar. 7, 2005)*

**LexisNexis(R) Headnotes**

**COUNSEL:** **[*1]** For JARALLAH AL-MARRI, Detainee, Guatanamo Bay Naval Base, ALI SALAH KAHLAH AL-MARRI, Petitioners: Jonathan L. Hafetz, GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE, New York, NY; Lawrence S. Lustberg, Mark A. Berman, GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE, Newark, NJ.

For GEORGE W. BUSH, President of the United States, DONALD RUMSFELD, Secretary of Defense, JAY HOOD, Army Brigadeer General, all sued in their official capacities, Respondents: Terry Marcus Henry, Preeya M. Noronha, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington, DC.

**JUDGES:** Gladys Kessler, United States District Judge.

**OPINIONBY:** Gladys Kessler

**OPINION:**

### MEMORANDUM OPINION

Petitioner, Jarallah Al-Marri, brings this action against Defendants, seeking release from the Guantanamo Bay Naval Station ("GTMO") in Cuba, where he is being detained. n1 This matter is before the Court on Petitioner's Motion for a Preliminary Injunction and Motion for a Temporary Restraining Order, in which he seeks 30 days' notice before any transfer from GTMO. Upon consideration of the Motions, Opposition, Reply, and the entire record herein, and for the reasons stated below, Petitioner's Motion for a Preliminary Injunction **[*2]** is **granted**, and Petitioner's Motion for a Temporary Restraining Order is **denied as moot.**

n1 Technically, there are two Petitioners in this case, one of whom is Jarallah Al-Marri's Next Friend, who obviously is not subject to transfer from Guantanamo. All references herein will be to the one Petitioner.

## I. BACKGROUND

### A. Procedural History

Petitioner, a citizen of Qatar, has been detained at GTMO for more than three years. n2 On November 10, 2004, he filed a Petition for Writ of Habeas Corpus. He is one of many GTMO detainees who have filed such petitions in the United States District Court for the District of Columbia since the Supreme Court held that "the federal courts have jurisdiction to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing." *Rasul v. Bush, 542 U.S. 466, 159 L. Ed. 2d 548, 124 S. Ct. 2686, 2699 (2004).*

n2 Petitioner's counsel has very limited knowledge of Petitioner's precise circumstances. Counsel has met with Petitioner, but only very briefly and before actual representation began, when counsel was visiting other clients at GTMO. Transcript of Motions Hearing ("Tr.") at 12 (March 30, 2005). Counsel is scheduled to meet with his client in the very near future. Id.

**[*3]**

On November 30, 2004, the Court transferred this case to Judge Joyce Hens Green for coordination and management, as reflected in the September 15, 2004, Resolution of the Executive Session. On December 28, 2004, Respondents filed a Motion to Dismiss, which became ripe on January 21, 2005.

On January 19, 2005, Judge Richard Leon granted the Government's Motion to Dismiss the detainees' Petition

for Writ of Habeas Corpus in *Khalid v. Bush, 355 F. Supp. 2d 311 (D.D.C. 2005)*. On January 31, 2005, Judge Green granted in part and denied in part the Government's Motion to Dismiss in eleven consolidated cases. *In re Guantanamo Cases, 355 F. Supp. 2d 443 (D.D.C. 2005)*. n3 The cases before Judges Leon and Green have been fully briefed in the United States Court of Appeals for the District of Columbia and are under submission.

> N3 Judge Green's Memorandum Opinion and Order did not apply to eight consolidated cases, including the instant case. *In re Guantanamo Cases, 355 F. Supp. 2d at 452 n.15.*

**[*4]**

On February 3, 2005, Judge Green granted a stay in the eleven cases to which her January 31, 2005, Opinion and Order applied. On March 8, 2005, this Court stayed the instant case until the Court of Appeals resolves the appeals in Khalid and In Re Guantanamo Cases. n4

> n4 The stay issued in this case does not preclude the Court from considering the merits of the instant Motion. The stay was entered to preserve the status quo until resolution of issues on appeal in similar cases. The instant Motion does not require the Court to lift the stay or to adjudicate the case on the merits; rather, it seeks emergency relief to prevent Petitioner's habeas claims from being extinguished and to preserve the status quo. *Abdah v. Bush, 2005 U.S. Dist. LEXIS 4942, No. 04-CV-1254, slip op. at 4 (D.D.C. March 29, 2005)*.

**B. Transfers from GTMO**

Approximately 540 foreign nationals currently are being held at GTMO. Decl. of Matthew C. Waxman P 2 ("Waxman Declaration"). n5 The Department of Defense ("DOD") states it is conducting a review **[*5]** of each detainee's case, at least annually, to determine whether continued detention is warranted. Id. at P 3. Since the Government began detaining individuals at GTMO, the DOD has transferred 211 detainees to other countries. Id. at P 4.

> n5 Waxman is the Deputy Assistant Secretary of Defense for Detainee Affairs. Id. at P 1.

Detainees are subject to two types of transfer: (1) transfer to the custody of another country, with the understanding that they will be released, Tr. at 22–23; and (2) transfer to the custody of another country with the understanding that the country's government has "an independent law enforcement interest" in them and that they likely will face continued detention and processing by that country's judicial system. Id. at 24. In each case, the United States loses all control of the detainees once they are transferred to another country. Waxman Decl. at P 5.

Of the 211 detainees who have been transferred, 146 have been transferred with the understanding that they would be **[*6]** released. Id. at P 7. The Government represents that most of those individuals actually have been released, Tr. at 29, but it cannot provide precise numbers. Id.

Sixty-five detainees have been transferred to the control of other countries for detention. Waxman Decl. at P 7. Of that group, 29 were transferred to Pakistan; 9 to the United Kingdom; 7 to Russia; 5 to Morocco; 6 to France; 4 to Saudi Arabia; and 1 each to Australia, Denmark, Kuwait, Spain, and Sweden. Id..

When transfers for detention are being considered, DOD coordinates with various other Government agencies, including the Department of State ("DOS"). Id. P 6. The Government states that, as a matter of policy, it does not "repatriate or transfer individuals to other countries where it believes it is more likely than not that they will be tortured." Id..

The Government claims that it ensures compliance with this policy by obtaining "assurances" from officials within the foreign government. The process for obtaining such assurances "involves a frank dialogue, discussion, [and] communication with officials of the other government." Tr. at 32. The Government evaluates the adequacy of the assurances **[*7]** by considering "the identity, position, or other information concerning the official relaying the assurances," Decl. of Pierre-Richard Prosper at P 8 ("Prosper Declaration") n6; political or legal developments in the country that would provide context for the assurances, id.; and U.S. relations with the country. Id. Senior Government officials ultimately make the final decision on whether to transfer a detainee. Waxman Decl. at P 7. The Government's papers do not indicate which DOD official has this responsibility.

> n6 Prosper is the Ambassador-at-Large for War Crimes Issues and has supervised the operation of the DOS Office of War Crimes Issues. Id. at P 1.

In recent months, a number of newspaper articles about the transfer and treatment of detainees have been published. Petitioner has submitted as exhibits articles quoting current and former employees of the United States

government who have been involved in transferring detainees to other countries, including countries that practice torture. [*8] See, e.g., Petr.'s Ex. E (Dana Priest, Jet Is an Open Secret in Terror War, Wash. Post, Dec. 27, 2004, at A1). In addition, Petitioner has submitted articles quoting by name former Guantanamo detainees who allege that they have been moved by the United States government to countries where they have been tortured. See, e.g. Petr.'s Ex. B (Douglas Jehl and David Johnson, Rule Change Lets C.I.A. Freely Send Suspects Abroad, N.Y. Times, Mar. 6, 2005, at A1).

On March 11, 2005, an article in The New York Times reported that DOD plans to transfer "hundreds of suspected terrorists to prisons in Saudi Arabia, Afghanistan, and Yemen." Douglas Jehl, Pentagon Seeks to Shift Inmates from Cuba Base, N.Y. Times, Mar. 11, 2005, at A1.

In response to this article, several petitioners, including the Petitioner in the instant case, filed motions for temporary restraining orders and preliminary injunctions. On March 12, 2005, Judge Rosemary Collyer granted a request for a temporary restraining order in *Abdah v. Bush, 2005 U.S. Dist. LEXIS 4144, No. 04-CV-1254 (D.D.C. March 12, 2005)* (order granting temporary restraining order) and denied similar request in *Doe v. Bush, 2005 U.S. Dist. LEXIS 6417 (March 13, 2005)* [*9] (order denying request for temporary restraining order). On March 29, 2005, Judge Henry H. Kennedy granted a Preliminary Injunction in *Abdah*.

After the Motions were filed in the instant case, the Government represented to this Court that Petitioner was not scheduled for transfer within the next several weeks. In addition, counsel agreed to a combined hearing on the Motion for Temporary Restraining Order and Motion for Preliminary Injunction. On March 17, 2005, based on those representations, the Court scheduled the hearing on both Motions for March 30, 2005.

## II. STANDARD OF REVIEW

In considering Petitioner's request for a preliminary injunction, the Court must consider four factors: (1) whether Petitioner would suffer irreparable injury if an injunction were not granted; (2) whether Petitioner has a substantial likelihood of success on the merits; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest. *Al-Fayed v. CIA, 349 U.S. App. D.C. 223, 254 F.3d 300, 303 (D.C. Cir. 2001).* n7 "These factors interrelate on a sliding scale and must be balanced against each other." *Serono Lab. v. Shalala, 332 U.S. App. D.C. 407, 158 F.3d 1313, 1318 (D.C. Cir. 1998).* [*10] "If the arguments for one factor

are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision, 313 U.S. App. D.C. 178, 58 F.3d 738, 746 (D.C. Cir. 1995).*

> n7 The same factors apply when considering a request for a temporary restraining order. *Al-Fayed, 254 F.3d at 303, n.2.* However, since the Court has granted the Motion for Preliminary Injunction, it is not necessary to apply these factors to his Motion for Temporary Restraining Order.

When the balance of hardships tips decidedly toward the movant, it will "ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 182 U.S. App. D.C. 220, 559 F.2d 841, 844 (D.C. Cir. 1977)* (quoting *Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953)).* [*11] "An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." *Id. at 844.*

## III. ANALYSIS

### A. Harm to Petitioner

Petitioner argues that he will suffer irreparable harm if transferred to the custody of another country that practices torture or other inhumane treatment of prisoners. Respondents argue that there is no potential harm to Petitioner, because there is no credible evidence that detainees are being transferred to countries that practice torture; instead, any transfers will be largely for purposes of release. n8

> n8 The Government also argues that transferring Petitioner from United States custody provides him with the very relief he seeks. Tr. at 40. That argument is overly simplistic, however. Petitioner ultimately seeks total freedom from all custody, not just United States custody. He can only obtain such relief in this litigation if the Court determines that his underlying detention was unconstitutional or illegal. Furthermore, a determination by a United States court that Petitioner is not an enemy combatant might carry significant weight in his home country, thereby facilitating release from custody if he was transferred for continued detention. Finally, on the most human level, proud people have a strong

interest in clearing their names from association with acts of violence and terrorism.

**[*12]**

Irreparable harm to the moving party is "the basis of injunctive relief in the federal courts." *CityFed Fin. Corp., 58 F.3d at 747* (quoting *Sampson v. Murray, 415 U.S. 61, 88, 39 L. Ed. 2d 166, 94 S. Ct. 937 (1974))*. To obtain preliminary injunctive relief, Petitioner must show that the threatened injury is not merely "remote and speculative." *Milk Indus. Found. v. Glickman, 949 F. Supp. 882, 897 (D.D.C. 1996)*.

In this case, there are two obvious and substantial threats to Petitioner. First, he faces the possibility of transfer to a country where he might be tortured or indefinitely confined, which undeniably would constitute irreparable harm. While the Government presents declarations that attempt to mitigate these concerns, they neither refute Petitioner's claims nor render them frivolous. n9 Indeed, the Government admits that 65 of the 211 detainees transferred to date have been transferred for detention, not release. Several of the 65 have been transferred to countries that our own State Department has acknowledged torture prisoners, including Pakistan, Saudi Arabia, and Morocco. See Country Reports on Human Rights Practices — 2004, available at http://www. **[*13]** state.gov/g/drl/rls/hrrpt/2004. Finally, the Government was unable to provide any details about the type or form of "assurances" given, the scope of the monitoring that takes place after transfer, or the consequences of noncompliance. n10 Tr. at 32–33. In short, the threatened injury is not merely remote and speculative; it is a serious potential threat.

> n9 The Court notes that the Government's affidavits do not address the Central Intelligence Agency's involvement in any transfer or "rendition" programs.

> n10 Notably, the Government was also unaware of several other important facts, such as the availability of extradition treaties with Qatar or Saudi Arabia, or the consequences if a detainee's home country refuses to accept him.

Second, Petitioner faces the threat of irreparable harm based on the potential elimination of his habeas claims. It is unclear at this point whether transferring Petitioner would strip this Court of jurisdiction. See *Abdah v. Bush, 2005 U.S. Dist. LEXIS 4942 at *13, No. 04–CV–1254, Slip op. at 7 (D.D.C. March 29, 2005)* **[*14]** (transfer to another country "would effectively extinguish [Petitioner's] habeas claim[] by fiat"); but see *Abu Ali v. Ashcroft, 350*

*F. Supp. 2d 28, 54 (D.D.C. 2004)* (holding that an individual detained in Saudi Arabia could survive a motion to dismiss his habeas claim based on the theory of constructive custody). However, given the danger that, upon transfer, the Court could lose jurisdiction to adjudicate Petitioner's claims, it follows that such a transfer could obviate Petitioner's right to "test the legitimacy of [his] executive detention." *Lee v. Reno, 15 F. Supp. 2d 26, 32 (D.D.C. 1998)*. Since such a turn of events would certainly constitute a threat of irreparable harm, an order preserving the status quo in this case is appropriate. n11

> n11 The Court has the authority to issue such an injunction pursuant to the All Writs Act, *28 U.S.C. § 1651(a)*, which "empowers a district court to issue injunctions to protect its jurisdiction." *SEC v. Vision Communs., 315 U.S. App. D.C. 384, 74 F.3d 287, 291 (D.C. Cir. 1996)*; see also *Abdah v. Bush, 2005 U.S. Dist. LEXIS 4144, No. 04–CV–1254, slip op. at 7 (March 12, 2004)*; *Abu Ali, 350 F. Supp. 2d at 54* (quoting *Alabama Great S. R. Co. v. Thompson, 200 U.S. 206, 218, 50 L. Ed. 441, 26 S. Ct. 161 (1906))* ("It is well-established that the federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts for the protection of their rights in those tribunals.'").

**[*15]**

Both threats are imminent. While the Court certainly has relied upon the Government's representations that Petitioner will not be transferred in the next several weeks, the Government is clearly maintaining its right to transfer him at any time after the Court rules upon the instant Motion. Thus, the threats are not distant or speculative, and transfer could occur in the near future.

**B. Likelihood of Success on the Merits**

Petitioner contends that, given Judge Green's Opinion in In re Guantanamo Cases, he has a substantial likelihood of success on the merits of his habeas claim. The Government responds that Petitioner's claim would be barred because the treaties under which he seeks review are non-self-executing, and because the review sought would encroach upon the foreign policy authority of the executive.

To justify granting a preliminary injunction, Petitioner need not show "a mathematical probability of success." *Washington Metro. Area Transit Comm'n, 559 F.2d at 844*. Rather, "it will ordinarily be enough" that the questions raised are so "serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." Id. (quoting **[*16]** *Hamilton Watch Co., 206 F.2d at 740*).

The exact chances of success in this case are extremely difficult to assess. It is clear, however, that, at a minimum, Petitioner has raised "fair ground[s] for litigation." *Washington Metro. Area Transit Comm'n, 559 F.2d at 844*. The issues raised in these motions are sensitive and involve complex constitutional questions. Indeed, there are areas of disagreement even among the judges on this Bench about the legal issues raised in these Petitions. Like the issues in Hamdi v. Rumsfeld, Padilla v. Rumsfeld, and Rasul, there is a strong probability that they ultimately will be resolved by the Supreme Court.

For example, there is disagreement about whether the detainees have any constitutional rights at all. See *Khalid, 355 F. Supp. 2d 311* (holding that Guantanamo detainees have no constitutional rights); but see *In re Guantanamo Cases, 355 F. Supp. 2d 311* (holding that Guantanamo detainees have some constitutional rights). There is also disagreement over whether the Court will lose jurisdiction over the cases if Petitioner is transferred to another country. n12 See [*17] *Abdah v. Bush, 2005 U.S. Dist. LEXIS 4942, No. 04–CV–1254, slip op. at 7 (D.D.C. March 29, 2005)*; but see *Abu Ali v. Ashcroft, 350 F. Supp. 2d at 54*. And, there is disagreement about whether the Geneva Conventions are self-executing. See *Hamdan v. Rumsfeld, 344 F. Supp. 152, 164 (D.D.C. 2004)*.

> n12 The Government also argues that the Supreme Court in Rasul failed to protect its jurisdiction over detainees that were transferred. *Rasul, 124 S.Ct. at 2690 n.1* (noting that two petitioners had been "released from custody" to the United Kingdom). However, the issue of transfer was not before the Court, and the Rasul petitioners were released to the United Kingdom, not a country known to torture its prisoners. See Country Reports on Human Rights Practices: United Kingdom, available at http://www.state.gov/g/drl/rls/hrrpt/2004/41716.htm ("the [British] Government generally respected the human rights of its citizens").

In short, even though the mathematical probability of success is [*18] impossible to assess, there can be no doubt that the questions raised here are so "serious, substantial, difficult, and doubtful," as to make them a "fair ground for litigation." *Washington Metro. Area Transit Comm'n, 559 F.2d at 844*.

## C. Harm to Government

Petitioner argues that there is absolutely no harm to the Government if it is required to provide the Court and Petitioner's counsel with 30 days' notice before transferring him to another country. The Government contends,

however, that there is great potential harm to its ability to conduct negotiations with foreign governments regarding the transfer and subsequent release of GTMO detainees, because such negotiations are often conducted in secret and divulging their details could seriously impair their success.

The Court fails to see any injury whatsoever that the Government would suffer from granting the requested preliminary injunction. Petitioner requests only 30 days' notice of transfer — a narrow and discrete request that would impose no burden on the Government. Beyond "vague premonitions" that such relief would harm the executive's ability to conduct foreign policy, there is no concrete evidence [*19] that such notice actually will intrude upon executive authority. *Abdah, 2005 U.S. Dist. LEXIS 4942, slip op. at 10 (D.D.C. March 29, 2005)*. For example, granting Petitioner's request for 30 days' notice of transfer would not require the Court to second-guess foreign policy decisions of the executive, would not require the Government to divulge information relating to its negotiations with foreign governments, and would not prevent the Government from speaking with one voice. n13

> n13 Such issues could arise if Petitioner ultimately is scheduled for transfer and actually requests additional relief. However, speculation about future requests is no justification for denying the narrow relief requested at this point.

In weighing the respective hardships imposed upon the parties, the balance clearly tilts in favor of Petitioner. The requested relief does not constitute even a minimal burden on the Government; at most, it would require the Government to file a few pieces of paper. Such a minimal consequence does not outweigh the imminent [*20] threats of indefinite detention, potential torture, and the elimination of Petitioner's claims before this Court.

## D. Public Interest

Petitioner argues that the public has a strong interest in protecting the constitutional rights of detainees. The Government responds that the requested relief would be contrary to the public interest, because it could frustrate the Government's ability to conduct foreign policy, which ultimately could harm the nation by impairing the effectiveness of the war on terrorism.

The Government's argument is unpersuasive, however, for it "simply conflates the public interest with [the Government's] own position," *Abdah, 2005 U.S. Dist. LEXIS 4942, 04–CV–1254, slip op. at 11 (March 29, 2005)*, and asks the Court to accept its predictions of

harm without challenge. This the Court is not prepared to do. It is obvious beyond words that there is a strong public interest in the zealous pursuit of those who wish to commit acts of terrorism against the United States and its citizens. However, the narrow relief sought in this case will not compromise that effort in any way.

In contrast, the public interest undeniably is served by ensuring that Petitioner's constitutional rights can [*21] be adjudicated in an appropriate manner. *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n, 23 F.3d 1071, 1079 (6th Cir. 1994)* ("it is always in the public interest to protect the violation of a party's constitutional rights"). Retaining jurisdiction over this case is essential to protecting that public interest. Thus, the public interest clearly favors entering the preliminary injunction sought by Petitioner.

## V. CONCLUSION

Petitioner has requested 30 days' notice of any transfer from GTMO, a concrete, narrow, and minimally burdensome remedy. Based on the Court's analysis of the four relevant factors set forth in the applicable caselaw, it is clear that Petitioner has satisfied his burden. He is faced with an imminent threat of serious harm, which far outweighs any conceivable burden that the Government might face. Furthermore, while it is not possible to demonstrate a "mathematical probability of success," the questions are "serious, substantial, difficult and doubtful." *Washington Metro. Area Transit Comm'n, 559 F.2d at 844.* Certainly, the Government cannot argue that its success on the merits is a foregone conclusion. Finally, the public [*22] interest in granting Petitioner the requested relief is strong.

Therefore, for the foregoing reasons, Petitioner's Motion for Preliminary Injunction is **granted**, and his Motion for Temporary Restraining Order is **denied as moot.**

An Order will issue with this Opinion.

April 4, 2005

Gladys Kessler

United States District Judge

**ORDER**

For the reasons stated in the Court's accompanying memorandum, docketed this same day, it is this 4th day of April, hereby

**ORDERED** that Petitioner's Motion for a Preliminary Injunction is **granted;** it is further

**ORDERED** that the Government shall provide Petitioner's counsel and the Court with 30 days' notice prior to transporting or removing Petitioner from Guantanamo Bay Naval Base; it is further

**ORDERED** that this Order shall remain in effect until the final resolution of Petitioner's habeas claim unless otherwise modified or dissolved; it is further

**ORDERED** and Petitioner's Motion for a Temporary Restraining Order is **denied as moot.**

April 4, 2005

Gladys Kessler

United States District Judge

**JARALLAH AL–MARRI, et al., Petitioners, v. GEORGE W. BUSH, et al., Respondents.**

**Civil Action No. 04–2035 (GK)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*2005 U.S. Dist. LEXIS 17195*

**March 7, 2005, Decided**
**March 7, 2005, Filed**

**SUBSEQUENT HISTORY:** Injunction granted at, Motion denied by *Al-Marri v. Bush, 2005 U.S. Dist. LEXIS 6259 (D.D.C., Apr. 4, 2005)*

**COUNSEL:** [*1] For JARALLAH AL–MARRI, Detainee, Guatanamo Bay Naval Base, AL1 SALAH KAHLAH AL–MARRI, Petitioners: Jonathan L. Hafetz, GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE, New York, NY; Lawrence S. Lustberg, Mark A. Berman, GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE, Newark, NJ.

For GEORGE W. BUSH, President of the United States, DONALD RUMSFELD, Secretary of Defense, JAY HOOD, Army Brigadier General, all sued in their official capacities, Respondents: Terry Marcus Henry, U.S. DEPARTMENT OF JUSTICE CIVIL DIVISION, Washington, DC; Preeya M. Noronha, U.S. DEPARTMENT OF JUSTICE, Washington, DC.

**JUDGES:** Gladys Kessler, United States District Judge.

**OPINIONBY:** Gladys Kessler

**OPINION:**

**ORDER**

On January 10, 2005, Petitioners filed a Motion for Discovery and for Preservation Order. Petitioners request that the Court order Respondents to preserve and maintain all evidence and information regarding the torture, mistreatment, and abuse of detainees at Guantanamo Bay. Respondents, however, argue that Petitioners have failed to satisfy the standard for entering a preliminary injunction, which is required when considering a request for a preservation order.

"[A] document preservation order is [*2] no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery." *Pueblo of Laguna v. United States, 60 Fed. Cl. 133, 138 n.8 (Fed. Cl. 2004)* (citing *Mercer v. Magnant, 40 F.3d 893, 896 (7th Cir. 1994))*. Thus, Petitioners need not meet such a standard when seeking a preservation order. Furthermore, Respondents represent that the information at issue will not be destroyed, so the Court finds that entering a preservation order will inflict no harm or prejudice upon them. Accordingly, it is hereby

**ORDERED** that Petitioners' Motion for Preservation Order is **granted;** it is further

**ORDERED** that Respondents shall preserve and maintain all evidence and information regarding the torture, mistreatment, and abuse of detainees now at the Guantanamo Bay detention facility.

March 7, 2005

Gladys Kessler

United States District Judge

## CERTIFICATE OF COUNSEL REQUIRED BY LCvR 65.1

Pursuant to Rule 65.1(a) of the Rules of the District of Columbia, I, John Missing, counsel for Petitioner al-Mithali, hereby certifies to the Court that (i) On November 8, 2005, we sent an email to counsel for Respondents, Andrew Warden, requesting that Respondents agree that they will not remove Petitioner from the Guantanamo Bay Naval Facility, other than to release him within the United States, and further advising that unless Respondents consented, Petitioner would file an application with the Court seeking such relief; (ii) Also on November 8, 2005, a voicemail reciting the same request and advice was left on Mr. Warden's voicemail; and (iii) On November 10, 2005, Mr. Warden sent an email to counsel for Petitioner advising that Respondents would not agree to Petitioner's request.  Petitioner al-Mithali will file and serve on this same date the foregoing application and supporting documents by electronic service, and requests a hearing on the instant motion as soon as the Court deems appropriate.

Dated: November 18, 2005                              :

Respectfully submitted,

Counsel for Petitioner:

_____/s/_____

John B. Missing (Bar No. 425469)
Jennifer C. Argabright (Bar. No. 480763)
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W. Ste 1100E
Washington, D.C. 20004-1169
Tel:  (202) 383 8000
Fax:  (202) 383 8118

Jeffrey I. Lang
Jennifer R. Cowan
Ellen A. Hochberg
Tatia L. Miller
Philip Rohlik
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6386

*Of Counsel*
Barbara Olshansky
Gitanjali Gutierrez
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

2