UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

-------------------------------------------------------------------------- x

HAYAL AZIZ AHMED AL-MITHALI,                    :
     Detainee, Guantánamo Bay Naval Station
     Guantánamo Bay, Cuba,                        :

ALI AZIZ AHMED AL-MITHALI,                      :
     as Next Friend of Abdu Al-Qader Hussain
     Al-Mithali,                                  :   Civil Action No. 05-CV-02186
                   *Petitioners*,            (ESH)
                             :

v.                                              :

GEORGE W. BUSH, et al.,                         :
                *Respondents.*        :

-------------------------------------------------------------------------- x

## PETITIONER'S REPLY STATEMENT OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ENJOINING TRANSFER OF PETITIONER OR ALTERNATIVELY, REQUIRING THIRTY DAYS' NOTICE OF INTENT TO TRANSFER PETITIONER

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdah v. Bush*,
   04-CV-1254, 2005 WL 711814 (D.D.C. Mar. 29, 2005)...........................................7, 12

*Al-Daini v. Bush,*
   05-CV-634, slip op. (D.D.C. June 6, 2005) ...................................................................12

*Al-Joudi v. Bush,*
   05-CV-00301, 2005 WL 774847 (D.D.C. Apr. 4, 2005) .........................................10, 12

*Al-Oshan v. Bush,*
   05-CV-2005, U.S. Dist. LEXIS 6635 (D.D.C. Mar. 31, 2005).....................................12

*Al-Shiry v. Bush,*
   05-CV-2005, U.S. Dist. LEXIS 6636 (D.D.C. Apr. 1, 2005) ........................................12

*Calcano-Martinez v. INS*,
   533 U.S. 348 (2001) ......................................................................................................19

*Castaneda-Gonzalez v. INS*,
   564 F.2d 417 (D.C. Cir. 1977) ......................................................................................20

*El-Banna v. Bush,*
   04-CV-1144, slip op. (D.D.C. Apr. 8, 2005)..................................................................12

*Environmental Def. Fund v. EPA*,
   485 F.2d 780 (D.C. Cir. 1973) ........................................................................................2

*Glucksman v. Henkel,*
   221 U.S. 508 (1911) ......................................................................................................17

*Hamdi v. Rumsfeld*,
   124 S. Ct. 2633 (2004) .......................................................................................9, 14, 15

*Hicks v. Bush*,
   02-CV-299, 2005 U.S. Dist. LEXIS 27646 (D.D.C. Nov. 14, 2005) ..............................2

*Holmes v. Laird,*
   459 F.2d 1211 (D.C. Cir. 1972) ....................................................................................16

i

*In re Extradition of Howard,*
    996 F.2d 1320 (1st cir. 1993) ...................................................................17, 19

*Kurnaz v. Bush,*
    05-CV-2005, U.S. Dist. LEXIS 6560 (D.D.C. Apr. 12, 2005) ..................................5, 12

*Salahi v. Bush,*
    05-CV-0569, slip op. (D.D.C. Apr. 15, 2005)......................................................12

*United States v. Kin-Hong,*
    110 F.3d 103 (1st Cir. 1997) ..............................................................17, 18, 19

*Lo Duca v. United States,*
    93 F.3d 1100 (2d Cir. 1996) ............................................................................18

*Michael v. INS,*
    48 F.3d 657 (2d Cir. 1995) .............................................................................19

*People's Mojahedin Organization v. Department of State,*
    182 F.3d 17 (D.C. Cir. 1999) .........................................................................15

*Rasul v. Bush,*
    124 S. Ct. 2686 (2004) ...........................................................................3, 9, 12

*SEC v. Vision Communications, Inc.,*
    74 F.3d 287 (D.C. Cir. 1996) ...........................................................................2

*Serono Laboratories, Inc. v. Shalala,*
    158 F.3d 1313 (D.C. Cir. 1998) .......................................................................2

*INS v. St. Cyr,*
    533 U.S. 301 (2001) ......................................................................................15

*Ward v. Rutherford,*
    921 F.2d 286 (D.C. Cir. 1990) ...................................................................17, 18

## FEDERAL STATUTES/RULES

8 U.S.C. § 1252......................................................................................................20

Federal Rule Of Appellate Procedure 23(a) ..................................................................6, 7

ii

**PETITIONER'S REPLY STATEMENT OF POINTS
AND AUTHORITIES IN FURTHER SUPPORT OF HIS
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION ENJOINING TRANSFER OF
PETITIONER OR ALTERNATIVELY, REQUIRING THIRTY
DAYS' NOTICE OF INTENT TO TRANSFER PETITIONER**

Petitioner Hayal Aziz Ahmed Al-Mithali, by and through his next friend Ali Aziz
Ahmed Al-Mithali, respectfully submits this statement of points and authorities in further
support of his motion for a temporary restraining order and preliminary injunction
enjoining transfer of Petitioner, who is currently detained at the United States naval base
at Guantanamo Bay ("Guantanamo") or alternatively, requiring thirty days' notice prior
to any intended transfer.

## PRELIMINARY STATEMENT

Petitioner's habeas petition raises serious, substantial issues arising from his
challenge to nearly four years of detention without any pretense of independent review.
Petitioner has submitted this motion due to Respondents' stated intention, and actual
practice, of transferring detainees from Guantanamo (and probably beyond the Court's
jurisdiction) and into the custody of foreign governments throughout the world,
sometimes with advance agreements to ensure that detainees remain incarcerated.  In this
motion, Petitioner has requested modest interim relief aimed only to protect his
opportunity to have his claims heard by the Court and ensure that if illegal, his detention
is not perpetuated in a location beyond the Court's jurisdiction.  Respondents argue that
they should have the unqualified power to transfer Petitioner anywhere and to the custody
of any government.  Respondents also argue that a transfer of Petitioner, even to the

custody of a foreign government known to actively practice torture, would constitute a "release" from detention, and the full and complete relief requested by Petitioner in his habeas petition, and for that reason, Petitioner has no basis for requesting relief from the Court with respect to his transfer.

Habeas jurisprudence and the balance of powers support Petitioner's position that the Court should preliminarily enjoin any transfer of Petitioner from Guantanamo pending resolution of his petition. If Petitioner's detention violates his rights, then any transfer would also be a violation, but one that no court would ever have the opportunity to review. Respondents' position is further undermined by their failure to identify any harm that has occurred as a result of decisions by courts of this district to enjoin transfer of detainees while their habeas petitions are pending or requires notice before such a transfer.

**ARGUMENT**

**I.    ALL FOUR FACTORS OF THE ANALYSIS FOR A PRELIMINARY INJUNCTION FAVOR PETITIONER.**

Issuing a preliminary injunction is appropriate to maintain the status quo between the parties during the pendency of an action. *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Envtl. Def. Fund v. EPA*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973). The four aspects of the analysis "interrelate on a sliding scale" so that "if the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998). *See also Hicks v. Bush*, No. 02-299, 2005 U.S. Dist Lexis 27646 (D.D.C. Nov. 14, 2005).

2

Even if, as Respondents argue, a preliminary injunction is only to be issued in extraordinary circumstances, such relief is appropriate here. Petitioner has been detained by the United States government for nearly four years with little or no communication with the outside world, no access to counsel, and still without the opportunity to exercise his right to review.[1] Other detainees, and perhaps Petitioner himself, have been tortured. *See, e.g.,* Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'* (2004), *available at* http://web.amnesty.org/library/Index/ENGAMR511452004. The Supreme Court, in *Rasul v. Bush,* 124 S. Ct. 2686 (2004), ruled that Petitioner is entitled to have his claims heard by this Court. This motion requests only that, during the pendency of Petitioner's action, Respondents be enjoined from defeating the Court's jurisdiction and condemning Petitioner to potentially indefinite detention in the custody of a foreign government without the possibility of judicial review.

### A.    Petitioner Will Suffer Irreparable Harm If His Transfer Is Permitted During The Pendency Of His Habeas Action.

Transfer to the custody of another country (or release in another country under circumstances in which Petitioner will be re-arrested) will irreparably harm Petitioner by possibly depriving the Court of jurisdiction and thus eliminating Petitioner's opportunity to seek judicial review of the grounds of his detention, as well as perpetuating his

---

[1] To date, counsel has had no contact with Petitioner. Counsel received security clearance in November and have requested permission from the Department of Defense to meet for the first time with Petitioner in early January. Following that meeting, Petitioner may supplement the evidentiary record on this motion

possibly illegal detention.  He also will face the grave risk of torture and cruel and
inhumane conditions during his continued detention.

### 1.    Transferring A Detainee To The Custody Of Another Country Is Not Equivalent To Releasing Him.

Respondents are disingenuous, at best, in suggesting that transferring custody of a
detainee to a foreign government is the equivalent of releasing him to freedom.  By their
own admission, Respondents are not simply permitting detainees to leave Guantanamo.
Instead, detainees are transferred to the "control of other governments for continued
detention, investigation and/or possible prosecution when those governments are willing
to accept responsibility for ensuring, consistent with their laws, that the detainees will not
pose a threat to the United States and its allies."  Respondents' Opposition To Petitioners'
Motions For Temporary Restraining Orders And Preliminary Injunctions Enjoining
Transfer Or Release Or Requiring Advance Notice Thereof ("Opp. Memo") at 4 citing
Waxman Decl. ¶ 3; Prosper Decl. ¶ 3.  The transfer process does not occur pursuant to a
regulatory scheme dictated by treaty, as extradition proceedings do, or pursuant to statute,
as deportation proceedings do, but according to a set of procedures established by
Respondents, which they only explain in conditional and contradictory language, and
which may change at any time.

Furthermore, in some instances, Respondents continue to exercise a degree of
custody or control over detainees after transfer.  As described above, Respondents seek
assurances from the custodial government that after transfer the detainee will "not pose a
threat to the United States."  Opp. Memo at 4.  Ambassador Prosper asserts that while

4

detainees are held in other countries, the United States has the "ability to investigate allegations of mistreatment or torture that come to our attention and to reach acceptable accommodations with other governments to address those important concerns." Prosper Decl. ¶ 10.[2]  Two Yemeni detainees reported to Amnesty International that they were transferred from Guantanamo to an unknown place of detention run by United States officials where they were held in solitary confinement for eighteen months and interrogated daily by individuals who spoke English.  *See* Amnesty International, *Torture and Secret Detention:  Testimony of the 'Disappeared' in the 'War on Terror,'* Aug. 4, 2005, at 1.[3]  Those detainees were subsequently transferred to Yemen, and a Yemeni official told Amnesty International that they were being held at the request of the United States.  *See id.*  The countries to which detainees have been transferred include Iraq, where the United States controls the prisons, and Afghanistan, where the United States has strong influence over prisons, and therefore continues to exercise custody and control over the detainees.  *See Kurnaz v. Bush,* 04-CV-1135, 2005 U.S. Dist. LEXIS 6560, *7 (D.D.C. Apr. 12, 2005) (noting with concern the possibility that "a petitioner could be transferred to the custody of a different United States custodian in a foreign country, such as the United States military base in Afghanistan").  Because, through their actions, Respondents maintain some degree of influence over the custody and control of the

---

[2] Notably, he does not state whether the United States has ever done so.

[3] A*vailable at* http://web.amnesty.org/library/Index/ENGAMR511172005?open&of=ENG-313.

5

detainees, albeit in a foreign country, transfer cannot be considered the equivalent of release.

Absent the preliminary injunction requested by Petitioner in this motion, the executive branch will make these transfers without any review or oversight. Congress has not approved a statute laying out the prerequisites for transfer; no judicial review is built into the process. Just as the basis for detention and treatment of detainees at Guantanamo is subject to judicial review, Respondents do not have unfettered discretion regarding the circumstances under which they relinquish custody of a detainee. The circumstances of release or transfer are part of the conditions of confinement. Respondents' contention, taken to its absurd extreme, would not differentiate between a prisoner escorted out the front door of a prison and a prisoner ejected from the front door of an airplane. In both cases, according to the logic of Respondents' argument, the prisoner has been released from custody, so his habeas petition is rendered moot and his release is not subject to judicial review.

      a.     **Federal Rule Of Appellate Procedure 23(a) Should Be Applied By Analogy Because Transfer Will Prevent Petitioner From Having His Habeas Petitions Heard.**

Respondents have taken the position that pending appeals in other habeas actions by Guantanamo detainees "will address the core issues in these cases and, thus, determine how these cases should proceed," Resp. Mot. To Stay at 2, and have requested a stay while those appeals are being resolved. The briefing on the request for a stay, and if granted, the stay itself, will postpone Petitioner's exercise of his right to have his habeas claims heard by a Court. If Respondents are permitted to exploit the delay in Petitioner's

case while appeals are pending by unilaterally transferring Petitioner beyond the jurisdiction of the Court, then that lag will become irreparable harm in that his habeas claims will never be heard.

If, as Respondents contend, the appeals in those other cases may be dispositive here, then Respondents should be bound by the policy underlying Rule 23(a) and be prohibited from transferring Petitioner or, in the alternative, be required to give thirty days' notice to the Court and counsel prior to an intended transfer. Requiring Respondents to comply with the substance of Rule 23(a) would prevent them from transferring detainees to the custody of another person (i.e. another government), which may "imped[e] a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." *Abdah v. Bush*, 04-CV-1254, 2005 WL 711814, *5 (D.D.C. Mar. 29, 2005) (quoting *Hammer v. Meachum*, 691 F.2d 958, 961 (10th Cir. 1982)).

> **2.     Petitioner's Irreparable Harm From Transfer Will Be Exacerbated If He Is Transferred To The Custody Of A Foreign Country Where He May Be Tortured.**

Respondents' unilateral decision to transfer Petitioner would not only prevent his habeas claim from being considered by this Court but may exacerbate the irreparable harm by transferring him to a location where he may be tortured or subjected to cruel and inhumane treatment. If there is no judicial review of Respondents' decision to transfer Petitioner, then in their unfettered discretion, Respondents may select any country to receive Petitioner regardless of its human rights record. Both Yemen and Sudan are known to torture prisoners, and Respondents have acknowledged that detainees have

7

been sent to countries other than their home countries.  Waxman Decl. ¶ 3.

Respondents offer no assurance that detainees will not be tortured after transfer. The description of their procedures for determining whether it is "more likely than not" that a detainee will be tortured after transfer is so vague as to be meaningless, and Respondents are under no obligation to retain those procedures.  Moreover, Respondents fail to explain their definition of torture, a matter of tremendous practical importance to Petitioner, and one in which Respondents have not been consistent.  Statements by members of the executive branch make clear that many of the practices at Guantanamo are not within this administration's definition of torture.[4]  Therefore, presumably, Respondents would have no objection if this type of treatment continued after transfer.

If Respondents' position is accepted, then an individual could be wrongly determined to be an enemy combatant, incarcerated for years without any contact with the outside world, and transferred to the custody of a government that would continue to detain him indefinitely at the request of the executive branch and might subject him to

---

[4] *See* Washington Post, *Editorial, Director For Torture,* Nov. 23, 2005 *available at* http://www.washingtonpost.com/wp-dyn/content/article/2005/11/22/AR2005112201692.html (CIA Director Porter Goss is quoted: "This agency does not torture… We use lawful capabilities to collect vital information, and we do it in a variety of unique and innovative ways."); *see also* Josh White, "Abu Ghraib Techniques Were First Used at Guantanamo," *Washington Post*, July 14, 2005 *available at* http://www.washingtonpost.com/wp-dyn/content/article/2005/07/13/AR2005071302380.html (Military investigators who briefed the Senate Armed Services Committee said their tactics did not cross the line into torture.).

8

cruel and inhuman treatment.  All of that would occur without any judicial review of the basis for his detention or the conditions of his confinement.

In contrast, Petitioner's motion merely requests that he not be transferred while the Court is considering his habeas petition so that if his detention is unlawful, he can obtain relief, or in the alternative, that the Court and counsel receive thirty days' notice so that the Court may review the circumstances of the transfer.

**B.    The Public Interest Argues In Favor Of Prohibiting Respondents' Transfer Or Requiring Notice Prior To Transfer.**

The Supreme Court has found that the federal judiciary should assess the merits of habeas claims brought by individuals detained at Guantanamo as enemy combatants: "Whatever power the United States Constitution envisions for the Executive in its exchanges with other nations or with enemy organizations in times of conflict, it most assuredly envisions a role for all three branches when individual liberties are at stake." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2650 (2004); *see also Rasul v. Bush,* 124 S. Ct. 2686, 2692-93, 2698 (2004) (holding that "§ 2241 confers on the District Court jurisdiction to hear petitioner's habeas corpus challenge to the legality of his detention" and noting that federal courts have the power to review applications for habeas relief in a wide variety of cases involving detention by the executive branch).  Respondents ignore those holdings in arguing that the executive branch can detain enemy combatants "without undue intrusion" from this Court.  Opp. Memo at 24.  Respondents are wrong.  "[T]he public interest undeniably is served by ensuring that Petitioner's constitutional rights can be

adjudicated in an appropriate manner." *Al-Joudi v. Bush,* 05-CV-301, 2005 WL 774847, *6 (D.D.C. Apr. 4, 2005).

To allow the executive branch to avoid altogether its obligation to respond to a petition for habeas relief by transferring a prisoner to the custody of a foreign government that is likely to continue to hold the prisoner captive and that may even exacerbate the conditions of confinement, would not simply jeopardize the right of Petitioner to invoke the power of the Great Writ, but would permit a dangerous drift in the balance of powers, which Respondents would apparently embrace.

**C.    Petitioner Is Likely To Succeed On The Merits Of His Habeas Claim.**

Respondents' argument on this issue is circular: the Court should not grant a preliminary injunction enjoining Petitioner's transfer because Petitioner is unlikely to succeed in his efforts to obtain such a preliminary injunction. Respondents may be arguing that even with thirty days' notice prior to transfer, the Court could not prohibit the transfer, but that formulation is also too narrow. The appropriate analysis looks to Petitioner's habeas claim and assesses, not whether Petitioner has a statistical likelihood of being successful, but whether he has raised issues which "are so serious, substantial, difficult, and doubtful, as to make them a fair ground for litigation." *Al-Joudi v. Bush,* 05-CV-00301, 2005 WL 774847, at *3 (internal citations omitted). Without question, if Petitioner has been illegally detained for nearly four years without judicial review, that is significant enough to merit a preliminary injunction to preserve the opportunity for the Court to resolve those issues.

If Petitioner's habeas claims are substantiated, if he is being held in violation of his rights, then it would also be a violation of his rights for his illegal detention to be prolonged indefinitely through a transfer into detention beyond the jurisdiction of the Court. Inherent in the right of Petitioner to meaningfully pursue habeas proceedings is his right to avoid an interim transfer to the custody of a warden beyond the Court's jurisdiction which would defeat the right to review. Because Petitioner has raised serious, substantial issues in his petition, he is entitled to have the opportunity to also challenge his transfer.

Furthermore, unless Respondents now know the circumstances of Petitioner's transfer, they cannot argue that judicial intervention would be improper. First, Respondents' articulated policy regarding transfers is so vague as to be meaningless in assessing whether judicial intervention regarding a specific transfer would be appropriate. For example, detainees may be sent anywhere in the world, regardless of the country's human rights record. Respondents say that "appropriate assurances regarding the detainee's treatment are sought" from the foreign government, but Respondents tellingly do not define the term "appropriate" and do not indicate whether receiving any particular assurance is a prerequisite to transfer. Opp. Memo at 5. Similarly, Respondents state that "the State Department may consider various monitoring mechanisms for verifying that assurances are being honored" but fail to disclose whether such mechanisms have ever been instituted or what they entail. Opp. Memo at 6. Second, Respondents could not now know whether the transfer would involve the "delicate" diplomatic communications in which they claim the Court cannot intrude. Third, Respondents' argument that the

11

separation of powers requires the Court to absent itself from the executive branch's decisions about detainees ignores the established role of judicial review in decisions to remove an individual from the United States and the Supreme Court's ruling in *Rasul*.[5] To return to the earlier extreme analogy, if Respondents intended to release a detainee by pushing him from a flying airplane, presumably the Court could intervene if it had advance notice of Respondents' plans.

### D.    Respondents Will Suffer No Harm From The Issuance Of A Temporary Restraining Order Or Preliminary Injunction.

Similar preliminary injunctions have been granted by courts in many other habeas actions by detainees at Guantanamo.  *See, e.g., Salahi v. Bush,* 05-CV-0569, slip op. (D.D.C. Apr. 15, 2005) (prohibiting release or rendition while stay is in effect); *Kurnaz v. Bush,* 05-CV-392, 2005 U.S. Dist. LEXIS 6560 (D.D.C. Apr. 12, 2005) (requiring thirty days notice prior to transfer); *Abdah v. Bush,* 04-CV-1254, 2005 WL 711814 (D.D.C. Mar. 29, 2005) (same); *Al-Daini v. Bush,* 05-CV-634, slip op. (D.D.C. June 6, 2005) (same); *Al-Joudi v. Bush,* 05-CV-00301, 2005 WL 774847 (D.D.C. Apr. 4, 2005) (same); *Al-Oshan v. Bush,* 05-CV-0520, 2005 U.S. Dist. LEXIS 6635 (D.D.C. Mar. 31, 2005) (same); *Al-Shiry v. Bush,* 05-CV-0490, 2005 U.S. Dist. LEXIS 6636 (D.D.C. Apr. 1, 2005) (same); and *El-Banna v. Bush,* 04-CV-1144, slip op. (D.D.C. Apr. 8, 2005) (same).

Respondents fail to cite any instance in which such an injunction impaired their ability to engage in diplomatic relations or discussions with another country or caused any other problem.  Having been ruled against on several prior occasions, had the

_____

[5] *See, supra,* at II.B.

injunction given rise to particular difficulties, Respondents were free to tell this Court the details thereof.  The absence of any such discussion illustrates the minimal effect the relief requested here will have on Respondents.

**1.    Respondents' arguments regarding the
effect on diplomatic relations are premature.**

Unless Respondents have already begun the process of discussing Petitioner's transfer with a foreign government, they cannot now know whether such a transfer would involve a "delicate diplomatic exchange" which could only occur "in a confidential setting."  Prosper Decl. ¶ 10.  Tellingly, Respondents' argument is couched in generalities and conditional language, which suggests that the alleged harm is speculative at best: "[s]uch disclosure *could* chill important sources of information and *could* interfere with the ability of foreign relations personnel to interact effectively with foreign State officials."  Prosper Decl. ¶ 11 (emphasis added); *see also,* Waxman Decl. ¶ 8; Prosper Decl. ¶ 9; Opp. Memo at 19.

**2.    The Protective Order will prevent release
of information regarding diplomatic discussions.**

As Respondents are well aware, dissemination of classified information relevant to this action (including any discussions or assurances from foreign governments) is prohibited by the Protective Order which has been entered in Petitioner Al-Mithali's action.  Confidential information may only be reviewed by counsel for Petitioner at a secure facility after counsel have obtained security clearance and signed a non-disclosure agreement.  Any court papers including classified information are submitted under seal. Counsel are prohibited from discussing this information with anyone, including

13

Petitioner. The possibility of any information regarding diplomatic discussions becoming public is extraordinarily remote.

Respondents also have the ability to avoid any potential harm. They have not explained why transfer of Petitioner would be necessary during the pendency of his habeas action. If there is no urgent need, then Respondents could avoid any possibility of diplomatic embarrassment by continuing to detain Petitioner at Guantanamo rather than transferring him, thereby obviating the need for judicial review of their diplomatic discussions. That would also allow Petitioner's habeas claim to be fully litigated before this Court.

## II.    THE SEPARATION OF POWERS DOES NOT RENDER THE JUDICIARY POWERLESS TO INTERVENE WHEN THE EXECUTIVE BRANCH UNLAWFULLY DETAINS AN INDIVIDUAL.

The Supreme Court has ruled that Petitioner has the right to judicial review of his detention. Such review, to be meaningful, must also include the ability to review the circumstances of any release or transfer of custody and the ability of the Court to protect its jurisdiction if necessary. The separation of powers does not prevent this Court from granting the requested relief. To the contrary, courts routinely involve themselves in decisions to remove individuals from the United States.

In rejecting the separation of powers argument raised by Respondents, the Supreme Court in *Hamdi v. Rumsfeld* noted that the pivotal role of the habeas writ in challenging the lawfulness of Executive detention cannot be diminished or eliminated by Respondents' invocation of war powers. "We have long since made clear that a state of war is not a blank check for the President when it comes to the rights of the Nation's

14

citizens"; *Hamdi,* 124 S. Ct. at 2650  *See also INS v. St. Cyr*, 533 U.S. 301, 304-05 (2001) (right of habeas review to challenge detention by the executive branch applies no less forcefully to non-citizens).

The balance of powers require that this Court review whether Petitioner's detention or transfer is lawful.  "Whatever power the United States Constitution envisions for the Executive in its exchanges with other nations or with enemy organizations in times of conflict, it most assuredly envisions a role for all three branches when individual liberties are at stake."  *Hamdi*, 124 S. Ct. at 2650.

The lower court decisions cited by Respondents in support of their position do not undermine these Supreme Court holdings because the facts are so divergent from those presented here.  In *People's Mojahedin Org. v. Dep't of State*, two foreign organizations with no presence in the United States, and therefore no right to due process, challenged their designations as foreign organizations engaging in terrorist activities. 182 F.3d 17 (D.C. Cir. 1999).  The statute authorized only limited judicial review, so the Court made findings regarding some aspects of the process but declined to rule on whether the organizations threatened the national security of the United States.  *Id.* at 19, 22, 20-25. *People's Mojahedin Org.* is inapposite because there is no question that detainees at Guantanamo have due process rights and that this Court may review whether those rights are being violated.  As described above, inherent in the right to review the conditions of detention is the right to review the circumstances of a transfer, both to protect the Court's own jurisdiction and to prevent further improper detention at the direction of Respondents.

15

In *Holmes v. Laird*, the Court declined to interpret a treaty due to separation of powers, but also found that it, "is not to say that every dispute touching our foreign relations falls outside the province of the judiciary… Even in controversies affected in some degree by a treaty with a foreign country -- areas very likely off-limits for the judiciary -- the courts may in a particular context have a legitimate and useful function to perform." 459 F.2d. 1211, 1215 (D.C. Cir. 1972). Respondents are not asking for deference to a treaty or a similar instrument negotiated by the Executive and ratified by Congress. Rather they expect that their broad and unspecific invocation of "foreign relations" and "diplomatic matters" will suffice to thwart already-established judicial review of a process created and executed entirely by the executive branch in which Petitioner's liberty and life are at stake, and which until now, has occurred without any check or limit.

### A.    Judicial Review Is An Established Element of Actions To Remove Someone From The United States

In varied situations in which a person may be removed from the United States (and therefore no longer subject to the jurisdiction of its courts), the federal judiciary plays a role in determining whether the person has been granted appropriate due process and whether the removal from the United States violates statutory or Constitutional requirements. The relief requested here is no different.

### 1.    Courts Consider Habeas Claims In Extradition Proceedings

The role of federal courts in extradition proceedings, and the differences between extraditions and the transfer of Guantanamo detainees, support judicial review of any plan to transfer Petitioner. Federal courts are authorized to consider habeas petitions by

16

putative extraditees, just as they are authorized to consider habeas claims by detainees at Guantanamo. *See United States v. Kin-Hong*, 110 F.3d 103 (1st Cir. 1997); *Ward v. Rutherford*, 921 F.2d 286, 289 (D.C. Cir. 1990). Federal courts play this role despite the fact that an extradition provides many more safeguards for the individual than do Respondents' procedures for the transfer of a Guantanamo detainee. First, an extradition occurs at the request of another country, meaning that the executive branch has no vested interest in the detention or punishment of the individual. In contrast, the executive branch has unilaterally determined that the detainees are enemy combatants and, in some instances, seeks assurances from the receiving country that, after the transfers, "the detainees will not pose a threat to the United States and its allies." Opp. Memo at 4.

Second, an extradition treaty between the United States and the requesting country must be in force. The existence of such a treaty "indicates that, at least in some general sense, the executive and legislative branches consider the treaty partners' justice system sufficiently fair to justify sending accused persons there for trial." *In re Extradition of Howard*, 996 F.2d 1320, 1329 (1st cir. 1993); *see also Glucksman v. Henkel*, 221 U.S. 508, 512 (1911) (Holmes, J.) ("We are bound by the existence of an extradition treaty to assume that the trial will be fair."). In contrast, neither Yemen nor Sudan are parties to an extradition treaty with the United States and the judicial systems in both countries have been criticized by the State Department. *See, e.g.* U.S. Dept. of State, Country Reports on Human Rights Practices-2004, Yemen, *available at* http://www.state.gov/g/drl/rls/hrrpt/2004/41736.htm; U.S. Dept. of State, Country

17

Reports on Human Rights Practices-2004, Sudan, *available at*

http://www.state.gov/g/drl/rls/hrrpt/2004/41628.htm.

Third, and perhaps most important, a person is extradited to stand trial in another country. An extradition proceeding is "for the purpose of determining whether a case is made out which will justify the holding of the accused . . . to ultimately answer to an indictment, or other proceeding, in which he shall be finally tried upon the charge made against him." *Ward v. Rutherford*, 921 F.2d 286, 288 (D.C. Cir. 1990) citing *Benson v. McMahon*, 127 U.S. 457, 463 (1888). By Respondents' own admission, Guantanamo detainees have no such guarantee. Opp. Memo at 4-5. Instead, they may face indefinite detention.

Whereas Respondents insist that the government can render Petitioner with *no* notice, process or review, Opp. Memo at 3-6, extradition occurs *only* after a statutory process that is primarily intended to "interpose the judiciary between the executive and the individual." *Lo Duca v. United States*, 93 F.3d 1100, 1103 (2d Cir. 1996). Despite all the other procedural safeguards built into the extradition process, courts exercising habeas power serve as "the ultimate safeguard that extradition proceedings . . . comport with the Due Process Clause." *Kin-Hong*, 110 F.3d at 106. If extradition proceedings offer any lesson for this situation, it is that the judiciary must review the executive branch's decisions regarding the transfer of Guantanamo detainees because the detainees have so few other procedural safeguards.

### a.    The Rule of Non-Inquiry Is Inapplicable

The rule of non-inquiry is only applicable to extradition proceedings.  *See In re Extradition of Howard*, 996 F.2d 1320, 1329 (1st Cir. 1993).[6]  The rule may not be applied to other situations, like this one, because extradition has so many procedural safeguards, described above, which, regrettably, are not available to the detainees at Guantanamo.

### 2.    Courts May Act To Block Deportations

In deportation proceedings, courts routinely rely on the All Writs Act to review decisions by the executive branch to remove individuals from the United States.  *See, e.g., Michael v. INS,* 48 F.3d 657, 661 (2d Cir. 1995).  To prevent an "egregious denial of discretionary relief," federal courts have noted their own power to stay orders of deportation to safeguard the court's jurisdiction.  *See Michael,* 48 F.3d at 663-64 (citing *Reid v. INS,* 766 F.2d 113, 116-17 n. 9 (3d Cir. 1985)).  Federal district courts also have habeas jurisdiction over removal decisions.  *See Calcano-Martinez v. INS,* 533 U.S. 348, 349-50 (2001) (holding that despite the lack of jurisdiction of the appellate court to hear petitions for direct review from aliens removable by reason of aggravated felonies, the district court has jurisdiction to hear their habeas petitions).  In addition, the Immigration Act ensures that aliens may obtain judicial review of final deportation orders.  *See*

---

[6] Respondents are incorrect that this language was characterized as dicta in *U.S. v. Kin-Hong,* 110 F.3d 103 (1st Cir. 1997).  Mem. Op. at 21 n. 15.  *Kin-Hong* cites *Howard* for the proposition that the "court . . .doubted, in dicta, that the rule of non-inquiry is constitutionally mandated."  *Kin-Hong* does not address the statement in *Howard* that the rule of non-inquiry may only be invoked when an extradition treaty exists.  *Kin-Hong,* 110 F.3d at 111 n.11.

*Castaneda-Gonzalez v. INS*, 564 F.2d 417, 420 n.1 (D.C. Cir. 1977); *see also* 8 U.S.C. § 1252.

## CONCLUSION

Petitioner has requested modest relief already granted in many habeas actions by Guantanamo detainees without any apparent harm to Respondents.  All aspects of the analysis argue in favor of issuing the requested temporary restraining order and preliminary injunction. Therefore, Petitioner respectfully requests that this Court issue a preliminary injunction enjoining Respondents from transferring Petitioner during the pendency of his habeas action or, in the alternative, providing the Court and counsel with thirty days' notice prior to an intended transfer.

Dated: December 2, 2005.

Respectfully submitted,

Counsel for Petitioners:

_____/s_____
John B. Missing (Bar No. 425469)
Jennifer C. Argabright (Bar No. 480763)
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W.
Washington, D.C. 20004-1169
Tel:  (202) 383 8000
Fax:  (202) 383 8118

Jeffrey I. Lang
Jennifer R. Cowan
Philip Rohlik
Ellen A. Hochberg
 DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6836

*Of Counsel*
Barbara Olshansky
Gitanjali Gutierrez
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

21