IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HAYIL AZIZ AHMED<br>    AL-MITHALI, *et al.* ,<br>        Petitioners,<br>    v.<br>GEORGE W. BUSH, *et al.*,<br>        Respondents. | Civil Action No.  05-cv-2186 (ESH) |

**PETITIONER'S OPPOSITION TO RESPONDENTS'
MOTION TO STAY PRODUCTION OF FACTUAL RETURN**

This Opposition to Respondents' Motion to Stay The Court's Order to Produce Factual Return is respectfully submitted on behalf of Petitioner Hayil Aziz Ahmed Al-Mithali. ("Petitioner al-Mithali").  For the reasons set forth below, Respondents' motion should be denied, and Respondents should comply with the Court's December 20, 2005 Order directing Respondents to produce the factual return to Petitioner's counsel by March 20, 2006.

**PRELIMINARY STATEMENT**

Petitioner al-Mithali has been held in prison for four years, and continues to be denied the most basic and fundamental right to which every prisoner is entitled – notice of the charges and evidence against him.  There is no legitimate basis for Respondents' steadfast efforts to deprive him of this basic right.

The Court has already heard, and rejected, this precise application by Respondents.  In response to Petitioner's habeas petition, Respondents moved for a stay of all proceedings in this action, including Respondents' obligation to produce a factual return.  Respondents argued that appeals in two other detainee cases before the D.C. Circuit were likely to determine that the

district courts lack jurisdiction over all such cases. Although the Court granted in part Respondents' motion, the Court specifically refused to stay Respondents' obligation to produce the factual return, explaining:

> [I]n order to ensure that the proceedings can continue in an orderly fashion in the event that detainees prevail on appeal, respondents shall provide a factual return to the Court and to petitioners' counsel within ninety (90) days of the date of this Order.

In their renewed motion for a stay, Respondents once again argue that the D.C. Circuit may decide that the district courts lack jurisdiction over the Guantanamo detainee cases. Respondents now contend that they should be excused from complying with the Court's Order because the D.C. Circuit has agreed to consider Respondents' argument that the Detainee Treatment Act ("DTA") has withdrawn district court jurisdiction over all detainee habeas actions, and because it is Respondents' "understanding that it is the sense of the Court that it wishes to await anticipated guidance from the D.C. Circuit regarding the effect of the Act before proceeding further in Guantanamo detainee habeas cases." [Resp. Mem. at ¶ 3]. Respondents' understanding, as well as their jurisdictional argument, are wrong.

The effect of Respondents' renewed motion based on its professed "understanding" of the Court's "wishes" would be to presume the cessation of all activity associated with the detainee cases until the appeals are decided – which is completely at odds with our understanding of how the Court has expected the parties to proceed pending resolution of the detainee case appeals. In the December 20, 2005 Order, the Court stayed certain activity, but ordered other actions – such as production of the factual return – to proceed. Later, in response to Respondents' stated intention to file motions to dismiss detainee actions based on the DTA, we understand that there were suggestions from the Court that challenges to the district court jurisdiction based on the DTA should be deferred pending the appeals before the D.C. Circuit. There have been no

2

suggestions from the Court, at least that we have been aware, that the Court expected all action in the detainee cases – such as counsel meetings with detainees and emergency motions relating to detainee healthcare – to be held in abeyance pending the appeals before the D.C. Circuit. To the contrary, those activities have continued unabated under the Court's December 20 Order and similar orders entered in other actions.

Respondents' summary description of the DTA as having withdrawn district court jurisdiction over Guantanamo detainee habeas actions is misleading. The DTA withdraws district court jurisdiction only over detainee habeas actions commenced after the DTA effective date of December 30, 2005. The Court's jurisdiction over habeas actions commenced prior to the effective date, including this action, is preserved under the DTA. The DTA therefore has no impact on the Court's jurisdiction in this action.

Respondents do not, and cannot, cite to any undue burden or unfair prejudice that they will suffer from production of the factual return – and certainly nothing that has arisen since the parties briefed this issue on Respondents' original motion. The factual return is merely a summary of evidence presented to the Combatant Status Review Tribunal ("CSRT"), and the CSRT's conclusion.[1] Under the Department of Defense's internal regulations, the factual returns must be prepared within three days from the date of the CSRT decision. Memorandum From Secretary of the Navy, Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba (July 29, 2004), at 9,

---

[1] The CSRT is a military commission convened by the Department of Defense to determine whether a detainee is an "enemy combatant" and thus subject to detention under the President's Military Order of Nov. 13, 2001: Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, *available at* http://www.whitehouse.gov/news/releases/2001/11/20011113-27.html

*available at* http://www.defenselink.mil/news/Jul2004/d20040730comb.pdf. Thus the Court's December 20 Order requires Respondents only to produce a copy of an existing file.

In addition, Respondents are required to produce the factual return under the DTA – the very statute they cite to avoid that obligation. The DTA provides each detainee with a statutory right to challenge in the D.C. Circuit the sufficiency of evidence supporting the CSRT determination. The detainee thus has a right to obtain the factual return under the DTA. In addition, under newly adopted annual Administrative Review Board ("ARB") procedures, detainees' counsel are allowed to submit statements and evidence into the administrative record for consideration by the ARB. These newly adopted ARB procedures, if they are intended to be anything other than window-dressing, must include the right of counsel to access the factual record to which he has been invited to respond.

The Court's December 20, 2005 Order recognized that a stay risked inflicting harm on Petitioner through continued delay. The Court therefore directed Respondents to produce the factual return to ensure that if the detainees were successful on appeal, Petitioner would be able to pursue his petition in an orderly fashion.

At its core, Respondents' renewed application to avoid producing the factual return serves but one purpose – to deny through delay any meaningful review of the grounds for Petitioner's imprisonment. This is an allegation that is not made lightly, but unfortunately, recent revelations have shown that Respondents' actions, at least on occasion, have merited such frank assessment. In *Qassim v. Bush*, 382 F. Supp. 2d 126, 2005 WL 3508654, at *1 (D.D.C. 2005), Respondents successfully moved to stay all proceedings in several related cases, including their obligation to produce factual returns. According to the *Qassim* court, at the time Respondents moved for a stay, they knew, and yet declined to disclose to the court and

petitioners' counsel, that the factual returns reflected the CSRT's determinations that the petitioners were not enemy combatants.

After four years of imprisonment, and two years following the Supreme Court decision in *Rasul* holding that detainees have a right to seek review in federal court, it is well past time for Respondents to acknowledge the minimum standards expected of any government, let alone the United States of America, before depriving a person of liberty. The interests not only of Petitioner, but of the public at large depend on Respondents' abiding these standards. Petitioner asks simply for notice of the allegations against him and the basis for Respondents' determination to imprison him – though he is entitled to much more, due to the nature of Respondents' motion, here we address only that most basic of rights. The Court should not countenance any further delay.

## PROCEDURAL HISTORY

Petitioner filed his petition for a writ of habeas corpus and other relief on November 7, 2005, and on November 10, 2005, moved, *inter alia*, for production of the factual return.

On November 15, 2005, Respondents moved for a stay of all proceedings in this action. Respondents argued that appeals pending before the Court of Appeals for the District of Columbia Circuit in *In re Guantanamo Detainee Cases*, 335 F.Supp.2d 443 (D.D.C. 2005), and in *Khalid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005), might restrict the scope of this Court's jurisdiction over this action.

In the Order dated December 20, 2005, the Court granted in part Respondents' motion for a stay, but denied the stay with respect to Respondents' obligation to produce the factual return. The Order required Respondents to produce the factual return within 90 days of the Order, which would be by March 20, 2006.

# ARGUMENT

**I.     Respondents Have Failed To Meet The Standards
        Required For A Stay Of This Court's Order.**

It is well established that in considering an application for a stay or injunction pending resolution of an argument on appeal Pursuant to Fed. R. Civ. P. 62(c), the Court should grant the stay only if the movant has shown (1) a likelihood of success on the merits; (2) irreparable harm to movant if the stay is not granted; (3) that the stay will not injure other parties; and (4) that the stay furthers the public interest.[2]  *Hilton v. Braunskill*, 481 U.S. 770; *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985); *United States v.* Judicial Watch, Inc., 241 F. Supp. 2d 15 (D.D.C. 2003) (Huvelle, J).  A stay is an "extraordinary remedy," and the movant must satisfy "stringent standards in order to prevail." *Judicial Watch, Inc.*, 241 F. Supp. 2d at 16 (*quoting Judicial Watch, Inc. V. Nat'l Energy Policy Dev. Group,* 230 F. Supp. 2d 12 (D.D.C. 2002).  In this case, Respondents have not done so.

**A.     The DTA Does Not Excuse Respondents From
         Producing The Factual Return.**

Respondents contend that their renewed motion is based on an understanding that the Court wishes to await guidance from the D.C. Circuit on the jurisdictional impact of the DTA before proceeding further in the detainee habeas cases.  That contention, however, is misleading.  Their professed understanding, even if true, provides no reason to reconsider the Court's Order to produce the factual return, because that production does not contemplate further proceedings in this detainee case.  Rather, Respondents' motion to avoid producing the factual returns is

---

[2] .).  Although this case involves an appeal in a separate, but related action, the standard should be similar.  *Georgetown Steel Co., LLC v. United States*, 259 F. Supp. 2d 1344 (Ct. Int'l Trade 2003) ("While [the four traditional factors] may not directly determine defendant's instant motion, the fact . . . that the law is well-settled that a Court has discretion to stay its own proceedings does not signify standard-less exercise thereof.) (quotations omitted).

based entirely on an argument in a footnote: "[B]ecause the [DTA] vests 'exclusive jurisdiction' in the D.C. Circuit . . . it would be inappropriate for the Court to require relief in the interim that might infringe upon the Court of Appeal's exclusive jurisdiction." [Resp. Mem. at fn.2].

The impact of Respondents' motion, however, goes far beyond preservation of the status quo. Without even presenting their argument that the DTA divests this Court of jurisdiction over detainee habeas cases – an argument that, as briefly shown below, is completely wrong – Respondents' motion presumes that the Court's jurisdiction has been withdrawn, and therefore argues that the Court cannot issue an order, or enforce a prior order (such as an order requiring production of the factual return), because the Court would be encroaching on the D.C. Circuit's exclusive jurisdiction. On that basis, Respondents may unilaterally impose a complete cessation of all activity in connection with this litigation. Respondents, for example, could bar detainee counsel from visiting detainees at Guantanamo, or legal mail, since both are allowed only by virtue of the detainee habeas actions. Respondents similarly could refuse to answer emergency motions regarding the health of a detainee. In each such instance, according to Respondents' argument, the Court could not issue interim relief, because to do so would encroach on the exclusive jurisdiction of the D.C. Circuit.

We understood that the Court was inclined to defer jurisdictional challenges based on the DTA pending the resolution of the appeals before the D.C. Circuit, and that the Court otherwise intended to preserve the status quo. The Court's December 20 Order preserves the status quo generally by staying proceedings, subject to specific exceptions such as production of the factual return. Respondents' professed understanding of the Court's wishes is no basis to stay the Court's Order requiring production of the factual return.

7

Moreover, Respondents characterization of the DTA as a "new, statutory withdrawal of the Court's jurisdiction" is completely wrong. (Respondents' Mem. ¶4). The DTA preserves district court jurisdiction over detainee habeas actions commenced prior to the effective date of December 30, 2005. Respondents' argument rests on a misreading of the provision of the DTA that vests exclusive jurisdiction in the D.C. Circuit over all detainee habeas actions that are commenced <u>after</u> the effective date of the DTA, December 30, 2005. This action was commenced on November 7, 2005, and therefore the Court's jurisdiction over this case is unaffected by the DTA.

There is a strong presumption against the applying statutes, particularly jurisdiction statutes, retroactively – that is, newly enacted jurisdiction statutes should not be applied to existing actions – absent specific congressional intent. *See Hughes Aircraft Co. v. United States,* 520 U.S. 939, 950-51 (1997). The legislative record associated with the DTA demonstrates that Congress specifically intended that the DTA was <u>not</u> to be applied to existing habeas actions. In addition to the absence of a specific congressional intent that the DTA be applied retroactively, a statute, particularly with regard to jurisdiction, may not have retroactive application if the statutory changes effect some substantive changes, such as "'revisions in prior law to change <u>standards of proof and persuasion in a way favorable to the state</u>.'" *LaFontant v. Immigration & Naturalization Service*, 135 F.2d 158, 162 (D.C. Cir. 1998) (emphasis added), *citing Lindh v. Murphy*, 117 S. Ct. 2059, 2063-64 (1977). The section of the DTA relied upon by Respondents for their argument that the DTA should be applied retroactively not only withdraws the right to petition for habeas relief, but also alters the burden of proof and persuasion in a way favorable to the government. In lieu of habeas actions, detainees may challenge the determinations of the

CSRT after "allowing a rebuttable presumption in favor of the Government's evidence." Section 1005(e)(2)(c)(i) (emphasis added).[3]

### B. Respondents Have Failed To Demonstrate That They Will Suffer Undue Burden Or Unfair Prejudice.

Respondents have failed to identify any undue burden or unfair prejudice that they will suffer in the absence of a stay. Respondents will suffer neither. Under the Department of Defense's internal regulations, the factual return was required to be compiled within three days from the date of the CSRT. Memorandum From Secretary of the Navy, Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba (July 29, 2004), at 9, *available at* http://www.defenselink.mil/news/Jul2004/d20040730comb.pdf. Therefore the Order to produce the factual return to Petitioner's counsel will not impose any burden on Respondents.[4]

In Respondents' original motion seeking to stay their obligation to produce the factual return, Respondents complained only that the preparation of the unclassified factual return to be

---

[3] The Court in *LaFontant* distinguished between jurisdictional statutes that merely substituted the forums in which claims may be brought, which in substance are procedural and may be applied to existing actions, and jurisdictional statutes that altered the rights, burdens of proof or of persuasion in the prosecution of a claim, which is substantive and may not be applied retroactively. *LaFontant*, 135 F.2d 158, 162. The DTA, which supplants habeas petitions with a narrower challenge to an administrative finding and affords Respondents a rebuttable evidentiary presumption, clearly is substantive and therefore may not be applied to withdraw district court jurisdiction over habeas actions commenced prior to the effective date of the DTA.

[4] Petitioner's counsel already holds security clearance and has obtained access to classified factual returns in two other detainee cases. Therefore, the Order requiring production to Petitioner's counsel requires only that Respondents have a copy of the existing factual return sent to the secure facility in Alexandria, Virginia.

9

filed with the Court was burdensome.[5]  Without altering Respondents' obligation to provide Petitioner's counsel with access to the classified version of the factual return by March 20, 2006, Petitioner would agree to extend the time for Respondents to produce an unclassified version of the factual return to the Court until after the appeals before the D.C. Circuit are resolved.  That arrangement should alleviate any burden associated with complying with the Court's December 20 Order.

### 1. Respondents Would be Required to Produce Factual Returns and All Other Evidence Under the DTA.

Respondents will be required to produce the factual return, and all other evidence relating to Petitioner, under the DTA, and a stay of the Court's December 20 Order will not eliminate the burden associated with producing the return under the DTA.  Section 1005(e)(2)(c)(i) of the DTA expressly provides that a detainee may challenge in the D.C. Circuit:

> [W]hether the status determination of the Combatant Status Review Tribunal with regard to such alien was consistent with the standards and procedures specified by the Secretary of Defense for Combatant Status Review Tribunals (<u>including the requirement that the conclusion of the Tribunal be supported by a preponderance of the evidence</u> and allowing a rebuttable presumption in favor of the Government's evidence). (emphasis added).

Under the plain language of Section 1005, the detainee must show that the CSRT was not supported by a preponderance of "<u>the evidence.</u>"  In order for the detainee to be afforded a fair opportunity to meet his burden of proving that the CSRT determination is not supported by a preponderance of the evidence, the detainee perforce must have access to the evidence before the CSRT, if not to all evidence in Respondents' control.  Thus, regardless of whether the DTA

---

[5]  Respondents contended that the public version of the factual return had to be reviewed by several agencies prior to release.  Resps' Motion to Stay Proceedings, Nov. 15, 2005, at 12.

supplements or supplants this action, Respondents at a minimum will be obliged to produce the factual return. Respondents therefore will not suffer any prejudice in the absence of a stay.[6]

### 2. Respondents Must Produce The Factual Returns In Connection With the Administrative Review Boards.

In addition, Respondents must produce the factual return pursuant to procedures established for the annual Administrative Review Boards review. On February 2, 2006, the Office for the Administrative Review of the Detention of Enemy Combatants ("OARDEC") sent notice to Petitioner's counsel announcing that counsel would be allowed to submit materials "regarding your client for review and consideration by the 2006 Administrative Review Boards (ARBs)."[7] Although the ARB is not expressly constituted to reassess the CRST determination, the ARB's consideration of whether a detainee is a "continuing threat" or the existence of other factors that warrant detention must turn on the strength and veracity of evidence establishing that

---

[6] The conviction of Respondents' arguments, both before this Court and in the D.C. Circuit, are belied by their own actions. Respondents argue in the D.C. Circuit that the detainee habeas actions should automatically be converted to challenges under the DTA subject to the exclusive jurisdiction of the D.C. Circuit. *Al Odah v. Bush*, 05-5064, 05-5095-5116 (D.C. Cir.)(Government's supplemental Brief Addressing Section 1005 of the Detainee Treatment Act of 2005). If Respondents were not merely seeking to delay meaningful challenge to detention, then Respondents, at the same time that they seek a stay in this action in favor of challenges under the DTA, would undertake to comply with their obligations under the DTA, and therefore produce evidence regarding Petitioner so that he could prosecute his challenge to the CSRT determination. Respondents, however, seek to avoid their obligations to produce the factual return to Petitioner here, and refuse to provide any other information or meaningful access to review. The fact that Respondents have taken no actions to meet their obligations under the DTA should disqualify them from citing the DTA as a basis to avoid their obligations under the Order.

[7] The ARBs are annual reviews conducted by the OARDEC to determine whether a detainee should remain in detention based on factors including whether he "might pose a continuing threat to the United States" and "whether there are other factors warranting the enemy combatant's continued detention" such as intelligence that might still be collected through continued interrogation.

he is an enemy combatant and his status among the enemy. Thus, if Respondents' ARB procedures are to be anything other than window-dressing, Respondents clearly will have to provide detainees' counsel with the factual returns so that counsel can determine how best to supplement the ARB record.

### 3. The Cases Cited By Respondents Are Inapposite.

Respondents cite two cases in their motion, both of which, however, are clearly inapposite. *See* Respondents' Motion for a Stay of the Court's Order, at ¶ 5, *citing Gherebi v. Bush*, No. 04-CV-1164 (RBW) and *Begg v. Bush*, 04-CV-1137 (RMC). In both *Gherebi* and *Begg,* Respondents had already produced factual returns before Respondents filed the motions to stay further proceedings in those actions. Neither case involved a motion by Respondents seeking to stay an order obliging them to produce a factual return that had not yet been produced. In contrast, Judge Bates refused to consider Respondents' motion for a stay, and instead held Respondents' motion in abeyance – not the order requiring production of factual returns – pending resolution of the appeals in the D.C. Circuit. *Zaid et al. v. Bush*, 05-CV-1646 (Order of Feb. 9, 2006).

### C. Petitioner Faces Substantial Unfair Prejudice And Irreparable Harm From Respondents' Continued Actions to Delay Meaningful Review.

Respondents' efforts to stall any meaningful independent review of Petitioner's detention threaten to exacerbate the substantial, severe and irreparable injury already being suffered by Petitioner.

### 1. Petitioner's Right To Challenge His Detention Will Be Prejudiced Unless Counsel Is Provided Immediate Access To The Factual Return.

Petitioner's counsel cannot even begin an effective challenge to the grounds of his detention in the absence of the factual return, a delay that Petitioner, after four years of detention,

should not be forced to endure. Indeed, the factual return may contain information that in and of itself might lead to Petitioner's exoneration and release. In *Qassim v. Bush*, 382 F. Supp. 2d 126, 2005 WL 3508654, at *1 (D.D.C. 2005), for example, the CSRT had concluded that several related petitioners were <u>not</u> enemy combatants. Those findings were reflected in the factual returns. Although Respondents attempted to delay discovery of the factual returns (and in fact succeeded for several months), the petitioners' counsel ultimately obtained the factual returns. Based on the factual returns, the *Qassim* court held that the petitioners are being detained unlawfully, and Respondents reportedly are endeavoring to resettle the petitioners – action which might never have happened, or would have happened much later, if the Respondents had been permitted to avoid production of the factual returns.

In addition, recent studies have revealed that the absence of incriminating evidence in factual returns apparently is relatively common. For example, a recent study published by Seton Hall University found, based on an analysis of over five hundred publicly available unclassified versions of factual returns, that in many cases, there was no evidence that a detainee actually was a member of Al Qaeda or the Taliban, or that the detainee participated in hostilities against the United States or its allies. The study found, among other things, that (i) 55% of the detainees had not committed any hostile acts against the United States or coalition allies; (ii) Only 8% of the detainees were characterized as al Qaeda fighters; and of the remainder, 40% had no definitive connection to al Qaeda and 18% had no definitive affiliation with either al Qaeda or the Taliban; (iii) 86% of the detainees were arrested by either Pakistan or the Northern Alliance authorities, during a time when the United States offered large bounties for capture of suspected enemies. *See* Mark Denbeaux, et al., Report on Guantanamo Detainees: A Profile of 517

Detainees through Analysis of Department of Defense Data, Feb., 2006, *available at* http://law.shu.edu/news/guantanamo_report_final_2_08_06.pdf.[8]

In addition, Petitioner's right to supplement the administrative record, and specifically to influence the 2006 ARB hearing on whether Petitioner should continue to be detained, depends on timely production of the factual return. This opportunity will be meaningless, however, unless counsel is provided timely access to the factual return and can therefore respond to the allegations against him.

### 2. The Continued Delay of Respondents' Obligation to Produce the Factual Return Jeopardizes the Confidence of Petitioner – and the Public – in the Fairness of the United States' Judicial Process.

If a stay is entered and Respondents are permitted to avoid production of the factual return, Petitioner will suffer injury beyond the delayed resolution of his petition. The continued delay of this proceeding will threaten the confidence of Petitioner – and the public at large – in the prospect that detainees ever will be afforded timely and meaningful independent review of the grounds for their detention. Indeed, Judge Robertson's decision in *Qassim* that he lacked the

---

[8] A report in the National Journal also questions the reliability of evidence collected by Respondents. In one case:

> just one man . . .had placed [a detainee] at the terrorist training camp. And he had placed [him] there three months before the teenager had even entered Afghanistan. [A] curious U.S. officer pulled the classified file of the accuser, saw that he had accused 60 men, and, suddenly skeptical, pulled the files of every detainee the accuser had placed at the one training camp. None of the men had been in Afghanistan at the time the accuser said he saw them at the camp. The tribunal declared [the detainee] an enemy combatant anyway.

Corine Hegland, *Empty Evidence*, The National Journal, Feb. 3, 2006, *available at* http://nationaljournal.com/about/njweekly/stories/2006/0203nj4.htm.

power to remedy unlawful detention confirms concerns that detainees may be deprived of effective review.

  The American public has a vital interest in ensuring that the rights of even the weakest among us, and even those accused of the most despicable of crimes, are respected. The American public has an interest in ensuring that the rights of all persons are respected, not only so that each of us too may be assured of that same protection in our country, but also so that the international community affords similar protections to its citizens abroad and continues to respect the United States' judiciary system.

## CONCLUSION

In its Order of December 20, 2005, the Court ordered Respondents to produce to Petitioner's counsel the factual return by March 20, 2006. Respondents have failed to show any basis for the Court to stay the Order, and thus Respondents' motion should be denied.

                                            Respectfully submitted,

Dated: February 26, 2006                /s/ Jeffrey I. Lang
                                                      Jeffrey I. Lang
                                                      Admitted *pro hac vice*

                                                      John B. Missing (Bar No. 425469)
                                                      DEBEVOISE & PLIMPTON LLP
                                                      555 13th Street, N.W. Ste 1100E
                                                      Washington, D.C. 20004-1169
                                                      Tel: (202) 383 8000
                                                      Fax: (202) 383 8118

                                                      Jeffrey I. Lang
                                                      Jennifer R. Cowan
                                                      DEBEVOISE & PLIMPTON LLP
                                                      919 Third Avenue
                                                      New York, NY 10022
                                                      Tel: (212) 909-6000
                                                      Fax: 212-909-6836

                                                      *Of Counsel*
                                                      Barbara Olshansky
                                                      CENTER FOR CONSTITUTIONAL RIGHTS
                                                      666 Broadway, 7th Floor
                                                      New York, New York 10012
                                                      Tel: (212) 614-6439
                                                      Fax: (212) 614-6499