IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAYAL AZIZ AHMED AL-MITHALI, *et al.*, <br><br> Petitioners, <br><br> v. <br><br> GEORGE W. BUSH, President of the United States, *et al.*, <br><br> Respondents. | Civil Action No. 05-CV-2186 (ESH) |

**RESPONDENTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO STAY PRODUCTION OF FACTUAL RETURN**

Respondents hereby submit this reply memorandum in support of their motion requesting that the Court stay its order requiring respondents to produce a factual return pertaining to petitioner pending resolution of the effect of the Detainee Treatment Act of 2005 on this case.

The Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("the Act"), amends 28 U.S.C. § 2241 to remove court jurisdiction to hear or consider applications for writs of habeas corpus and other actions brought in this Court by or on behalf of aliens detained at Guantanamo Bay, Cuba, and creates an exclusive review mechanism in the D.C. Circuit, applicable to pending cases, to address the validity of the detention of such aliens held as enemy combatants. Id. § 1005(e)(1), (h)(2). After respondents indicated their intent to file a motion to dismiss this and other similar petitions for habeas corpus based on the Act's withdrawal of the Court's jurisdiction, see Respondents' Notification of Supplemental Authority (dkt. no. 24), the Court indicated to the parties that its sense is to await anticipated guidance from the D.C. Circuit regarding the effect of the Act before proceeding further in the Guantanamo detainee cases.

Consequently, respondents are awaiting a decision from the D.C. Circuit on this issue prior to seeking any relief in the Guantanamo detainee cases based on the Act.[1] Thus, in order to maintain the "status quo," as petitioners suggest, see Pets' Opp. at 7, a stay of all proceedings in this case, including with respect to the production of a factual return, is appropriate pending the resolution of the effect of the Act. Indeed, two other Judges of the Court have recently entered orders in the Guantanamo detainee habeas cases before them denying without prejudice all previously pending motions and staying "all action" in the cases "pending the jurisdictional ruling of the District of Columbia Circuit." See January 11, 2006 Order in Gherebi v. Bush, No. 04-CV-1164 (RBW), et al.; January 27, 2006 Order in Begg v. Bush, No. 04-CV-1137 (RMC), et al.[2] This Court likewise should stay the currently required production of a factual return in this case pending resolution of the effect of the Act on the case.

---

[1] The effect of the Act will be addressed in supplemental briefing in the Guantanamo detainee appeals pending before the D.C. Circuit. On January 27, 2006, the D.C. Circuit issued a revised supplemental briefing schedule, with an initial brief by respondents due on February 17, 2006, an opposition by petitioners due on March 10, 2006, and respondents' reply due on March 17, 2006. Oral argument is scheduled for March 22, 2006.

[2] Petitioners' assertion that these orders are inapposite to this case because factual returns have already been submitted in in Gherebi and Begg, see Pets' Opp. at 12, is a red herring. As is plainly apparent from the consolidated caption of the orders entered in Gherebi and Begg, as well as respondents' inclusive citations in this regard (i.e., the citation of the first case listed on the caption of the orders plus "et al."), Judges Walton and Collyer stayed "all action" in *all* of the cases pending before them — a total of 34 cases, which include a number of cases in which factual returns have not been submitted. Among these is Bukhari v. Bush, No. 05-CV-1241 (RMC), in which Judge Collyer previously ordered a factual return to be produced by February 21, 2006 (dkt. no. 18). Pursuant to the Court's January 27, 2006 Order staying "all action" in that case (dkt. no. 21), respondents did not submit a factual return on February 21, 2006. Shortly thereafter, petitioner Bukhari filed an emergency motion to compel production of a factual return (dkt. no. 22). Judge Collyer promptly denied petitioner's motion without prejudice, "[g]iven that the jurisdictional questions raised by the Detainee Treatment Act will soon be weighed by the Court of Appeals (on March 22) and the Supreme Court (on March 26) [sic March 28] . . .". Id., Minute Order dated February 27, 2006.

Petitioners' belief that respondents have "misread" the effect of the Act as withdrawing the Court's jurisdiction over this case, see Pets' Opp. at 8-9, is simply wrong. Section 1005(e)(1) of the Act amends 28 U.S.C. § 2241 to provide that "no court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions filed by aliens detained by the Department of Defense at Guantanamo, or (2) any other action relating to any aspect of the detention of such aliens. In addition, the Act creates an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of such aliens held as enemy combatants; § 1005(e)(2) of the Act states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review. Section 1005(e)(1), which eliminates the jurisdiction of the courts to consider habeas and other actions brought by Guantanamo detainees, was made immediately effective without reservation for pending cases, and § 1005(e)(2), which establishes the exclusive review mechanism in the D.C. Circuit, was made expressly applicable to pending cases. Id. § 1005(h).

It is well settled that statutes such as § 1005(e)(1) that remove or extend jurisdiction apply to pending cases and ordinarily should be given immediate effect. The courts have "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." Landgraf v. USI Film Prods., 511 U.S. 244, 274 (1994). This practice is followed because "jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" Id. (citation omitted); see also Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare

the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").[3]

Because statutes removing jurisdiction presumptively apply to pending cases, Congress must expressly reserve pending cases in such statutes to preserve the federal courts' jurisdiction over them.  See Bruner v. United States, 343 U.S. 112, 116-17 (1952) ("This rule — that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law — has been adhered to consistently by this Court.").[4]  Accordingly, because the relevant provision of the Act does not contain any reservation saving pending cases, "all cases

---

[3] The cases cited by petitioners, Hughes Aircraft Co. v. United States, 520 U.S. 939 (1997) and LaFontant v. INS, 135 F.3d 158 (D.C. Cir. 1998), do not demonstrate otherwise.  In Hughes Aircraft, the Supreme Court explained that amendments to jurisdictional provisions generally apply to all pending cases because a statute affects "where a suit may be brought, not whether it may be brought at all."  520 U.S. at 951.  Notably, here, the withdrawal of jurisdiction does not deprive the detainees of the ability to obtain review of CSRT rulings.  Rather, the Act establishes when and under what circumstances such claims can be heard, and sets the scope and standards for review for the claims.  See id. ("Statutes merely addressing *which* court shall have jurisdiction to entertain a particular cause of action can fairly be said merely to regulate the secondary conduct of litigation and not the underlying primary conduct of the parties.") (emphasis in original).  Similarly, in LaFontant, this Court gave immediate effect to a jurisdiction-ousting statute that addressed review of certain deportation orders, which left the litigant with only the opportunity to seek discretionary relief from the Executive Branch.  See 135 F.3d at 159, 164-65.  Thus, even if the Act "supplants habeas petitions with a narrower challenge to an administrative finding," see Pets' Opp. at 9, n.3, that fact would not provide a basis for failing to give full effect to the clear statutory language applying this Court's exclusive jurisdiction to pending cases.  Moreover, to the extent that the Act has substantive effects, see Pets' Opp. at 8-9, those effects arise not from the elimination of prior bases for jurisdiction in § 1005(e)(1), which Congress made immediately effective, but from the scope-of-review provision within the new exclusive review scheme, which Congress made expressly applicable to pending cases.  Consequently, all relevant provisions of the Act reinforce the conclusion that the Act withdraws the Court's jurisdiction over this case.

[4] See also Santos v. Territory of Guam, 436 F. 3d 1051, 1053-57 (9th Cir. 2006) (holding that, under Bruner and McCardle, court lacked jurisdiction to consider petition from Guam Supreme Court over which it had previously asserted jurisdiction because Congress passed law withdrawing its jurisdiction while case was pending).

fall with the law." Id.  That conclusion is underscored by the fact that the Act explicitly provides – without reservation – that the amendment to the habeas statute (28 U.S.C. § 2241) "shall take effect on the date of the enactment."  Act § 1005(h)(1).  Because subject-matter jurisdiction must subsist throughout the litigation, that language effects an immediate elimination of jurisdiction.  Additionally, Congress not only declined to include a reservation saving pending cases, but expressly provided that the exclusive procedures established by the Act for review of challenges to completed CSRTs apply to such claims "pending on or after" the Act's enactment.  Id. § 1005(h)(2).  Thus, Congress made clear that the district courts no longer have jurisdiction over any actions filed on behalf of Guantanamo detainees, and reinforced that result by providing that the exclusive review procedures in § 1005(e)(2) provide the only avenue for judicial relief.[5]

Furthermore, that Congress created a special procedure for bringing challenges to completed CSRTs and vested exclusive jurisdiction in the District of Columbia Circuit over such matters further demonstrates that this Court lacks jurisdiction.  It is well established that when Congress creates an exclusive review mechanism, it forecloses courts from asserting jurisdiction

---

[5] Because the Act's jurisdiction-ousting provision unambiguously applies to pending cases, there is no need to "turn to the more controversial realm of legislative history."  Lamie v. United States Trustee, 540 U.S. 526, 536 (2004).  Moreover, portions of the legislative history support the conclusion that Congress was aware that the Act's jurisdiction-ousting rule would extend to pending cases.  See, e.g., 151 Cong. Rec. S14,263-1469 (daily ed. Dec. 21, 2005) (statements of Senators Graham and Kyl, two main authors of the Act).  Further, comments of Senator Levin that, in his view, the Act does not apply to habeas cases pending at the time of enactment, see 151 Cong. Rec. S14,257 (daily ed. Dec. 21, 2005), cannot be squared with the plain language of the Act and the long-standing law that statutes withdrawing court jurisdiction are given immediate effect, including with respect to pending cases, absent an express reservation in the statute.  See Exxon Mobil Corp. v. Allapatah Servs., Inc., ___ U.S. ___, 125 S. Ct. 2611, 2626 (2005) (cautioning that members of Congress may produce "strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text").

over such matters under other, more general grants of jurisdiction, including habeas jurisdiction. See FCC v. ITT World Communications, Inc., 466 U.S. 463, 468 (1984) ("[l]itigants may not evade" exclusive review provisions for final agency orders "by requesting the District Court to enjoin action that is the outcome of the agency's order"). Here, the Act establishes exclusive review of CSRT claims of Guantanamo detainees in the D.C. Circuit, establishing when, and under what circumstances, such claims can be heard, and clarifying the scope and standards for review for the claims. The establishment of this exclusive review scheme supports application of the jurisdiction-ousting aspects of § 1005 to this case. Thus, the Court lacks jurisdiction over this action.[6]

Petitioners further argue that counsel require access to a factual return in order to make a submission to the Administrative Review Board ("ARB") on Mr. Al-Mithali's behalf. See Pets' Opp. at 11-12. Any complaints regarding preparation for ARB hearings, however, are not properly before this Court, nor are they a proper subject for this litigation. ARB proceedings are

---

[6] Indeed, this Circuit has made clear that where the Court of Appeals has exclusive jurisdiction of a matter, it is not appropriate for a district court to exercise jurisdiction over a case or matter that might affect Court of Appeals' future, exclusive jurisdiction; such suits are not properly cognizable in district court, but rather are subject to the exclusive review of the Court of Appeals. See Telecomm. Research and Action Ctr. v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984). Thus, petitioners' argument that respondents should be required to comply with their "obligations" under the Act and produce a factual return in this case notwithstanding the Act's withdrawal of the Court's jurisdiction because "[r]espondents will be required to produce the factual return, and all other evidence relating to Petitioner, under the DTA," see Pets' Opp. at 10-11, n.6, is unpersuasive. Whether and to what extent "factual returns" as they have been produced in the District Court will be required by the D.C. Circuit is a matter subject to the exclusive jurisdiction of the Court of Appeals. See Act, § 1005(e)(1) (vesting "exclusive" jurisdiction in the D.C. Circuit "to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant"). It would therefore be inappropriate for this Court to require relief in the interim that might infringe upon the Court of Appeals' exclusive jurisdiction.

separate and distinct from proceedings before Combatant Status Review Tribunals ("CSRTs") that determine whether detainees are properly classified as enemy combatants. Thus, the purpose of the ARB proceedings is distinct from the issue involved in the habeas petitions before the Court. The habeas petitions, and factual returns filed in connection with the petitions,[7] concern whether a petitioner is properly subject to detention by the United States, that is, whether a detainee has been legitimately determined to be an enemy combatant and, thus, may be detained for the duration of hostilities, if necessary. The ARB proceedings, on the other hand, currently are designed to assess, on an annual basis, not whether a detainee may be detained as an enemy combatant, but whether it is in the interests of the United States to transfer or continue to detain individuals already determined by CSRTs to be enemy combatants. This decision is based on a weighing and balancing of factors, such as the threat a detainee is believed to pose to the United States or its allies in the ongoing armed conflicts against al Qaeda and its supporters, and the detainee's continuing intelligence value. See Mem. Implementing Admin. Review of the Detention of Enemy Combatants (Sept. 14, 2004) (available at <<http://www.defenselink.mil/news/Sep2004/ d20040914adminreview.pdf>>). As a result, the ARB issues and the habeas issues are not the same; indeed, the ARB determination involves a complex weighing of factors and exercise of discretion by the Military that is not justiciable. See, e.g., Dist. No. 1, Pacific Coast Dist., Marine Engs. Beneficial Ass'n v. Maritime Admin., 215 F.3d 37, 42 (D.C. Cir. 2000) (finding that Executive's "judgments on questions of foreign policy and national interest . . . are not subjects fit for judicial involvement"). Thus, the

---

[7] A factual return for a petitioner in a Guantanamo detainee case typically has consisted of the record of proceedings before the CSRT that confirmed petitioner's status as an enemy combatant properly subject to detention.

pendency of an ARB hearing pertaining to petitioner has no bearing on whether respondents should submit a factual return in this habeas proceeding.

Neither should the Court accept petitioners' argument that the production of a factual return should be required because the return "may contain information that in and of itself might lead to Petitioner's exoneration and release." See Pets' Opp. at 12-13. In support of this argument, petitioners cite Qassim v. Bush, No. 05-CV-0497 (JR), another petition for writ of habeas corpus filed on behalf of two detainees whom the CSRTs determined to no longer be enemy combatants ("NLECs"). Contrary to petitioners' belief that "petitioners' counsel [in the Qassim case] ultimately obtained the factual returns" and therefore discovered these detainees' status as NLECs, see Pets' Opp. at 13, in fact, factual returns were *never* submitted in the Qassim case. Moreover, respondents' ongoing efforts to resettle the Qassim petitioners have proceeded independent of any action by counsel for petitioners in that case. See Pets' Opp. at 13 (arguing that respondents' efforts to resettle the petitioners "might never have happened, or would have happened much later, if the Respondents had been permitted to avoid production of the factual returns"). In any event, the Qassim case has no relevance here since petitioner Al-Mithali has been determined by the CSRT to be an enemy combatant lawfully subject to detention.

Finally, petitioners' argument that certain "studies" conducted by a media publication and certain counsel for petitioners in other Guantanamo cases warrants production of a factual return in this case, see Pets' Opp. at 13-14, is completely without merit. Not only are these "studies" based on selective and incomplete data (they admittedly consist of only unclassified information) as interpreted by counsel for petitioners in another Guantanamo habeas case, but their highly suspect conclusions about the perceived "absence of incriminating evidence" regarding other

detainees should have no bearing on whether a factual return should be provided in this case. Moreover, given that the Court has indicated that its sense is to await anticipated guidance from the D.C. Circuit regarding the effect of the Act before proceeding further in the Guantanamo detainee cases, counsel cannot use a factual return to advance the litigation in this case. In light of this, and given the new, statutory withdrawal of the Court's jurisdiction, respondents should not be required to produce a factual return pertaining to petitioner pursuant to the Court's December 20, 2005 Order.[8]

\* \* \*

For the reasons stated herein and in respondents' motion, the Court should stay its order requiring respondents to produce a factual return pertaining to petitioner until the effect of the Detainee Treatment Act of 2005 on this case is resolved.

---

[8] Production of a factual return to counsel for petitioners requires respondents to do much more than "only produce a copy of an existing file," as petitioners suggest. See Pets' Opp. at 4. Each factual return must be obtained from the Department of Defense ("DoD"), and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the returns is in accordance with all applicable statutes, regulations and Executive Orders. This agency review process involves the entire classified record, and not just the unclassified portions, as petitioners erroneously assert. See Pets' Opp. at 9-10 and n.5. Respondents must then prepare both public and classified versions of the factual returns for submission to the Court and counsel. Because each return can range from dozens to hundreds of pages, depending upon the circumstances, this review and redaction process is a significant and time-consuming undertaking. Further, submission of these returns expands access to classified information contained in the returns, thereby increasing the risks of inadvertent or other disclosure or compromise of the information. In light of the new, statutory withdrawal of the Court's jurisdiction, and given that the sense of the Court is to await anticipated guidance from the D.C. Circuit regarding the effect of the Act on the Guantanamo detainee cases before proceeding further in the cases, it is in the interest of efficiency of judicial and litigation resources, as well as to minimize administrative burdens, that respondents should not be required to submit a factual return in this case.

Dated: March 6, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

    /s/ Preeya M. Noronha
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
MARC A. PEREZ
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents