IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HAYAL AHMED AZIZ AL-MITHALI, *et al.*, <br><br> *Petitioners,* <br><br> v. <br><br> GEORGE W. BUSH, *et al.,* <br><br> *Respondents.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civ. No. 05-CV-2186 (ESH) |

**OPPOSITION TO RESPONDENTS' MOTION TO DISMISS**

Petitioner in the above-captioned case files this opposition to Respondents' Motion to Dismiss, and respectfully requests that this Court (i) deny Respondents' Motion to Dismiss his habeas action, and (ii) hold this action in abeyance pending Petitioner's exhaustion of remedies in the Court of Appeals under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680 ("DTA").

Respondents fail to recognize that whether this Court has jurisdiction over Petitioner's habeas petition is dependent upon whether the DTA and/or the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 ("MCA"), amounts to an unconstitutional suspension of the writ of habeas corpus. That issue remains an open question that is being actively litigated. Three Justices dissented from the Supreme Court's denial of certiorari in *Boumediene v. Bush*, 127 S.Ct. 1478 (2007) ("*Boumediene II*"), stating that the jurisdictional and constitutional questions raised by the petitioners

"deserve this Court's immediate attention." *Id.* at 1479. (Breyer, J., joined by Souter & Ginsburg, JJ., dissenting). Two other Justices stated that, despite "the obvious importance of the issues raised in these cases," it was "appropriate to deny these petitions *at this time*" because the petitioners had not exhausted their DTA remedies. *Id.* at 1478 (statement of Stevens and Kennedy, JJ., respecting the denial of certiorari) (emphasis added). Five Justices have thus at least made clear that, upon the petitioners' exhaustion of their DTA remedies, the Supreme Court will give serious consideration to a certiorari petition presenting the issues raised in *Boumediene*. A majority of the Court, in other words, has indicated that the Court of Appeals' holding in *Boumediene v. Bush* and *Al Odah v. United States,* 476 F.3d 981 (D.C. Cir. 2007) ("*Boumediene I*") might be held erroneous and that it might ultimately be determined that the habeas actions of Petitioner and those similarly situated should proceed in the district courts.

Respondents' motion is premised on a flawed interpretation of the implications of *Boumediene I* and *II* in the context of applicable Supreme Court precedent. As set forth below, under *Rhines v. Weber*, 544 U.S. 269 (2005), the appropriate procedure for addressing a pending habeas petition while remedies are exhausted is for the District Court to stay the proceedings and hold them in abeyance pending exhaustion. This Court also has jurisdiction to maintain the Protective Order entered in this case.[1] Pursuant to

---

[1] On November 21, 2005, this Court granted Petitioner's motion to enter: (1) the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba, first issued on November 8, 2004, 344 F. Supp. 2d 174 (D.D.C. 2004); (2) the Order Addressing Designation Procedures for "Protected Information," first issued on November 10, 2004; and (3) the Order Supplementing and Amending Filing Procedures Contained in

*United States v. United Mine Workers*, 330 U.S. 258, 291 (1947), until the aforementioned jurisdictional questions are resolved, the lower courts have "authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition." For these reasons this Court should issue a stay-and-abey order, rather than dismiss this habeas action, while the DTA petition is being litigated and the jurisdictional issues remain unresolved.

> **A.    Dismissal Of Petitioner's Habeas Case Would Be Premature Because Exhaustion Of DTA Remedies Is A Predicate To The Analysis Of The Jurisdictional Question.**

Respondents would have this Court believe that it has no choice but to dismiss Petitioner's habeas action pursuant to *Boumediene I*. Respondents' argument glibly ignores the invitation of Justices Stevens and Kennedy for Petitioner to exhaust his potential remedies under the DTA as a predicate to habeas relief, or return more immediately to the Supreme Court if those remedies prove to be inadequate.[2] Dismissal at this time would be premature.[3] Until the constitutionality of the MCA has been

---

November 8, 2004 Amended Protective Order, first issued on December 13, 2004, all in the *In re Guantánamo Bay Detainee Cases* by then-Coordinating Judge Joyce Hens Green (collectively, "the Protective Order").

[2]   The exhaustion model of habeas relief was also implicitly adopted in *Boumediene I*, in which the Court of Appeals expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA. *Boumediene I*, 476 F.3d at 994.

[3]   The Court of Appeals has yet to even issue its mandate in *Boumediene I*. The *Boumediene* petitioners filed in the D.C. Circuit (1) motions in *Al Odah v. United States*, No. 05-5064, to stay the mandate and to govern the appeal, and (2) motions in *Abdah v. Bush*, No. 05-5127, and *Abdah v. Bush*, No. 05-5224, to continue to hold those appeals in abeyance, and to govern those appeals. The Court of Appeals has

resolved, this Court has subject matter jurisdiction to hold Petitioner's habeas action in abeyance.

Indeed, Justices Stevens and Kennedy's citation of Supreme Court authority regarding the requirement of exhaustion in order to determine the efficacy of the alternative remedies contemplates a habeas corpus case in which the petitioner can ultimately present his arguments to the District Court and, if necessary, the Circuit Court and Supreme Court. Citing *Ex parte Hawk,* 321 U.S. 114 (1944), the Justices explained that the Court was denying certiorari "at this time" in light of the Court's practice of requiring exhaustion of available remedies. The citation to *Hawk* is telling. In that case, the petitioner filed for federal habeas relief under circumstances, like the present case, in which the effectiveness of alternative remedies had not been established. The Supreme

---

not yet acted on these motions. In the Supreme Court, the *Boumediene* petitioners have lodged an emergency application to stay the mandate in *Al Odah*, to be filed if the D.C. Circuit denies the petitioners' motions to stay and to govern. Thus, at this time, the *Boumediene I* decision is not yet final, and the Court of Appeals retains jurisdiction to "modify or rescind" its opinion. *Beardslee v. Brown*, 393 F.3d 899, 901 (9th Cir. 2004) (internal citations omitted); *see also United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991) ("A Court of Appeals decision does not become effective until its mandate issues.").

The government erroneously cites to *Ayuda v. Thornburg*, 919 F.2d 153 (D.C. Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the circuit, regardless of whether a mandate has issued, depriving the courts of the power to stay and hold in abeyance. In fact, the majority ruled in *Ayuda* that a stay was appropriate. The government cited a concurring opinion only, and, in that opinion, the concurring Judge ultimately agreed with the majority, which rejected the proposition that the court lacked power to enter a stay. *See Ayuda*, 919 F.2d at 153. The other concurring and dissenting opinion correctly articulated the applicable law that, until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." *Ayuda*, 919 F.3d at 155-56 (Wald, C.J., concurring and dissenting)..

4

Court not only applied the exhaustion rule but held that the adequacy of the available state court remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated . . . .  But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy . . . or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate . . ., a federal court should entertain his petition for habeas corpus, else he would be remediless.  In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted).  The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which will depend in large part on the efficacy of the DTA remedy, will first be considered and decided in the district court.  The ultimate issues would then be preserved for appellate and Supreme Court review, if necessary.  This is not a "speculative chain of events" (*see* Resp't Mot. at 5), but the course directed in the *Boumediene II* statement on certiorari, and is already underway as Petitioner and others prepare to file DTA actions.

Until DTA remedies have been exhausted by scores of habeas petitioners (including Petitioner), *Boumediene I* should be treated as that which it is – the first in a series of many decisions involving distinct allegations and legal theories that may be taken into consideration, but are not binding upon any of the district courts.  *See Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v.*

*Booker*, 543 U.S. 220, 239-42 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved).

It also bears noting that the primary case relied upon by Respondents for their jurisdictional argument, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998), does not support their position. Respondents cite to *Steel Co*. for the unremarkable proposition that jurisdiction is a threshold question. Resp't Mot. at 4, 8. Respondents ignore the preceding language in *Steel Co.* that supports this Court's jurisdiction to maintain the action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court. The starting point of *Steel Co.* is that "the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another,' . . . unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" 523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685-86 (1946)). Under *Steel Co.*, a circuit court opinion is not sufficient to deprive this Court of subject matter jurisdiction. Only when the Supreme Court has made an adverse ruling on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 89 (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). It cannot be

argued that these factors are met in the instant case. First, the *Boumediene* denial of certiorari is emphatically not a ruling on the merits. Second, the jurisdictional issues are obviously not frivolous: the courts have been split on the constitutional issues at each level of the litigation.

      B.      **Holding This Habeas Petition In Abeyance Pending Exhaustion Of A Potential Remedy Is The Appropriate Course Under *Rhines v. Weber.***

Holding this action in abeyance in order to allow Petitioner to exhaust his DTA claims in the Court of Appeals and then, if necessary, seek review of that court's *Boumediene I* jurisdictional holding is consistent with Supreme Court directives concerning the proper course of action by a federal court when presented with unexhausted habeas petitions brought pursuant to 28 U.S.C. § 2254. The Supreme Court has held that where a habeas petitioner has failed to exhaust all available remedies in state court, a federal court enjoys discretion to retain jurisdiction over the pending habeas petition, holding the action in abeyance pending the exhaustion of remedies in the state courts rather than dismissing the petition. *Rhines*, 544 U.S. at 277.

Indeed, the Supreme Court has indicated that it would be an abuse of discretion to dismiss a petition if the "petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that [the petitioner] engaged in intentionally dilatory litigation tactics." *Id.* at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005); *see also Duncan v. Walker*, 533 U.S. 167, 182-83 (2001) (Stevens, J., joined by Souter, J., concurring in part and concurring in the judgment) (stating that "in our post-AEDPA world there is no reason why a district court

should not retain jurisdiction over a meritorious [habeas] claim and stay further proceedings pending the complete exhaustion of state remedies"). The stay-and-abey procedure approved by the Supreme Court in *Rhines* is proper under the directly analogous circumstances surrounding this case.

The conditions under which failure to stay-and-abey would constitute an abuse of discretion – *i.e.*, no deliberate delay, good cause, and potentially meritorious claims – are present here. Petitioner and his counsel have made every effort to pursue this claim diligently and have not engaged in any delay tactics. Petitioner has been confined at Guantánamo for over five years in virtual isolation, cut off from his family, and subjected to harsh treatment and conditions. His litigation in federal court is his main hope, and perhaps his only hope, of gaining relief from his confinement. Unlike the underlying death penalty cases that gave the Supreme Court pause in *Rhines*, where delay forestalled possible execution, *see* 544 U.S. at 277-78, every day of delay here prejudices Petitioner by extending his improper confinement.

There is also good cause for Petitioner's failure to exhaust until now: the potential remedy did not exist until after the habeas corpus petition was filed and the potential remedy under the DTA (limited to review of the Combatant Status Review Tribunal proceeding) did not purport to provide the habeas relief to which Petitioner was entitled to at the time his habeas action was filed. In *Pace*, the Court noted that potential confusion regarding state remedies required equitable protections. 544 U.S. at 416. Guantánamo detainees face complexities that are similar and worse. The questions left open by the Supreme Court's decision in *Rasul v. Bush*, 542 U.S. 466 (2004), which

established a right to proceed under § 2241 at the time Petitioner submitted his documents, and the subsequent DTA and MCA, have resulted in major complications. Petitioner did not even have the potential DTA remedy prior to October 2006 because, as the Supreme Court held, the DTA did not apply retrospectively to habeas corpus petitions filed prior to the effective date of the statute. *Hamdan v. Rumsfeld*, 126 S.Ct. 2749, 2762-69 (2006)

Finally, the claims raised by Petitioner are substantial and meritorious. The petition establishes a number of bases for granting relief on the merits including that the prolonged indefinite detention is unlawful because Petitioner is not an enemy combatant. In the event that the DTA proves an inadequate substitute for constitutionally-required habeas corpus procedures, or that the Supreme Court otherwise determines that the writ has been unconstitutionally suspended, this Court should be in position to proceed immediately on the habeas petition.

Petitioner need not rely on a statutory right to have his case abeyed as he exhausts alternative remedies. *Cf.* Resp't Mot. at 6. The exhaustion required under *Hawk*, as referenced in the *Boumediene II* statement on certiorari, operates in the same fashion as the exhaustion required by the statute in *Rhines*. Further, the procedural obstacles that dismissal for the petitioners in *Rhines* would create under 28 U.S.C. § 2254 are no different – although perhaps less profound – than those facing Guantánamo detainees who have been cut off from contact with their lawyers. If this habeas action is dismissed, Petitioner faces the uncertainty accompanying attempts to resurrect a dismissed habeas claim following exhaustion of his DTA remedies. *Rhines* provides the controlling

9

authority regarding the applicability of the stay-and-abey mechanism to avoid prejudicing habeas corpus rights while alternative remedies are being exhausted, and it should be followed here.

Contrary to Respondents' assertions, nothing in *Rhines* limited the district court's equitable power to stay-and-abey only to concerns regarding statutes of limitation. Rather, *Rhines* held that the equitable powers the district court possessed before enactment of the statute of limitations continued to exist and were not extinguished by the statute. *Rhines*, 544 U.S. at 276. As in *Pace*, the concern warranting stay-and-abey was to protect the petitioner from impairment of the future exercise of his habeas corpus rights. *See Omar v. Harvey*, 479 F.3d 1 (D.C. Cir. 2007) (affirming the district court's preliminary injunction barring transfer of a prisoner entered to preserve the court's jurisdiction over the habeas corpus petition of an American citizen detained in a military facility in Iraq).

    **C.**    **Maintaining The Protective Order Is Necessary To Assure That "The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised."**

The lapse of the Protective Order would constitute exactly the type of prejudice to Petitioner's ability to litigate that Justices Kennedy and Stevens cautioned courts to avoid. This Court has properly addressed issues preliminary to ultimate disposition throughout this litigation, and the Protective Order should remain intact pending exhaustion of DTA remedies.

    *1.*    *This Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated.*

As discussed above, the Supreme Court denied certiorari in *Boumediene II* in order to allow for exhaustion of DTA remedies and thus determine whether it could avoid reaching the constitutional question of suspension. The statement on certiorari makes clear, however, that the Court has not abandoned this question, but rather that exhaustion is the necessary predicate to its review. Thus, the question of the district court's habeas jurisdiction remains a live issue, and one that the Supreme Court is poised to take up in due course. Under these circumstances, the case law supports this court's authority to make all necessary orders to "preserve the existing conditions and subject of the petition." *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)); *see also Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145, 2155 (2006) (a federal court's adjudicatory authority includes "its authority to determine its own jurisdiction"). These principles have been relied upon and applied in this circuit:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition" . . . Clearly there was "power to preserve existing conditions while . . . determining [the] authority to grant injunctive relief."
>
> *In re President and Directors of Georgetown College, Inc.*, 331 F.2d 1000, 1005

(D.C. Cir. 1964) (quoting *United Mine Workers*). This Court should carefully protect the

status quo by maintaining the orders entered to date pending Petitioner's exhaustion of his DTA remedy.[4]

### 2. The Protective And Injunctive Orders Entered By The Court Should Stay In Effect.

Dismissal of this case would not result automatically in the dissolution of the protective and injunctive orders entered by the Court. The Court retains jurisdiction over the entirety of the Protective Order until it, not Respondents, determines which provisions should remain in effect. As the Court recognized in *Adem v. Bush*, 425 F. Supp. 2d 7, 20 (D.D.C. 2006), the Protective Order entered on November 8, 2004,[5] like all protective orders directed to future events, survives dismissal of this case and may be modified, enforced, or dissolved only by separate order of the Court. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140-41 (2d Cir. 2004); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Public Citizen v. Liggett Group, Inc.* 858 F.2d 775, 780-82 (1st Cir. 1988); *Marshall v. Planz*, 347 F. Supp. 2d, 1198, 1201 (M.D. Ala. 2004); *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 499 (D. Md. 2000). Indeed, this Court

---

[4] The supervisory orders this Court entered include not only the Protective Order but also the grant of Petitioner's motion for a 30-day notice order prior to transfer, which is presently on interlocutory appeal before the Circuit Court in *Abdah v. Bush*, No. 05-5224. The government filed a motion to dismiss the interlocutory appeal and this underlying case on March 22, 2007, to which the petitioner filed his opposition on April 20, 2007.

[5] *See In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004).

expressly "retain[ed] continuing jurisdiction to enforce or modify the terms of [the Amended Protective] Order."[6]

Similarly, injunctive decrees directed to future events, such as the order entered by the court requiring notice of any potential transfer of Petitioner from Guantanamo, survive dismissal of this case and may be modified, enforced, or dissolved only by separate order of the Court. *See United States v. Swift & Co.*, 286 U.S. 106, 114 (1932); *Cobell v. Norton*, 392 F.3d 461, 467 (D.C. Cir. 2004); *Gilmore v. People of the State of California*, 220 F.3d 987, 1007 (9th Cir. 2000); *Dahlen v. Kramer Mach. & Eng'g Prods Co.*, 303 F.2d 293, 295 (10th Cir. 1961); *State Police for Automatic Retirement Assoc. v. Difava*, 164 F. Supp. 2d 141, 156 (D. Mass. 2001); *EEOC v. Local 40, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 885 F. Supp. 488, 491-92 (S.D.N.Y. 1994).

Although Respondents are aware of at least some of these precedents, they mistakenly interpret them to mean that only "certain requirements of this Court's Protective Order, *i.e.*, requirements pertaining to the handling of classified and 'protected' information appropriately, retain vitality beyond the required dismissal of these cases." Resp't Mot. at 8-9 n.15. In other words, Respondents contend that only those portions of the Court's protective and injunctive orders that they like, because they constrain Petitioner's counsel, survive dismissal, but those portions that they do not like, because they constrain Respondents, do not. Respondents cite no authority, and

---

[6]   *In re Guantanamo Detainee Cases*, 344 F. Supp. 2d at 176.

Petitioner is aware of none, that supports such cherry-picking by Respondents. *Cf. SRS Techs., Inc. v. Physitron, Inc.*, 216 F.R.D. 525, 526 (N.D. Ala. 2003) (rejecting plaintiff's assertion that, under protective order in effect after settlement of underlying lawsuit, plaintiff "should now be allowed virtually unrestricted access to and use of confidential documents produced by the Defendants, but that the protective order should remain in full force to protect Plaintiff's documents"). The cases cited above show that the protective and injunctive order entered by the Court survive dismissal in their entirety, unless and until they are modified or dissolved by separate order of the Court.

Moreover, equitable principles dictate that the Court may not dissolve the protective and injunctive order entered in this case without first holding an evidentiary hearing at which Petitioner and Respondents are heard. *See Hodge v. Dep't of Housing and Urban Dev.,* 862 F.2d 859, 861 (11th Cir. 1989). Respondents would bear the burden of why the orders, or portions of them, should be dissolved. *See SRS Techs., Inc.*, 216 F.R.D. at 529-31; *Lee Shuknecht & Sons v. P. Vigneri & Sons, Inc.*, 927 F. Supp. 610, 614-16 (W.D.N.Y. 1996); *Grundberg v. Upjohn Co.*, 140 F.R.D. 459 (D. Utah 1991); *SEC v. Samuel H. Sloan & Co.*, Nos. 71 Civ. 2695 (RJW), 74 Civ. 5729 (RJW), 1991 WL 173730 (S.D.N.Y. Aug. 29, 1991).

Respondents have not moved to dissolve the Protective Order entered in this case, and the Court has not held an evidentiary hearing on this issue. Therefore, to the extent Respondents seek by their motion to dismiss to dissolve this order, the motion should be denied as premature.

### 3.  Termination Of The Protective Order Would Improperly Curtail the Attorney-Client Relationship.

Furthermore, Respondents' call for immediate dismissal of this case and termination of the Protective Order (again, save for those provisions of the Protective Order that Respondents choose to remain in effect), would improperly inhibit the relationship between Petitioner and his counsel during the ongoing litigation of the jurisdictional issues as well as Petitioner's ability to potentially demonstrate the inadequacy of the DTA remedy in subsequent proceedings.  In the statement accompanying the *Boumediene II* denial of certiorari, two Justices stated: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 127 S. Ct. 1478 (2007) (quoting *Padilla v. Hanft*, 547 U.S. 1062 (statement of Justices Stevens and Kennedy).

Maintenance of the Protective Order, and the client access provided therein, is critical to the continuation of the attorney client relationship as counsel prepares to file Petitioner's DTA action and the jurisdictional issues remain in question.  Without the Protective Order in place, there is no legal mail channel; there is no privileged communication between attorney and client; base visits would be curtailed or eliminated; and counsel may be forced to destroy the classified documents currently in their position that have shed the only insight to date upon the factual bases for Petitioner's detention.  Further, the need for client consultation and counsel's ability to explain the status of

ongoing litigation is basic to the attorney-client relationship and is required by the ethical obligations to which Petitioner's counsel are subject.[7]  In addition, in the event the DTA procedures prove an inadequate substitute for constitutionally-required habeas corpus procedures, this Court should be in position to proceed immediately on the issues raised. Petitioner should be spared any further delays that would ensue were it necessary to negotiate a new protective order, or to re-gather the documentary evidence (potentially a very time consuming process) that is subject to destruction following any dismissal of this case.

For these reasons, the Court should reject Respondents' request that the Protective Order be disbanded upon any dismissal of this action.  The Court, under *United Mine Workers*, has jurisdiction to maintain this Order pending the resolution of these issues on the merits.  Even if the Court were to dismiss this action, which it should not, the Protective Order should remain in effect pending this Court's later determination as to which, if any, of its provisions should be dissolved.

---

[7]   Respondents' claim that "with respect to counsel access, respondents' request for dismissal does not signal an immediate cut off of access by counsel to their properly represented detainees" because Respondents will agree to "entry, on an interim basis" of the protective order and counsel access regime Respondents have proposed in *Bismullah v. Gates*, No. 06-1197, and *Parhat v. Gates*, No. 06-1397, Resp't Mot. at 10, is disingenuous at best.  The terms of the government's proposed protective order are unnecessarily severe and are being vigorously litigated in *Bismullah* and *Parhat*.  Respondents plainly seek to gain a litigation advantage by leveraging their control and custody over Petitioner to substitute their preferred protective order for the one currently in effect without any order of a court.

## CONCLUSION

For the foregoing reasons, this Court should deny Respondents' Motion to Dismiss and hold any merits litigation of this petition for a writ of habeas corpus in abeyance pending the outcome of Petitioner's DTA petition and possible review by the Supreme Court of this Court's jurisdiction to adjudicate the merits of Petitioner's case.

Respectfully submitted,

/s/ Jennifer R. Cowan
Jeffrey I. Lang
Jennifer R. Cowan
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 909-6836


John B. Missing (Bar No. 425469)
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W.
Washington, D.C. 20004-1169
Tel: (202) 383 8000
Fax: (202) 383 8118

        Shayana Kadidal (Bar No. 454248)
        CENTER FOR CONSTITUTIONAL RIGHTS
        666 Broadway, 7th Floor
        New York, New York 10012
        Tel: (212) 614-6438
        Fax: (212) 614-6499

        Counsel for Petitioner

May 3, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HAYAL AHMED AZIZ AL-MITHALI**, *et al.*,<br><br>*Petitioners,*<br><br>*v.*<br><br>**GEORGE W. BUSH**, *et al.*,<br><br>*Respondents.* | Civ. No. 05-CV-2186 (ESH) |

**(PROPOSED) ORDER**

The Court having considered Petitioner's Opposition to Respondents' Motion to Dismiss,

IT IS HEREBY ORDERED that Respondents' Motion to Dismiss the habeas action of Petitioner Hayal Ahmed Aziz Al-Mithali is DENIED; and it is further

ORDERED that this action shall be held in abeyance pending Petitioner's exhaustion of his remedies in the Court of Appeals under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680.

SO ORDERED.

_____
ELLEN SEGAL HUVELLE
United States District Judge

Dated:_____

22457459v1

## CERTIFICATE OF SERVICE

I hereby certify that today, May 3, 2007, I served the foregoing on the counsel listed below by causing an original and six copies to be filed with the Court Security Officer:

Judry Laeb Subar
U.S. Department of Justice
Federal Programs Branch
20 Massachusetts Avenue, NW
Room 7342
Washington, DC 20530

Terry Marcus Henry
U.S. Department of Justice
P.O. Box 883
20 Massachusetts Avenue, NW
Suite 7144
Washington, DC 20044

Preeya M. Noronha
U.S. Department of Justice
20 Massachusetts Avenue, NW
Room 7226
Washington, DC 20530

/s/ Anupama Chaturvedi Connor
Anupama Chaturvedi Connor